---

**Will Basta** <will@ascendecom.com>                                                      Mon, Mar 27, 2023 at 9:41 AM
To: Branden Lathan <██████@gmail.com>

Branden ,

I'm not personally producing any marketing material. I have no time. What I do have his massive team in all different sides of the business, which includes marketing. What I am doing is working on our internal operations and strategic partners for client success.

Skye didn't get a call on my calendar , because I don't take client calls right now as I have no time. You are not the only person requesting calls, I simply can't take them all so I will not take any. This is why I have employees.

If you want someone more senior , then Skye can link you up with Jessica.

From my team :

We have added 8 ASIN's for Branden Lathen, all products are in the purchasing phase. ROI ranges from 20% to 134% .

 Thank you

Sent from my iPhone
[Quoted text hidden]

---

**Branden Lathan** <██████@gmail.com>                                                     Mon, Mar 27, 2023 at 10:12 AM
To: Will Basta <will@ascendecom.com>

Well Skye shouldn't be telling me that you're taking calls if you're not right? The reason soo many people are requesting calls is because your employees aren't doing their jobs. Plain and simple. We paid you for a service. We're not getting that service.

8 new ASINs added but what about this move to whatever new software you guys said was supposed to take 4-5 days but has been an entire month? Where is my access to this new dashboard? To slack? What's the status on that supplements stuff you talked about last week? I wouldn't be asking you any of these questions but you're ignoring the part of my email where I said I can't get a single meaningful update from my team and they are LYING TO ME TO MY FACE. what kind of business is this?

 According to your email sent out to all clients:

"Each client will have login details to view their FBA/FBM  inventory levels in real time, which means that inventory levels will be changed the minute items are scanned and received, along with when packages are sent out. We anticipate that deployment of this software may take 4-5 days as we will also do a stocktake to ensure inventory levels are as accurate as possible. During this transition time, your store will be on vacation mode and we will not be shipping any parcels out as we implement Zenventory and train our warehouse staff.

Zenventory costs $10 per client and that will be billed to each client. As you can see on the Zenventory website, Ascend will be absorbing the majority of the cost to implement including the upfront fee.

In addition to this, we will also be implementing a software that will connect to Amazon Seller Central to display your profit in real time to provide greater transparency on store performance. It will provide much clearer visuals using graphs tracking sales progress, along with expenses for each store, helping our clients have a better overview of their accounts performance. Our goal is to have this live by the end of March."

Sent via my iPhone.

    On Mar 27, 2023, at 9:41 AM, Will Basta <will@ascendecom.com> wrote:

    [Quoted text hidden]

---

**Will Basta** <will@ascendecom.com>                                                      Mon, Mar 27, 2023 at 10:16 AM
To: Branden Lathan <██████@gmail.com>, Ascend Support <support@ascendecom.com>, Jessica Sijan <jessica@ascendecom.com>

These call requests are not just clients Branden, I get requests from multiple businesses all the time.

Emailing only me right now is not the best vessel for a response, I am sorry but my team cc'd  will have to be the route.

We are still in the month of March, so for a quick response, everything we are saying thats rolling out is still underway.

Thanks.
[Quoted text hidden]

---

**Branden Lathan** <██████@gmail.com>                                                     Wed, Apr 5, 2023 at 2:12 PM
To: Will Basta <will@ascendecom.com>
Cc: Ascend Support <support@ascendecom.com>, Jessica Sijan <jessica@ascendecom.com>

To anyone that is not too busy to respond to a client:

Here we are 10 days later and I still have no idea what is going on with my store. I have been added to a slack channel that consists of 12 members, all of which are overseas (where are the US Based people I was promised?) I don't even know who my store manager is and no one has been able to provide this information.

Joyce sent me an email saying some products were purchased on 3/23 and had to be picked up in person because Walmart kept cancelling the online order. Those products are still not active in my store. Where are they? Shouldn't take two weeks to pack them up and send them to Amazon. I was sent a message on slack from someone saying two items were purchased for my store on 3/31. One of those items is a duplicate of an item purchased on 3/23 (the cost was almost twice as much as the 3/23 order).

I currently have 95 items in inventory. 3 of which are active. 2 of the 3 haven't sold any units in months.

So this is the current state of my store as I've provided it to you since you have been unable to provide any info to me. The following are actions items in demanding by addressed ASAP

1) Provide me the status of all the products ordered and a date in which they will be live on Amazon.

2) Provide me the name of my store manager as well as who to talk to if they are non-responsive.

3) Perform a cleanup of my inventory to remove all products I'm not currently selling.

4) Provide a plan of action for the next 30 days in terms of what to expect in regards to product ordering.

5) Provide a status update on getting me into a supplement line as will mentioned to me on 3/23.

6) Provide a status on the zenventory implementation that was supposed to take 4-5 days that was started over a month ago.

I expect these updates to be provided very soon as I'm not asking for anything difficult.

Branden


Sent via my iPhone.

> On Mar 27, 2023, at 10:16 AM, Will Basta <will@ascendecom.com> wrote:

[Quoted text hidden]

---

**Jessica Sijan** <jessica@ascendecom.com>
To: Branden Lathan <░░░░░@gmail.com>
Cc: Will Basta <will@ascendecom.com>, Ascend Support <support@ascendecom.com>

Wed, Apr 5, 2023 at 2:27 PM

Branden - I will have our team work to provide you with these updates ASAP.

Thank you,
-Jessica

--

**Jessica Sijan**
Head of Client Services & Quality Assurance, Ascend Ecom

ASCEND  ⊕ www.ascendecom.com  ✉ jessica@ascendecom.com
⊙ 2219 Main St. Santa Monica, CA

f  ⊙  in  ▶

Forbes    Entrepreneur    yahoo!finance    Inc.MAGAZINE    MarketWatch

[Quoted text hidden]

# Attachment K

EX 6
561

628439X28X1XPRI
SmartyPants Inc.
Seller Compliance
1321 Upland Dr Ste 976
Houston, TX 77043

1•••••••••••••••••••••••••••SNGLP 480

Branden Lathan
Hi Standards Marketplace

Boston, MA

||ı||ıı|ı|•|•|ı|ı||ı|ı•••|ı••ı•|ıı|ıı|ı|•|••ı•ı|ı|ı|ı|ı••ı•||ı

EX 6
562



April 27, 2023

**VIA EMAIL & FIRST CLASS MAIL**

**Re: Second Letter Regarding Common Trademark Infringement of One or More SmartyPants, Inc. Marks**
*USPTO Registration No. 6217913 (SmartyPants: Smart. Simple. True.), 4026710 (SmartyPants)*

To Whom It May Concern:

SmartyPants, Inc. dba SmartyPants Vitamins ("SmartyPants"), is the owner of the SmartyPants trade names, trademarks, and domain names (the "SmartyPants Marks"), which SmartyPants has used extensively for many years in connection with its well-known vitamin and nutritional supplement products (the "SmartyPants Products"). We previously sent you a cease and desist letter regarding you or your company's unauthorized and unlawful use of SmartyPants' trade names, trademarks, and domain names, including, without limitation, the above-referenced registered marks. The letter requested that you immediately cease and desist offering for sale SmartyPants Products on Amazon.com. The letter also requested that you confirm in writing that you have ceased offering for sale SmartyPants Products on Amazon.com.

**We have seen no compliance in regards to our initial cease and desist letter.** In addition, we have confirmed that you and/or your company are continuing to offer for sale SmartyPants Products on Amazon.com without having executed an Authorized Reseller Agreement with SmartyPants.

**This letter is notice that unless you immediately cease and desist the activities outlined above and in our prior letter, our next action may be to file a lawsuit against you.** If SmartyPants files such a lawsuit against you, it may be entitled to seek: (1) preliminary and permanent injunctions; (2) actual monetary damages; (3) disgorgement of any profits you have realized through your use of the Marks; (4) reimbursement of attorney's fees required to prosecute a lawsuit against you; and (5) monetary damages for damage to SmartyPants' goodwill in the market.

Only resellers or distributors expressly authorized by SmartyPants (hereinafter, "Authorized Resellers") are permitted to sell SmartyPants Products, and they are required to sell products only in certain channels and to abide by SmartyPants' Resale Policy and/or other SmartyPants policies (collectively, the "Policies"). It is only by limiting authorized sales to Authorized Resellers who are required to follow the Policies that SmartyPants is able to ensure the satisfaction of consumers and to maintain the integrity and reputation of the SmartyPants brands. Authorized Resellers are not permitted to sell SmartyPants Products on the internet or any e-commerce format without the prior written consent of SmartyPants.

To protect the SmartyPants brands and prevent consumer confusion, SmartyPants has secured a number of trademarks relating to its business (including, without limitation, the SmartyPants Marks). SmartyPants is the only entity permitted to use or license the SmartyPants Marks in the United States. Your sales of these Products is illegal as the sales do not have any of the quality controls or any of the unique benefits that only Authorized Resellers can provide, and your repeated use and misappropriation of one or more SmartyPants Marks constitutes trademark infringement pursuant to 15 U.S.C. § 1114, unfair competition, and false advertising pursuant to 15 U.S.C. § 1125(a), and a violation of numerous state laws. Your acquisition and resale of any products received from SmartyPants' Authorized Resellers also constitutes tortious interference with SmartyPants' contracts and/or business relationships. Any time you purchase products from an Authorized Reseller and then attempt to resell those products, you have induced a breach of the agreement between SmartyPants and its Authorized Reseller and/or interfered with SmartyPants' agreement and business relationship with its Authorized Reseller, for which you may be held liable for tortious interference with SmartyPants' contracts and/or business relationships.[1]

---

[1] *See, e.g., Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228, 1235-38 (10th Cir. 2006) (affirming a $500,000.00 damages award for tortious interference with a dealer agreement)

Please view our policy on our website at https://www.smartypantsvitamins.com/pages/reseller-policy

EX 6
563

Your use of the SmartyPants Marks is likely to cause – and we believe, has already caused – confusion and deception to consumers because it falsely suggests that (1) you are affiliated with or sponsored by SmartyPants, (2) the products you sell are delivered with all the same benefits, characteristics, and quality controls as SmartyPants Products sold by Authorized Resellers in authorized channels, and (3) SmartyPants approves of the products you sell.[2]

Because the products you sell are not distributed in accordance with the quality controls or with the benefits established by SmartyPants, the products you sell are not genuine SmartyPants Products and amounts to infringement of SmartyPants marks.[3] This violation of SmartyPants' Marks is likely to dilute the distinctive quality of the Marks and SmartyPants' reputation and goodwill in the marketplace. In addition, consumers who purchase products from you are likely to be confused by the lack of information and guidance concerning the use of such products, which damages the reputation of SmartyPants and further infringes on the SmartyPants Marks.

Even if you purchased or otherwise obtained the products legally from an Authorized Reseller, the "first sale doctrine" does not protect you from liability for your trademark infringement because your products are materially different and do not (or cannot) offer the quality controls that SmartyPants provides. Authorized Resellers are subject to the SmartyPants Resale Policy that imposes certain obligations, including quality control specifications and customer service requirements that impact SmartyPants' consumer warranty policy. Because you are not an Authorized Reseller, SmartyPants cannot ensure that you provide these services to your customers, making the products you sell materially different from genuine SmartyPants Products. Your unauthorized sale of SmartyPants Products without adhering to SmartyPants' quality control standards harms both the SmartyPants brands and consumers.[4] It is also well-recognized that goods are not genuine, and are therefore infringing, if they fail to conform to the trademark holder's quality control standards. Authorized Resellers also are required to assist with recalls and other consumer safety information efforts. Courts have held that when purchasers of unauthorized products are limited in their ability to be informed of recall and safety information, they are not receiving the "full bundle of services and product features that typically accompany such a purchase" and have not received a genuine product.[5]

**Please be advised that SmartyPants will undertake all appropriate steps to protect the SmartyPants Marks and its associated goodwill.** You can avoid legal action by immediately ceasing and desisting from any and all infringing activity including offering for sale and selling SmartyPants Products on Amazon.com or other unauthorized third-party online marketplaces. In addition, you are hereby put on notice that SmartyPants is and will continue monitoring your activities for this purpose.

If SmartyPants files a lawsuit, it will seek all available monetary damages (including, without limitation, disgorgement of profits, compensatory damages, attorneys' fees, and investigative and other costs as well as all injunctive relief to which it may be entitled). In connection with its lawsuit against you, SmartyPants will investigate and obtain the identities of all individuals and entities involved in your sales. If you ignore this notice and any subsequent lawsuit, SmartyPants may seek and execute a default judgment against you for all of the relief outlined above.

We thank you in advance for your prompt attention to this matter. Please email our team at SellerCompliance@smartypantscorp.com by **May 11, 2023** to confirm your compliance with the demands set forth herein.

Sincerely,

Seller Compliance Team
**SmartyPants, Inc.**

---

[2] 15 U.S.C. § 1114; *Courtenay Commc'ns Corp. v. Hall*, 334 F.3d 210, 213 n.1 (2d Cir. 2003)
[3] *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1072 (10th Cir. 2009) (quoting *Davidoff & CIE, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1302 (11th Cir. 2001)); *Shell Oil Co. v. Commercial Petroleum, Inc.*, 928 F.2d 104, 107 (4th Cir. 1991)
[4] *SKF United States, Inc. v. ITC*, 423 F.3d 1307, 1312 (Fed. Cir. 2005); *Zino Davidoff SA v. CVS Corp.*, 571 F.3d 238, 243 (2d Cir. 2009); *Produits Nestle, S.A. v. Casa Helvetia, Inc.*, 982 F.2d 633, 643 (1st Cir. 1992); *Abava (USA), Inc. v. JW.G., Ltd.*, 250 F. Supp. 2d 366, 369 (S.D.N.Y. 2003
[5]

Attachment L



**Jeremy Leung** <jeremy@ascendcom.com>

to Will, me ▾

Fri, Jun 9, 12:03 AM

Hi Brandon

We have just secured a boatload of inventory that we will begin to sell on stores once the manufacturer delivers it to us (within one month).

These items will be fulfilled by Amazon and make 25-40% ROI and we will guarantee the sale through of the inventory otherwise we will buy it back.

This will require minimum10k investment.

In the meantime I have requested your store to be selling other inventory we have in our warehouse to the tune of $5,000 of COGS which should equate to $6,000 of sales. You should see these sales begin within the next 1-2 weeks.

If you want to wait until we sell through these items first before you move forward with our FBA wholesale program that I outlined above, then we can do that.

Regards

Jeremy

...

—



**Jeremy Leung**
COO, Ascend CapVentures



🌐 www.ascendcapventures.com  |  ✉ jeremy@ascendcapventures.com

**Forbes**  Entrepreneur  **yahoo!**  **Inc.**  *MarketWatch*

**Jeremy Leung**

to me, Will ▾

Wed, Jun 21, 3:38 AM (2 days ago)

Hi Brandon

We are providing you an opportunity here to purchase inventory that we will contractually guarantee the sale of within 60 days after it reaches Amazon. The inventory will make 25-40% ROI and we even provide you an invoice after we find the products should you wish to approve them. While we try our best to stick to the product on that invoice, if we find a product that has a quicker lead time and higher ROI from the manufacturer, we will switch the other products out for these ones.

We obviously want to turn your first year around and yes, as part of us operating an e-commerce business on your behalf, we need you to purchase inventory. To make things easier for our clients, we accept credit card and we then wire the amount to the manufacturers, who do not accept credit card as they give us the lowest prices so we can deliver the most profits for our clients.

Regards

Jeremy

...

EX 6
566

# Attachment M

dōTERRA

Brand Authorization Reseller Certificate

This certificate confirms that Hi Standards Marketplace is an authorized reseller of doterra products.

Authorized Reseller Status: Hi Standards Marketplace is officially recognized as an authorized reseller of our brand's products.

Validity Period: This certificate is valid from 3 March 2022 to 26 November 2024.

Geographical Scope: Hi Standards Marketplace authorization to resell our products is limited to United State America.

By receiving this Brand Authorization Reseller Certificate, Hi Standards Marketplace agrees to comply with our brand's guidelines and maintain fair pricing for our products. This certification may be subject to review, and any violation of the terms may lead to revocation.

Authorized Signatory: _Dr. David K. Hill_

Date:  _3 March 2022_____

**EX 6**
**568**

FARMΛCY

BRAND REGISTRY AUTHORIZATION

By signing this form, you confirm that:

(i)        You authorize the "HI STANDARD MARKETPLACE" identified below to manage your brand on Amazon through Amazon's Brand Registry.

(ii)       You have the ownership rights to give the authority described in (i) above.

If you feel, at any time, that the identified Brand Manager should no longer manage your brand through Amazon's Brand Registry, contact brand-registry-service@amazon.com to revoke the Brand Manager's authorization.

**Note that:**

- By granting Brand Registry authority to an Amazon seller, you are giving that seller greater control, compared to other sellers, over the Amazon detail page attributes (e.g. titles, descriptions and images) for products under your brand.
- Brand Registry enrollment or authorization does not prohibit other sellers from selling the registered products on Amazon.
- Brand Registry authorization is an agreement solely between you and the seller you authorize. Amazon does not vouch for the suitability of the authorized seller or any actions taken (or not taken) by the authorized seller. You acknowledge that Amazon has no responsibility or liability for any actions or inactions by the authorized seller.
- Amazon in its sole discretion may at any time, cancel or modify (a) the Brand Registry or (b) any seller's Brand Registry authorization.

AUTHORIZED BRAND REGISTRY MANAGER:  Hi Standard Marketplace

BRAND NAME(S):                          Farmacy

BRAND REPRESENTATIVE:                   Anna June Wilks

BRAND CONTACT INFORMATION:              PR@farmacybeauty.com

                                        Farmacy Beauty
                                        552 7th Avenue, Suite 501
                                        New York, NY 10018

BRAND OWNER SIGNATURE:        *Anna June*
                              _____

                              Date: ___05/22/2023_____

**EX 6
569**



**Hyper Tough**

623 Mulberry Point Aliceville, AL 35442

sales@hyperparts.com

**Brand Authorization Letter for Online Selling**

This is to certify that Hi Standards Marketplace ▓▓▓▓▓▓▓▓▓▓▓ BOSTON MA ▓▓▓▓ is authorized to supply, promote,

Distribute, sell, exhibit, negotiate, and hold responsibility for after-sale services of Hyper Tough brand worldwide.

The Brand Name include Products Which Brand have Will be Written here

**Trademark Application No:**871587414
This Letter is valid from 08 October 2022 to 08 October 2025

Authorization Number: 48628784

**Brand Owner Name:**Isaias Camacho
Signature with Company Seal

*Isaias Camacho*

HyperParts, LLC
623 Mulberry Point
Aliceville, AL 35442

**866-858-4064**
sales@hyperparts.com

**EX 6**
**570**

**Cake Brands**
**USA**

*Your Partner in Sourcing American Brands*

Date: **Aug 15, 2023**

## <u>LETTER OF AUTHENTICITY</u>

This letter confirms that **Ten-Twenty-Holdings-LLC**, who owns the Amazon store by the same name, is a customer of **Cake Brands USA.**

Cake Brands USA is a distributor and wholesaler of authentic **International Grocery** products and its invoices have been accepted by Amazon as an approved supplier since the past many years.

This is to state that the products purchased by the above customer via our Sales Invoice number **INV-01268** are authentic **Grocery** products purchased directly from the Importers.

The UPC's on the products are also the manufacturer's original UPC's and have not been changed.

Our office hours are Mon-Fri, 9 am – 5 pm EST.

Sincerely,

Farhan Shaikh
**Director of Sales**
**Cake Brands USA**

---

**Regd. Address**: 1420 Gemini Blvd. Suite 12, Orlando, FL 32837, USA | **Phone**: +1 (407) 800-3133
**E-mail**: sales@cakebrandsusa.com | **Website**: www.cakebrandsusa.com

**EX 6**
**571**

# Attachment N

**EX 6**
**572**



Attachment O

**EX 6**
**574**

 Gmail

**Branden Lathan** ██████@gmail.com>

---

# Cease and Desist Notice – Breach of Terms of Service, Non-Disclosure Agreement, and Defamation

14 messages

---

**AscendEcom Legal** <legal@ascendecom.com>                                    Wed, Jun 21, 2023 at 1:19 AM
To: ██████@gmail.com
Cc: Julie Fabio <julie@ascendecom.com>

Dear Mr. Branden Lathen,

We write to you concerning your recent online activities that have been brought to our attention. It has been noted that you have committed actions that directly violate Ascend Ecom LLC's Terms of Service (TOS) and the Non Disclosure Agreement (NDA), and have engaged in defamation.

By initiating a professional relationship with Ascend Ecom LLC and using our services, you have implicitly agreed to abide by our legal terms and conditions. These include a non-disparagement clause and an NDA, both integral parts of our TOS, which are outlined and available publicly on our website at https://www.ascendecom.com/TOS

We observe that the public statements you've made about our business are not only in breach of these agreements but are also defamatory in nature. These agreements were designed to maintain the privacy, integrity, and professionalism of our business relationships, and any violation is treated with the utmost seriousness.

Pursuant to the "Prompt Rectification" clause in our TOS, we insist upon the immediate cessation of these activities, including but not limited to making defamatory remarks about our business and disclosing confidential information pertaining to your dealings with Ascend Ecom LLC. You are hereby requested to rectify the situation and cease all breach activities within 48 hours of receiving this notice. This includes removal of your online defamatory and disparaging comments.

Please understand that if you fail to comply with this demand, we will have no choice but to pursue further legal action to protect our business interests. We hope to avoid this by seeing an amicable and prompt resolution to this situation.

Kindly note that this letter does not constitute an exhaustive or complete statement of our rights, remedies, claims, or defenses, all of which are expressly reserved.

Please confirm the receipt of this letter and your compliance with the above demands within the specified time frame.

Sincerely,

---

**Branden Lathan** <██████@gmail.com>                                    Wed, Jun 21, 2023 at 8:59 AM
To: AscendEcom Legal <legal@ascendecom.com>
Cc: Julie Fabio <julie@ascendecom.com>

Julie,

I have written an honest review based on my personal experience with Ascend on a website meant for exactly such= things. I have evidence to support any claims that have been made.

Please provide me with the clause in our signed contract that says by entering in this partnership that I am implicitly= agreeing to these TOS (which I have never seen or been sent prior to this communication). The TOS you are referring to= is in reference to the use of the Ascendecom.com website, which I have never used.

I have confirmed receipt of this letter but will await further response from your office. Please respond within 24 hours with my request above.

Branden
[Quoted text hidden]

---

**AscendEcom Legal** <legal@ascendecom.com>                                    Wed, Jun 21, 2023 at 9:11 AM
To: Branden Lathan <███████@gmail.com>
Cc: Julie Fabio <julie@ascendecom.com>

Dear Mr. Lathan, We refer to your recent response to the cease and desist notice issued to you by Ascend Ecom LLC. We understand that you have concerns about the applicability of our Terms of Service (TOS) to your relationship with Ascend Ecom LLC.

It is pertinent to mention that our TOS is not limited to usage of our website but extends to all interactions and relationships formed with Ascend Ecom LLC. As per standard legal practice and as defined under American jurisprudence, terms of service are part of a legal agreement entered into between a company and a user, who can be a client, a customer, or a visitor to the company's website or user of the company's services.

You, by entering into a business relationship with Ascend Ecom LLC, implicitly accepted our TOS. The "click-wrap" or "browse-wrap" agreement which you may have encountered upon initial engagement with our services acts as an electronic handshake. This is recognized by courts and forms an enforceable contract.

In addition to the implicit acceptance, it is also important to note that our TOS has been made publicly available on our website, thereby providing reasonable notice to any user of our services, whether they access our website or not.

The non-disparagement clause included in our TOS, which you implicitly agreed to, prohibits the parties from making disparaging or defamatory statements about each other. Your review contains several negative remarks, some of which are misleading and could potentially harm Ascend Ecom LLC's reputation. As such, these remarks are deemed disparaging and defamatory.

We understand that you might have some concerns, but we implore that these be addressed in a more constructive and appropriate manner as stipulated in the TOS, not through public defamatory statements. If the content is not removed within the stipulated 48 hours, we will be left with no choice but to pursue further action steps.

Should you comply with the cease and desist notice, we assure you that you can continue with your engagements with our team as before, and Jeremy Leung will be more than happy to discuss further options to strengthen our partnership as he has alluded to in his previous email to you. I assure you, the best approach here is to move past this so there can be an amicable resolution. Thank you.

[Quoted text hidden]

---

**Branden Lathan** <███████@gmail.com>                                         Wed, Jun 21, 2023 at 9:33 AM
To: AscendEcom Legal <legal@ascendecom.com>
Cc: Julie Fabio <julie@ascendecom.com>

My apologies for replying in multiple threads. I will continue to respond to this thread only and will transfer some of my= previous response here that is relevant:

You must be aware that in order for a Terms of Service to be enforceable, especially for a website, you must= **conspicuously** present the TOS to the user. This means ensuring that the user saw your agreement, had the opportunity= to review your agreement, and affirmatively accepted the agreement. I am telling you that before today, I was never= presented with your TOS and I am requesting evidence of communication from anyone in your company or where reference= to this TOS was made in any previous documents or agreements that I was given. I never visited your website and was= presented with a Clickwrap for your TOS. Just merely having the TOS available on your website does not satisfy the= requirements.

In response to you saying: *"You, by entering into a business relationship with Ascend Ecom LLC, implicitly accepted our TOS. The "click wrap" or "browse wrap" agreement which you may have encountered upon initial engagement with our services acts as an electronic handshake. This is recognized by courts and forms an enforceable contract."*

I will reiterate, I was never presented with a TOS. No where in our signed contract is there any reference to a TOS. I was never presented your TOS upon visiting your website. I was never told about your TOS prior to todays communication.

Additionally, please provide me with exactly what statements in my review I submitted you consider disparaging and defamatory and I will review. The Consumer Review Fairness Act (CRFA) protects people's ability to share their honest opinions about a business's products, services, or conduct, in any forum, including social media. The Act makes it illegal for a company to use a contract provision that bars or restricts the ability of a person who is a party to that contract to review a company's products, services, or conduct.

Thank you

Branden
[Quoted te t hidden]

---

**AscendEcom Legal** <legal@ascendecom.com>                                    Wed, Jun 21, 2023 at 9:51 AM
To: Branden Lathan <████████@gmail.com>
Cc: Julie Fabio <julie@ascendecom.com>

Branden, We appreciate your engagement on this matter, and in the interest of transparency, we have strived to respond promptly to your queries. This communication will serve as our **final response** on this issue from the Compliance Team.

Firstly, it's crucial to emphasize that our Terms of Service (TOS) extends beyond the context of our website and is integral to all our business operations and dealings with clients. This holds irrespective of the medium or platform through which the business relationship is established or conducted. Commercial law and court precedents widely recognize this approach in today's digital landscape.

Your assertion that you were never presented with our TOS does not negate its enforceability. It remains publicly accessible on our website and forms a fundamental part of our contractual framework. Implicit in our business relationship is the assumption that you have acquainted yourself with all our terms and conditions.

Your request to identify disparaging and defamatory statements in your review has been addressed. We view your entire review as painting an untrue and damaging picture of our company, with assertions that Ascend Ecom LLC is a "fraud" and accusations of a lack of communication and accountability, both of which we staunchly contest.

We acknowledge and respect the Consumer Review Fairness Act (CRFA). However, it's crucial to underline that the Act does not protect reviews that are misleading, untrue, or damage a business's reputation without cause. While the CRFA prohibits certain non disparagement clauses, it does not absolve a party from liability for defamation, slander, or similar claims. Thus, misleading or untrue statements that harm a company's reputation can still be the subject of legal action.

Aside from the breach of our TOS, we also view your public statements as defamatory. Regardless of the TOS, defamation is a standalone legal issue, and we are prepared to pursue it separately if your remarks are not rectified promptly and removed.

We kindly request once more that you comply with our TOS and remove your review. Failing to do so will leave us with no option but to pursue this matter further.

We have valued our relationship with you and hope to resolve this matter amicably. However, this will be the final communication on this issue from our Compliance Team.

[Quoted te t hidden]

---

**Branden Lathan** <████████@gmail.com>                                    Wed, Jun 21, 2023 at 10:14 AM

To: AscendEcom Legal <legal@ascendecom.com>
Cc: Julie Fabio <julie@ascendecom.com>

Thank you for the response. At this time I will comply and modify my review at this time. Please review my edit and let me know if I am within your TOS now.

I will say though, that my remarks are not without cause. I have many messages saved that constitute fraud. Such as your employees explicitly telling me that they have sent someone to purchase specific items for my store and the items have been picked up. They sent me an invoice to pay for these items. However, prior to paying the invoice another employee confirmed that the items were never actually purchased or picked up and that they are no longer being ordered. Is that not considered fraudulent?

I'd like to make it known for the record that I have many countless attempts to rectify all of my issues with Will Basta and the rest of the management team and it was only when I stopped receiving any type of meaningful response from anyone that I elected to leave a review hoping that it would garner their attention.

Now that I have complied with your demands, I assume this matter to be closed?

Thank you

Branden

[Quoted text hidden]

---

**AscendEcom Legal** <legal@ascendecom.com>                                    Wed, Jun 21, 2023 at 10:30 AM
To: Branden Lathan ████████@gmail.com>
Cc: Julie Fabio <julie@ascendecom.com>

Hello,

Thank you for your prompt attention and efforts to amend your review in line with our requests. However, I must note that the current form of your review still constitutes a breach of our Terms of Service (TOS).

Specifically, the inclusion of statements such as "Hopefully this review meets Ascends Lawyers requirements" and "I have been contacted by Ascends legal team who has deemed my previous review as defaming and disparaging so I have edited it in order to remain compliant with their Terms of Service," refers to private, confidential matters, and ongoing legal communication, which is against our TOS.

The TOS that governs our relationship is in place to protect both parties and ensure a level playing field. We kindly ask that you amend your review to remove these specific references without mentioning the ongoing legal correspondence.

We also acknowledge the specific incidents you have pointed out in your email. Please rest assured that we take all client-related concerns seriously and aim to provide the highest level of service. However, this compliance channel is not the appropriate forum for addressing these concerns. We encourage you to communicate these matters directly with our client service team or your account manager.

Once your review is in full compliance with our TOS, we consider this matter closed from a compliance standpoint. We thank you for your cooperation and understanding in this regard.

[Quoted text hidden]

---

**Branden Lathan** <████████@gmail.com>                                    Wed, Jun 21, 2023 at 10:49 AM
To: AscendEcom Legal <legal@ascendecom.com>
Cc: Julie Fabio <julie@ascendecom.com>

I will edit my review to comply as you specified in the above response. You guys really are doctoring these reviews and I= personally believe you are in violation of the CFRA but I am not a lawyer so I guess I will trust that you as an attorney are= operating within the ethical guidelines of the Bar association.

EX. 6
5/8

I also have a hard time believing you saying that you guys take client-related concerns seriously. As I said, Ive made COUNTLESS attempts to rectify my concerns, I have been extremely amicable and patient when dealing with Ascend's leadership team. It was only when people like Will started having an attitude with me and treating me like I was just a nuisance instead of a client that paid your company a lot of money for a service that I am not receiving satisfactorily that I took my issues to a public forum. I wish you knew my level of frustration and had visibility to my history of communications with Ascend.

I also want to note that I am open to amending my review if and when things turn around for my store. I never wanted it to get to this point but i was left with no choice.

Please let me know if my latest revision is in compliance.

Thank you

Branden
[Quoted text hidden]

---

**AscendEcom Legal** <legal@ascendecom.com>                    Wed, Jun 21, 2023 at 12:48 PM
To: Branden Lathan <█████████@gmail.com>
Cc: Julie Fabio <julie@ascendecom.com>

Hello, We acknowledge the receipt of your adjusted review and your effort to comply with the Terms of Service (TOS). However, we must once again clarify that the updated review remains in non-compliance with our TOS, specifically regarding the breach of privacy terms.

As stipulated in the Non-Disclosure Agreement (NDA) and privacy section of our TOS, discussions, communications, and dealings between you and Ascend Ecom LLC, including those involving the legal and compliance teams, are confidential. Mentioning these interactions in your review is a clear breach of this confidentiality, impacting our privacy rights. As such, your review still violates the agreed-upon TOS, and we must insist on prompt rectification.

Our request remains consistent: abide by the TOS, specifically respecting the confidentiality and non-disparagement clauses. We need the review to exclude mention of any confidential communications or interactions with Ascend Ecom LLC and its representatives, and to avoid disparaging or defamatory remarks.

Once these changes are implemented and the review is in compliance, we can proceed accordingly. We appreciate your understanding and cooperation in promptly rectifying this matter.

[Quoted text hidden]

---

**Branden Lathan** <█████████@gmail.com>                    Wed, Jun 21, 2023 at 1:05 PM
To: AscendEcom Legal <legal@ascendecom.com>
Cc: Julie Fabio <julie@ascendecom.com>

I am trying to abide by these terms but I obviously need assistance here. What exactly needs to be changed? There is nothing in my current review that implies I've had any discussion with the legal team. I simply state that I changed my review to be compliant with your TOS. Are you telling me that it is prohibited to even mention the existence of your TOS? I'm genuinely confused.

Also, can the author of these communications please identify themselves with their name and Bar number? I would like to know who I am speaking with in regards to this legal team.

Thank you

-Branden

On Jun 21, 2023, at 12:48 PM, AscendEcom Legal <legal@ascendecom.com> wrote:

[Quoted text hidden]

---

**AscendEcom Legal** <legal@ascendecom.com>                                                    Wed, Jun 21, 2023 at 1:29 PM
To: Branden Lathan ██████████@gmail.com>
Cc: Julie Fabio <julie@ascendecom.com>

Branden,

Thank you for making efforts to revise your review. However, your current statement "I have edited my original review in order to remain compliant with Ascends Terms of Service which prohibits clients from speaking about certain aspects of their experience with the company in order to protect their reputation. How convenient." is still deemed a breach of Ascend Ecom's Terms of Service (TOS) due to the following reasons:

1. **Indirect Disclosure**: By mentioning that your review has been edited "to remain compliant with Ascends Terms of Service," you are indirectly disclosing that there have been communications and interactions about this issue with Ascend's legal and compliance team. This violates the Non-Disclosure Agreement (NDA) clause of our TOS, which deems all communication with our legal and compliance teams as confidential.

2. **Disparagement**: The concluding phrase "How convenient" can be construed as sarcastic and negative in tone, which is considered disparaging towards Ascend Ecom. Our TOS explicitly states that public remarks made by clients should not be disparaging, defaming, or in any way potentially harmful to Ascend Ecom's reputation. Regards,

[Quoted text hidden]

---

**Branden Lathan** ██████████@gmail.com>                                                      Wed, Jun 21, 2023 at 2:00 PM
To: AscendEcom Legal <legal@ascendecom.com>

While I dont agree that me saying that I edited my review to remain compliant with your TOS constitutes an indirect disclosure with your legal team as I could have simply realized this on my own. I have modified my review to remove the statements you cited.

I would also like to once again request that the person who is writing to me on behalf of this legal team to identify themselves by name and bar number so that I know that you are indeed qualified and permitted to advise on legal matters.

Please confirm that this matter is resolved and please provide the information requested above.

Thank you

Branden
[Quoted text hidden]

---

**AscendEcom Legal** <legal@ascendecom.com>                                                    Wed, Jun 21, 2023 at 2:12 PM
To: Branden Lathan ██████████@gmail.com>

Branden, Thank you for your response. We appreciate your understanding and cooperation.

In response to your request, please note that we are the Compliance team at Ascend Ecom LLC and our primary role is to enforce the company's policies and Terms of Service. Our team is made up of diverse professionals with expertise in law and compliance. We are not providing you personal legal advice, nor are we representing you in a legal capacity.

While we appreciate your desire for transparency, please note that the sharing of individual bar numbers isn't necessary or customary in a situation like this. Bar numbers are generally shared by attorneys who are directly representing a client in a professional capacity. Our role is to uphold and enforce the company's policies and rules, not to act as a personal legal advisor.

That being said, if a situation arises or escalates to where it requires the direct involvement of our company attorneys, they will present themselves accordingly with all the necessary credentials at that time.

EX 6
580

As for the compliance of your review, we appreciate the modifications made. We can now continue on a positive note and look forward to resolving any outstanding operational matters for you.

Thank you for your understanding, this matter is closed. Regards

[Quoted text hidden]

---

**Branden Lathan** ███████ @gmail.com>                                     Wed, Jun 21, 2023 at 2:17 PM
Draft To: AscendEcom Legal <legal@ascendecom.com>

[Quoted text hidden]

Attachment P

[Quoted text hidden]

---

**AscendEcom Legal** <legal@ascendecom.com>                                   Wed, Jun 21, 2023 at 1:29 PM
To: Branden Lathan <████████@gmail.com>
Cc: Julie Fabio <julie@ascendecom.com>

Branden,

Thank you for making efforts to revise your review. However, your current statement "I have edited my original review in order to remain compliant with Ascends Terms of Service which prohibits clients from speaking about certain aspects of their experience with the company in order to protect their reputation. How convenient." is still deemed a breach of Ascend Ecom's Terms of Service (TOS) due to the following reasons:

1. **Indirect Disclosure**: By mentioning that your review has been edited "to remain compliant with Ascends Terms of Service," you are indirectly disclosing that there have been communications and interactions about this issue with Ascend's legal and compliance team. This violates the Non-Disclosure Agreement (NDA) clause of our TOS, which deems all communication with our legal and compliance teams as confidential.

2. **Disparagement**: The concluding phrase "How convenient" can be construed as sarcastic and negative in tone, which is considered disparaging towards Ascend Ecom. Our TOS explicitly states that public remarks made by clients should not be disparaging, defaming, or in any way potentially harmful to Ascend Ecom's reputation. Regards,

[Quoted text hidden]

---

**Branden Lathan** ████████@gmail.com>                                       Wed, Jun 21, 2023 at 2:00 PM
To: AscendEcom Legal <legal@ascendecom.com>

While I dont agree that me saying that I edited my review to remain compliant with your TOS constitutes an indirect disclosure with your legal team as I could have simply realized this on my own. I have modified my review to remove the statements you cited.

I would also like to once again request that the person who is writing to me on behalf of this legal team to identify themselves by name and bar number so that I know that you are indeed qualified and permitted to advise on legal matters.

Please confirm that this matter is resolved and please provide the information requested above.

Thank you

Branden
[Quoted text hidden]

---

**AscendEcom Legal** <legal@ascendecom.com>                                   Wed, Jun 21, 2023 at 2:12 PM
To: Branden Lathan <████████@gmail.com>

Branden, Thank you for your response. We appreciate your understanding and cooperation.

In response to your request, please note that we are the Compliance team at Ascend Ecom LLC and our primary role is to enforce the company's policies and Terms of Service. Our team is made up of diverse professionals with expertise in law and compliance. We are not providing you personal legal advice, nor are we representing you in a legal capacity.

While we appreciate your desire for transparency, please note that the sharing of individual bar numbers isn't necessary or customary in a situation like this. Bar numbers are generally shared by attorneys who are directly representing a client in a professional capacity. Our role is to uphold and enforce the company's policies and rules, not to act as a personal legal advisor.

That being said, if a situation arises or escalates to where it requires the direct involvement of our company attorneys, they will present themselves accordingly with all the necessary credentials at that time.

EX 6
583

As for the compliance of your review, we appreciate the modifications made. We can now continue on a positive note and look forward to resolving any outstanding operational matters for you.

Thank you for your understanding, this matter is closed. Regards

[Quoted text hidden]

---

**Branden Lathan** <​[REDACTED]​@gmail.com>                                   Wed, Jun 21, 2023 at 2:17 PM
Draft To: AscendEcom Legal <legal@ascendecom.com>

[Quoted text hidden]

Attachment Q

 Gmail

Branden Lathan <​██████​@gmail.com>

## One Year Update

**Jeremy Leung** <jeremy@ascendecom.com>                                Mon, Jun 26, 2023 at 3:03 AM
To: Branden Lathan <​████████​@gmail.com>
Cc: AscendEcom Legal <legal@ascendecom.com>, Julie Fabio <julie@ascendecom.com>, Will Basta <will@ascendecom.com>

Hi Branden

I just noticed the review you left of us.

If you wouldn't mind, would you mind removing it and saving your judgement for us after you give us a chance to get you some quick hgh ROI sales on your store?

Ultimately we threw in the inventory guarantee for you because we want you to be as confident as we are in purchasing wholesale inventory for your store, but it was definitely a value add because our contract prior had no mention of this. Obviously we have both signed the contract now so it will be valid regardless if you take the review down or not, but it would really help us if you were able to take the review down, even if you give us 6 months after you purchase inventory to see the results, which I am confident you will be happy with

Regards

Jeremy
[Quoted te t hidden]

Attachment R

Thanks

-Branden

On Sep 1, 2023, at 1:23 PM, Jeremy Leung <jeremy@ascendecom.com> wrote:

managed to pick up some items for you today to sell on weekend

On Wed, Aug 30, 2023 at 8:20 AM Branden Lathan <███████@gmail.com> wrote:
Good Morning Jeremy,

I'm following up on your email to me Friday saying that you instructed my store manager to
activate some FBM so that I can get some sales coming in over the weekend while we wait for the
wholesale order to land. No FBM products have been added as of today and I'm not sure why
there would be such a delay in doing so. Also, the appeal for the product authenticity violation also
hasn't been filed yet. I can't help but feel that no action has been taken by my team since our call
last Tuesday despite you having instructed them to take action. It seems they are simply not
listening to you which is baffling to me being that you are the company founder but this is just
another example of the consistent issues i've been having with my team(s).

Thank you

Branden

On Tue, Aug 29, 2023 at 9:47 AM Branden Lathan <███████@gmail.com> wrote:
Hey Jeremy.

I will keep this between us and thanks for providing it. Lululemon is a very good
brand obviously so this is very promising. I appreciate the transparency and communication.

-Branden

On Aug 28, 2023, at 7:27 PM, Jeremy Leung <jeremy@ascendecom.com> wrote:

Hi Branden

I pressed your store manager a bit further about the product. Please do not send this
to anyone but I have attached a letter of authorization selling the product that you
will be selling addressed to the parent company owned by us that purchased the item
in bulk. Just wanted wanted to share it with you because of the previous matters we
had.

Regards

Jeremy

On Mon, Aug 28, 2023 at 3:57 PM Branden Lathan <███████@gmail.com>
wrote:
Sounds great Jeremy. Thank you for getting back to me. I look forward to seeing
the results

-Branden

On Aug 28, 2023, at 6:55 PM, Jeremy Leung
<jeremy@ascendecom.com> wrote:

hi Branden

sorry been a busy day.

We have 3k units of these bags in our warehouse, we submitted
ungating documents in your store today so it should be ungate at latest
2/3rd september. It will be likely earlier but that's just the timeline
Amazon give us. Should receive 20% ROI+ on these i know you will
be very happy once amazon let us sell these on your store.

Regards

Jeremy

On Mon, Aug 28, 2023 at 9:59 AM Branden Lathan
<███████@gmail.com> wrote:
Hi Jeremy just following up on your message below as I expected to
see some fbm products listed as you said but nothing has happened
yet. I also don't see any movement on that violation either.

Thanks

-Branden

On Aug 25, 2023, at 3:08 PM, Jeremy Leung
<jeremy@ascendecom.com> wrote:

Hi Branden

We do not really find these groups are helpful for our clients. We are literally working as hard as we can to get things moving. I know you have a right to free speech but it was just a request.

I have been told we are working on your violation and it should be done soon.

I have also asked our team to list some products on FBM so we can hopefully see some more sales on the weekend while we wait for your authorized products to arrive in the coming 1-2 weeks.  That way I can show more action is being made on your account.

Hope you have a great weekend.

Regards

Jeremy

On Fri, Aug 25, 2023 at 9:49 AM Branden Lathan <███████@gmail.com> wrote:

Hey Jeremy,

I started a fb group a few months ago as a way for clients to share their experiences. The group is private and its purpose is for people to share information about their businesses. Its existence was born out of a need for people to get answers they aren't getting from their teams.  When we are ignored and have no one else to turn to. I was getting private messages daily from people who were in the same boat and were desperate. There are people who have their home equity or their kids college funds invested in this and the stress it causes when you see it failing is tremendous. So this support group is a way to have the of transparency that we were promised when we enlisted your companies services but many of us have not received. Its not meant to cause you headaches.

I understand you are working diligently to help your clients that have fell to the wayside and I support that and think its a good thing. Like I said on our call, I'm completely onboard with trying to turn my experience around and I'm sure there are others in the same boat. I removed my Trust Pilot review as a show of good faith in the promises you made to me on our call Tuesday. However, as I said then, I have been promised the same stuff in the past by Will and not only were those promises not fulfilled, I was eventually treated as a nuisance by him and he was often very rude to me. So please try to understand that at this point, all I have are your words and have yet to see any action. Even as of today, my account still has that product authenticity violation that needs to be appealed which I mentioned was high priority during our call because its greatly affecting my account health and im on the verge of being suspended because of it. It should only take a few minutes for someone to file the appeal. Its been three days since our call and still no one has taken action. You said you spoke to my store manager about my issues so I hope you can see why I am still a bit skeptical. I think that business relationships are reciprocal and I can be the only one taking action to improve the relationship.

I think that the groups existence is important for the clients that are in it. I would like to suggest that rather than closing the group, once my store turns around and things improve in a meaningful way, I will be the first to share the update with the group which will definitely help shift the tone of the group and hopefully others will share the same news as they will have similar experiences as you work diligently to make things right for those who have having issues similar to mine.

Thank you

-Branden

On Aug 24, 2023, at 7:41 PM, Jeremy Leung <jeremy@ascendecom.com> wrote:

Hi Branden

I received word from a client that you created a facebook group and are inciting disgruntled clients against us. It's causing us some problems. We currently have a list of clients who are in the store and we are working as diligently as we can to help them get more sales.

Would you mind taking it down as we work on your store?

Regards

Jeremy

On Tue, Aug 22, 2023 at 3:41 PM Jeremy Leung <jeremy@ascendecom.com> wrote:

> Branden, no problem
>
> I am going to let your store manager know we spoke and the notes I took for our meeting to ensure the issues are addresses.
>
> So we can have this in writing, he has 2-3 weeks to get you sales and to sell through your entire invoice amount, otherwise I am moving you to our "rescue team" which is basically our Philippines staff who will list products that I have sourced. These products will sell incredibly well.
>
> Right after your call, I had a call with our developer who is developing the Ascend app, please see the screenshot below, I am told it will be 2 weeks before it is done and we can beta test it on various accounts. I'm pretty happy with it so far!
>
> Regards
>
> Jeremy
>
> On Tue, Aug 22, 2023 at 12:31 PM Branden Lathan <██████@gmail.com> wrote:
>
>> Hey Jeremy,
>>
>> Thank you again for taking the time to meet today and discuss in detail my issues as well as the plan to move forward. One thing I forgot to reiterate before we hung up was that there is still one product authenticity complaint on my account from 8/10/23 and because it hasnt been address yet, my account health is currently 180 and i am at risk of suspension. Im really worried that might happen if an appeal isnt filed ASAP. So could you task Brad with taking care of that immediately?
>>
>> As we discussed, I have removed my review from Trust Pilot in good faith and I hope that with everything we talked about today, it will never get republished and we will have a fruitful business partnership in the near future.
>>
>> In the meantime, if possible, as we discussed, I would really like to see some products hit my store quickly to drum up some sales while I wait for the bigger shipment to arrive. If you could make that happen that would be great.
>>
>> Thank you
>>
>> Branden Lathan
>>
>> On Tue, Aug 22, 2023 at 2:53 PM Jeremy Leung <jeremy@ascendecom.com> wrote:

Attachment S



# *SALES APPLICATION & PURCHASING AGREEMENT*

**Lululemon athletica, Inc.**

**Date:** <u>07-20-2023</u>

This Sales Agreement for Products (this "Agreement") is made effective as of date listed above by and between Lululemon athletica, Inc., located at 1818 Cornwall Ave, Vancouver BC V6J 1C7, ("Lululemon athletica"),  and Purchaser (purchaser as set forth below).

<u>PURCHASER INFORMATION:</u> (please fill out completely)

Company Name: <u>A m e r i c a n   G r o u p</u>

Company Point of Contact Name: <u>J a m e s   A n d e r s o n</u>

Company Point of Contact Phone: <u>5 1 2   3 9 4   8 8 7 8</u>

Company Point of Contact Email: <u>procurementhubcoglobal@gmail.com</u>

Shipping Address: <u>52 Thiells Mount Ivy Rd, Pomona, NY, 10970</u>

Billing Address: <u>P.O Box 13697, Austin, Texas, 78711-3697</u>

Company EIN: <u>        </u> or Company Resale Tax ID#: <u>803869052</u>

Company Website(Optional):

Platforms you wish to sell Lululemon athletica: <u>Online own website and 3rd party seller forums.</u>

1

**EX 6**
**592**

_____

1. PRODUCT STANDARDS. The Goods shall comply with industry standards.

2. TITLE/RISK OF LOSS. Buyer shall pay reasonable shipping costs in accordance with its shipping instructions, but the seller shall be responsible for packaging, shipping and safe delivery and shall bear all risk of damage or loss until the goods are delivered to the buyer's address.

3. PAYMENT. Payment shall be made to Lululemon athletica, Inc. in the full amount of invoice at time that Purchase Order (PO) is received by Lululemon athletica, Inc. from the buyer and Lululemon athletica provides the invoice for payment. Product will not ship until payment is received in full.

In addition to any other right or remedy provided by law, if purchaser fails to pay for the Goods when due, Lululemon athletica has the option to treat such failure to pay as a material breach of this Agreement and may cancel this Agreement and/or seek legal remedies as described below under "Remedies on Default."

4. DELIVERY. Time is of the essence in the performance of this Agreement. Lululemon athletica will arrange for delivery, by carrier chosen by Lululemon athletica according to the following schedule: Within 20 business days of payment being received unless unforeseen issues arise which Lululemon athletica, Inc. will make purchaser aware of.

5. PAYMENT OF TAXES. Purchaser agrees to pay all taxes of every description, federal, state, and municipal, that arise as a result of this sale, excluding income taxes.

6. WARRANTIES. Lululemon athletica warrants that the Goods shall be free of substantive defects in material and workmanship.

LULULEMON ATHLETICA SHALL IN NO EVENT BE LIABLE FOR ANY INCIDENTAL, SPECIAL, OR CONSEQUENTIAL DAMAGES OF ANY NATURE, EVEN IF LULULEMON ATHLETICA HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

Lululemon athletica agrees to indemnify, hold harmless, and defend purchaser, its affiliates, successors, assignees, customers, and users from any and all claims,

2

**EX 6**
**593**

demands, suits at law or equity, and all expenses including attorneys' fees, involving infringement or alleged infringement of any patent, trademark, or copyright resulting from the purchase, use, or sale of the Goods.

No refunds are permitted on Lululemon athletica products. Exchanges for other, in stock items, is permissible. NOTE: Not all Lululemon athletica Products are available for resale on all sales platforms. Please confirm with your sales representative prior to ordering.

7. INSPECTION. Purchaser, upon receiving possession of the Goods, shall have a reasonable opportunity to inspect the Goods to determine if the Goods conform to the requirements of this Agreement. If purchaser, in good faith, determines that all or a portion of the Goods are non-conforming, purchaser may return the Goods to Lululemon athletica at purchaser's expense. Purchaser must provide written notice to Lululemon athletica of the reason for rejecting the Goods. Lululemon athletica will have 14 days from the return of the Goods to remedy such defects under the terms of this Agreement.

8. SALES. Purchaser agrees to sell directly to consumers through e-commerce or in store only. No distribution of product is permitted to other wholesale vendors for resale.

9. DEFAULT. The occurrence of any of the following shall constitute a material default under this Agreement:

a. The failure to make a required payment when due.

b. The insolvency or bankruptcy of either party.

c. The subjection of any of either party's property to any levy, seizure, general assignment for the benefit of creditors, application, or sale for or by any creditor or government agency.

d. The failure to make available or deliver the Goods in the time and manner provided for in this Agreement.

e. Purchaser is not permitted to resell Lululemon athletica products to other resellers.

f. If purchaser is selling on Amazon or other e-commerce platforms, the purchaser's name on the invoice and the purchasers store name must be one in

3

**EX 6**
**594**

the same.

9.   REMEDIES ON DEFAULT. In addition to all other rights a party may have available according to law, if a party defaults by failing to substantially perform any provision, term or condition of this Agreement (including without limitation the failure to make a monetary payment when due), the other party may terminate the Agreement by providing written notice to the defaulting party. This notice shall describe with sufficient detail the nature of the default. The party receiving such notice shall have 2 days from the effective date of such notice to cure the default(s). Unless waived by a party providing notice, the failure to cure the default(s) within such time period shall result in the automatic termination of this Agreement and purchaser will be held liable for fines up to $100,000.00, damages and all legal fees.

10. FORCE MAJEURE. If performance of this Agreement or any obligation under this Agreement is prevented, restricted, or interfered with by causes beyond either party's reasonable control ("Force Majeure"), and if the party unable to carry out its obligations gives the other party prompt written notice of such event, then the obligations of the party invoking this provision shall be suspended to the extent necessary by such event. The term Force Majeure shall include, without limitation, acts of God, plague, epidemic, pandemic, outbreaks of infectious disease or any other public health crisis, including quarantine or other employee restrictions, fire, explosion, vandalism, storm or other similar occurrence, orders or acts of military or civil authority, or by national emergencies, insurrections, riots, or wars, or strikes, lock-outs, work stoppages, or other labor disputes, or supplier failures. The excused party shall use reasonable efforts under the circumstances to avoid or remove such causes of non-performance and shall proceed to perform with reasonable dispatch whenever such causes are removed or ceased. An act or omission shall be deemed within the reasonable control of a party if committed, omitted, or caused by such party, or its employees, officers, agents, or affiliates.

11. DISPUTE RESOLUTION. Any controversies or disputes arising out of or relating to this Contract shall be resolved by binding arbitration in accordance under the rules of the American Arbitration Association. The parties shall select a mutually acceptable arbitrator knowledgeable about issues relating to the subject matter of this Contract. The arbitrator(s) shall not have the authority to modify any provisions of this Contract or to award punitive damages. The arbitrator(s) shall have the power to issue mandatory orders and restraint orders in connection with

4

**EX 6**
**595**

the arbitration. The decision rendered by the arbitrator(s) shall be final and binding on the parties, and judgment may be entered in conformity with the decision in any court having jurisdiction. During the continuance of any arbitration proceeding, the parties shall continue to perform their respective obligations under this Contract.

12. CONFIDENTIALITY. Both parties acknowledge that during the course of this Agreement, each may obtain confidential information regarding the other party's business. Both parties agree to treat all such information and the terms of this Agreement as confidential and to take all reasonable precautions against disclosure of such information to unauthorized third parties during and after the term of this Agreement. Upon request by an owner, all documents relating to the confidential information will be returned to such owner.

Upon termination of this Agreement, Lululemon athletica will return to purchaser all records, notes, documentation and other items that were used, created, or controlled by Lululemon athletica during the term of this Agreement.

13.     NOTICE. Any notice or communication required or permitted under this Agreement shall be sufficiently given if delivered in person or by certified mail, return receipt requested, to the addresses listed above or to such other address as one party may have furnished to the other in writing. The notice shall be deemed received when delivered or signed for, or on the third day after mailing if not signed for. Purchaser may send communications to mail@e.lululemon.com

14. ENTIRE AGREEMENT. This Agreement contains the entire agreement of the parties regarding the subject matter of this Agreement, and there are no other promises or conditions in any other agreement whether oral or written. This Agreement supersedes any prior written or oral agreements between the parties.

15. AMENDMENT. This Agreement may be modified or amended if the amendment is made in writing and signed by both parties.

16. SEVERABILITY. If any provision of this Agreement shall be held to be invalid or unenforceable for any reason, the remaining provisions shall continue to be valid and enforceable. If a court finds that any provision of this Agreement is invalid or unenforceable, but that by limiting such provision it would become valid and enforceable, then such provision shall be deemed to be written, construed, and enforced as so limited.

5

17. WAIVER OF CONTRACTUAL RIGHT. The failure of either party to enforce any provision of this Agreement shall not be construed as a waiver or limitation of that party's right to subsequently enforce and compel strict compliance with every provision of this Agreement.

18. APPLICABLE LAW. This Agreement shall be governed by and construed according to the laws of the State of North Carolina without reference to its conflicts of law principles.

19. SIGNATURES. This Agreement shall be signed on behalf of the Purchaser and on behalf of Lululemon athletica by Lululemon athletica, Inc., Lexie Raitt
Director of Communication, Lululemon Athletica and effective as of the date first above written.

**20. Resell Restriction: E-Commerce vendors are mandated to sell under one name/storefront only. The name on this contract, the paid invoice and the storefront name must all be on in the same. Failure to have a signed agreement per store is in violation of this contract and federal governances. This subjects you to fines as well as criminal prosecution**

Buyer/Purchaser:

*James Anderson*

_____

Signature

Date: 07-20-2023

By:
Printed Name

James Anderson

6

Seller: Lululemon athletica, Inc.

_Raitt_

_____

Signature

By: Director of

Communication

Printed Name

Lexie Raitt

Date: 07-20-2023

Prepared by: Lululemon athletica, Inc. legal department. Any legal inquiries should be directed to mail@e.lululemon.com

7

# Attachment T

**EX 6
599**

On Sep 14, 2023, at 1:05 PM, Jeremy Leung <jeremy@ascendcapventures.com> wrote:

Hi Branden

Thanks for your e-mail.

Amazon does a wave of deactivations every couple of months. We've had product including Gerber knives, Global Knives, Lululemon bags that has caused some deactivations in these waves.

Brad has already told me that he has written to you on slack to update you of everything including how he is just finalizing documents from suppliers to make sure that he has copies of their emails, letter of authorizations and appropriate invoices all supplied to Amazon. I'm keeping on top of him to make sure that things go smoothly and that accounts get re-activated shortly.

Unfortunately de-activations are part of selling on Amazon, we just have to provide what they are requesting and they will get you back live. Brad has given me a time frame of about 2 weeks.

Regards

Jeremy

On Tue, Sep 12, 2023 at 9:09 PM Branden Lathan <███████@gmail.com> wrote:
> Not even gonna respond huh Jeremy?
>
> -Branden
>
> > On Sep 11, 2023, at 10:48 PM, Branden Lathan <███████@gmail.com> wrote:
> >
> > Jeremy I just got notice my seller account has been deactivated. Please set up a time to discuss tomorrow.
> >
> > -Branden

--



**Jeremy Leung**
COO, Ascend CapVentures

🌐 www.ascendcapventures.com | ✉ jeremy@ascendcapventures.com



Attachment U

EX 6
601

---------- Forwarded message ---------
From: **Branden Lathan** <​███████@gmail.com>
Date: Wed, Nov 8, 2023 at 11:37 AM
Subject: Re: Ascend CapVentures Inc. | Branden Lathan
To: Jonathan D. Herpy Sr. [HDC] <Jdavid@hartdavidcarson.com>

Good Morning Mr. Herpy,

I am following up on this. I require a response before the end of the week in order to make my decision on how to proceed as my Attorney has told me he would like to file next Monday if the negotiations to settle outside of arbitration have been unsuccessful.

If you could kindly provide a response to me before the end of the week so I can decide I would greatly appreciate it. I am hoping we can come to terms and move forward with this.

Thank you

Branden

On Fri, Nov 3, 2023 at 1:31 PM Branden Lathan < ███████@gmail.com> wrote:
Mr Herpy,

Could you possibly further elaborate on why this is not a situation where Ascend is willing to meet in the middle? I cant seem to figure out their reasoning. When you take into consideration that your client essentially stole roughly $10k from me just a few months ago and never made an attempt to purchase the goods they told me they would, they are really only offering $15k for my store and to resolve all the issues I have previously outlined. While I acknowledge that the $25k offer is slightly higher than the default $20k settlement offer that they are currently offering to all the other clients at this time, I feel that I am due a bit more than that.

I am inclined to proceed with the arbitration plan that my attorney has laid out for me as his strategy as well as his track record against similar companies in recent lawsuits seems very promising and the fact that he is willing to take cases against Ascend on contingency speaks to his confidence in his ability to win an award that will end up costing Ascend a lot more than what I am asking for here. Personally, id much rather prefer to move on with my life than to engage in a drawn out legal battle but at the same time, I cant bring myself to accept $25k due to the circumstances here.

I would like to propose a final settlement offer of $30k which is essentially the return of the money I sent them for inventory a few months ago and their original $20k offer. This seems fair to me.

Thank for your time and consideration. I look forward to your prompt response.

EX 6
602

Branden

On Nov 2, 2023, at 4:10 PM, Jonathan D. Herpy Sr. [HDC] <Jdavid@hartdavidcarson.com> wrote:

Branden –

I've been in contact w/ my client and relayed the offer, which has been denied. We propose a full and final settlement of all claims and disputes for $25,000.00, payable upon execution of definitive documentation.

Candidly, **this is not a situation where we are going to "meet in the middle" of our clients offer and yours**. <u>If we are going to settle this issue, the final number is going to be significantly closer to Ascend's offer than your offer.</u>

**PLEASE NOTE, THIS CORRESPONDENCE IS AN OFFER FOR COMPROMISE AND IS NOT AN ADMISSION OF LIABILITY. PURSUANT TO FEDERAL RULE OF EVIDENCE 408 AND WYOMING APPLICABLE STATUTES, THIS CORRESPONDENCE IS INADMISSIBLE IN COURT TO PROVE LIABILITY FOR ANY AMOUNT IN CONTROVERSY.**

--

**Jonathan D. Herpy, Sr.**
Shareholder

**Hart David Carson LLP**

18W140 Butterfield Road, Suite 1500 | Oakbrook Terrace, Illinois 60181
**Office:** +1 630 395 9496 | **Fax:** +1 630 395 9451

Book a time with me: My Calendar

*********************************************************************
This electronic mail message is covered by the Electronic Communications Privacy Act, 18 U.S.C. §2510-2521, and is legally privileged and/or may contain information that is privileged, confidential, and/or exempt from disclosure under applicable law and which may (1) be subject to the attorney-client privilege, (2) be an attorney work product, or (3) contain otherwise confidential information. If you are not the intended recipient, you are hereby notified that any unauthorized review, disclosure, copying, printing, distribution, saving, disseminating, or use of the information contained herein (including any reliance thereon) is STRICTLY PROHIBITED. If you received this transmission in error, please immediately contact the sender and delete or otherwise destroy the material in its entirety, whether in electronic or hard copy format. Unauthorized interception of this e-mail is a violation of federal criminal law.


*********************************************************************

**EX 6
603**

**From:** Branden Lathan <█████████@gmail.com>
**Date:** Monday, October 30, 2023 at 1:06 PM
**To:** Jonathan D. Herpy Sr. [HDC] <Jdavid@hartdavidcarson.com>
**Subject:** Re: Ascend VentureCap | Branden Lathan

Mr Herpy,


This is now the third follow up email I am sending in addition to the message I left with your office to return my call in regards to this issue. If your client is no longer interested in settling this outside of litigation then I am requesting a confirmation of such from you in writing so I can proceed with filing a form complaint for the multitude of offenses that have occurred against me.


Last week I was told by Skye that no business can be conducted with my account at this time because I am "in talks" with you and if that's the case, then someone needs to actually talk to me.


I look forward to your prompt response.


Branden


On Fri, Oct 20, 2023 at 12:25 PM Branden Lathan <█████████@gmail.com> wrote:

> Good afternoon,
>
>
> I am following up again to try to get this resolved.
>
>
> Thank you
>
>
> -Branden
>
>
>> On Oct 17, 2023, at 2:54 PM, Branden Lathan <█████████@gmail.com> wrote:

3

**EX 6**
**604**

Good afternoon Mr. Herpy,

I just wanted to follow up on this to see if your client has decided how they would like to proceed.

Thank you

-Branden

On Oct 12, 2023, at 10:03 AM, Jonathan D. Herpy Sr. [HDC] <Jdavid@hartdavidcarson.com> wrote:

Braden –

Received. I will take this to my client and revert.

--

**Jonathan D. Herpy, Sr.**
Shareholder

**Hart David Carson LLP**

360 West Butterfield Road, Suite 325 | Elmhurst, IL 60126
**Office:** +1 630 395 9496 | **Fax:** +1 630 395 9451

Book a time with me: My Calendar

**************************************************************
This electronic mail message is covered by the Electronic Communications Privacy Act, 18 U.S.C. §2510-2521, and is legally privileged and/or may contain information that is privileged, confidential, and/or exempt from disclosure under applicable law and which may (1) be subject to the attorney-client privilege, (2) be an attorney work product, or (3) contain otherwise confidential information. If you are not the intended recipient, you are hereby notified that any unauthorized review, disclosure, copying, printing, distribution, saving, disseminating, or use of the information contained herein (including any reliance thereon) is STRICTLY PROHIBITED. If you received this transmission in error, please immediately contact the sender and delete or otherwise destroy the material in its entirety, whether in electronic or hard copy format. Unauthorized interception of this e-mail is a violation of federal criminal law.

EX 6
605

**************************************************************

**From:** Branden Lathan ████████████ @gmail.com>
**Date:** Thursday, October 12, 2023 at 7:23 AM
**To:** Jonathan D. Herpy Sr. [HDC] <Jdavid@hartdavidcarson.com>
**Subject:** Re: Ascend VentureCap | Branden Lathan

Good Morning Mr. Herpy,

Thank you for relaying your clients response. While I appreciate their willingness to settle this amicably, I disagree with their valuation of my store. The primary reason for this being that Ascend had publicly published marketing materials to include YouTube videos, social media ads, podcasts and interviews, all of which included claims that these stores were "appreciating assets" and their valuations would be a multiplier of the stores gross annual sales. My stores gross annual sales to date is $41,300. So even at a 1x multiplier (Ascend advertised 3-4x multipliers), I believe my valuation to be extremely fair being that my account was in good health prior to it being deactivated due to Ascends negligence.

I do realize that all of Ascends marketing materials have since been edited to remove these claims and I presume that was due to the legal implications those claims would have but that does not change the fact that this was the representation made to me in order to induce me to entering this business arrangement (even by Will himself during his pitch to me). I relied on those claims as well as many other false representations including those relating to; timeframe for delivery of goods, being told they did not partake in drop shipping when they in fact were (and I was briefly deactivated for this), being billed for products I never sold, being told I would be assigned "dedicated" staff that would solely focus on my store, and being assured that I had proper authorization to sell certain brands of products (I have received multiple cease and desist letters from company's Ascend told me I was authorized to sell). All these false representations have caused financial loss for me.

I would like to point out at this time while we try to resolve this amicably I am not looking to recover damages from Ascend, I am simply trying to be made whole for a business arrangement in which I delivered on everything I was required to but Ascend failed to act in good faith. I would like nothing more than to be refunded and move on from this. I don't think I am being unreasonable here especially considering that our contract already includes a provision for a full refund of the purchase price of the store after two years. While I am 8 months away from my two year mark with Ascend, I believe my circumstances more than justify an early termination of the contract.

EX 6
606

Thank you for your time and I look forward to getting this resolved with you.

Branden Lathan

On Oct 11, 2023, at 4:25 PM, Jonathan D. Herpy Sr. [HDC] <Jdavid@hartdavidcarson.com> wrote:

Branden –

Looping back around on this. Looking forward to closing the loop.

--

**Jonathan D. Herpy, Sr.**
Shareholder

**Hart David Carson LLP**

360 West Butterfield Road, Suite 325 | Elmhurst, IL 60126
**Office:** +1 630 395 9496 **| Fax:** +1 630 395 9451

Book a time with me: My Calendar

**********************************************************************
This electronic mail message is covered by the Electronic Communications Privacy Act, 18 U.S.C. §2510-2521, and is legally privileged and/or may contain information that is privileged, confidential, and/or exempt from disclosure under applicable law and which may (1) be subject to the attorney-client privilege, (2) be an attorney work product, or (3) contain otherwise confidential information. If you are not the intended recipient, you are hereby notified that any unauthorized review, disclosure, copying, printing, distribution, saving, disseminating, or use of the information contained herein (including any reliance thereon) is STRICTLY PROHIBITED. If you received this transmission in error, please immediately contact the sender and delete or otherwise destroy the material in its entirety, whether in electronic or hard copy format. Unauthorized interception of this e-mail is a violation of federal criminal law.

**********************************************************************

**EX 6
607**

**From:** Jonathan D. Herpy Sr. [HDC]
<Jdavid@hartdavidcarson.com>
**Date:** Monday, October 9, 2023 at 3:08 PM
**To:** Branden Lathan
<█████████@gmail.com>
**Subject:** Re: Ascend VentureCap | Branden
Lathan

Branden –

Reviewed you email in depth and took it back to the
team. While I've confirmed some of your points,
Ascend does not agree with the valuation you
associate with the store buy-back. That said, in the
interest of moving forward amicably, Ascend will
purchase your store from you for a price of **$20,000.00**
cash due upon execution of definitive documentation.

Please advise. I'm also available for further discussion
RE the same if you'd like via the following link:
Legal/Compliance Calendar [JDHSR]

--

**Jonathan D. Herpy, Sr.**
Shareholder

**Hart David Carson LLP**

360 West Butterfield Road, Suite 325 | Elmhurst, IL 60126
**Office:** +1 630 395 9496 **| Fax:** +1 630 395 9451

Book a time with me: My Calendar

*********************************************************************
**
This electronic mail message is covered by the Electronic
Communications Privacy Act, 18 U.S.C. §2510-2521, and is
legally privileged and/or may contain information that is
privileged, confidential, and/or exempt from disclosure under
applicable law and which may (1) be subject to the attorney-
client privilege, (2) be an attorney work product, or (3)
contain otherwise confidential information. If you are not the
intended recipient, you are hereby notified that any
unauthorized review, disclosure, copying, printing,
distribution, saving, disseminating, or use of the information
contained herein (including any reliance thereon) is
STRICTLY PROHIBITED. If you received this transmission

7

**EX 6
608**

in error, please immediately contact the sender and delete or otherwise destroy the material in its entirety, whether in electronic or hard copy format. Unauthorized interception of this e-mail is a violation of federal criminal law.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**From:** Branden Lathan
< ██████████ @gmail.com>
**Date:** Thursday, October 5, 2023 at 10:54 AM
**To:** Jonathan D. Herpy Sr. [HDC]
<Jdavid@hartdavidcarson.com>
**Subject:** Re: Ascend VentureCap | Branden Lathan

Good Morning Mr. Herpy,

I want to first thank you for getting back to me and taking the time to look into my situation further. However, I dont think you dove deep enough into my situation to understand the depth of issues at hand.

For one, it seems to be overlooked that I sent Ascend $9200 in July for the purposes of purchasing inventory that is currently unaccounted for. In addition to that, there are multiple instances of smaller amounts of inventory that I paid for that also went unaccounted for and never showed up in my store, or was removed due to inauthenticity complaints and I was never refunded. I have records of all of this course. The total value of these missing or stranded items totals over $1500. So all in all, There is an issue of over $10,000 in missing funds that isnt accounted for here. This is money that was paid for goods that were not delivered which is non-delivery fraud.

As far as the appeal goes. I have many issues with this. The first being the fact that the appeal hasn't even been filed yet and we are 24 days into me being deactivated. Also worth mentioning is that if my team had filed the appeal against the inauthenticity claim as they repeatedly told me they were doing for

EX 6
609

a month, I would have never been deactivated and they would not have to now file this appeal to reactivate my account. You should also be aware that I have in writing from Jeremy himself that he was personally overseeing the inauthentic product appeal being submitted (prior to my account being deactivated) and that he would make sure it was done in a timely manner. Lastly, I am extremely skeptical at Ascend's ability to win the appeal as I am in contact with dozens of other Ascend clients some of which have been deactivated for 8+ months and have had multiple appeals denied and Ascend has done nothing to rectify the situation for them.

At this point, with the above considered, you have to understand how I could be appalled that the offer you've made to rectify my situation includes me sending Ascend any more money than I already have. In addition, you are asking me to give up my current store, which was a healthy store and should be worth more than the $40k I paid for it, prior to Ascend's failures. This fact was repeatedly boasted in Ascends marketing material and youtube promotional videos. In the last year and a half I have been subject to so many lies, deceit, and miscommunications from everyone in this company all the way to the C-suite that I'm afraid that I have completely lost any trust in Ascends ability to provide the services that were originally agreed upon in our contract.

I would like you to present an alternative option to your client that I feel is warranted given the circumstances here. I would like to request that Ascend to buy my store back for the original amount of $40,000. In exchange, I will sign a non-disclosure agreement to not discuss any details of my experience with Ascend, I will remove all public reviews and rescind any complaints I've filed, and I will cease communications with other Ascend clients. I feel like this is very fair considering everything that's happened and the fact that I have done everything I was supposed to on my end per the terms of our contract. If Ascend can indeed win the appeal on my account, they can easily resell my store as a turnkey healthy store similar to what you've offered me to a brand new client as I know they have done in the past and everyone is made whole.

9

**EX 6 610**

I look forward to your response and thank you for your time.


Branden Lathan




On Thu, Oct 5, 2023 at 9:19 AM Jonathan D. Herpy Sr. [HDC] <Jdavid@hartdavidcarson.com> wrote:

Branden –


Pleasure speaking with you the other day and I do apologize for the brief delay in emailing out to you. Most specifically, I wanted to identify (independently, as I personally was unfamiliar with the appeal process) a gauge and/or expected timeframe that could be provided to clients in a similar situation.

Two (2) things are evident in this situation:


1. Communication from Ascend to you/your store at the outset of the appeal was inaccurate as it relates to the expected timeframe. Whereas you were provided with a timeframe of 5-10 days, in all actuality, an Amazon appeal can take up to 45 days to rectify. I've identified that the Ascend internal team does have a strong record of winning said appeals, but in the past has experienced delays between 30-45 days. Therefore, moving forward, your expectation should be that this appeal in question could take upwards of 45 days to correct once filed.


1. Ascend's miscommunication above has led to customer (you) dissatisfaction – to put it simply. Therefore, I've identified two (2)

EX 6
611

concessions that Ascend can provide, (i) Ascend will provide you with an inventory credit in the amount of $2,500.00 related to the store in the appeal process, and (ii) while not free, Ascend will provide you the opportunity to take over an acquired store (and use the same $2,500.00 inventory credit), for a greatly reduced cost of $5,000.00. The specifics of the acquired store can be further addressed, but at a high level it is a fully functional and active store that would come off the shelf as a plug and play.

Consider the above and let me know if you'd like to hop on a call to further discuss. While my day today is quite slammed, I'm available tomorrow to discuss.

Thank you Branden – look forward to ensuring this situation is rectified.

--

**Jonathan D. Herpy, Sr.**
Shareholder

**Hart David Carson LLP**

360 West Butterfield Road, Suite 325 | Elmhurst, IL 60126
**Office:** +1 630 395 9496 | **Fax:** +1 630 395 9451

Book a time with me: My Calendar

*********************************************************************
This electronic mail message is covered by the Electronic Communications Privacy Act, 18 U.S.C. §2510-2521, and is legally privileged and/or may contain information that is privileged, confidential, and/or exempt from disclosure under applicable law and which may (1) be subject to the attorney-client privilege, (2) be an attorney work product, or (3) contain otherwise confidential information. If you are not the intended recipient, you are hereby notified that any unauthorized review, disclosure, copying, printing, distribution, saving, disseminating, or use of the information contained herein (including any reliance thereon) is STRICTLY PROHIBITED. If you received this transmission in error, please immediately contact the sender and delete or otherwise destroy the material in its entirety, whether in electronic or hard copy format. Unauthorized interception of this e-mail is a violation of federal criminal law.

11

**EX 6**
**612**

************************************************************
**

Attachment V



Branden Lathan <██████@gmail.com>

---

## Ascend Collections

**Ascend Collections** <collections@ascendecom.com>
To: ██████@gmail.com

Tue, May 7, 2024 at 11:12 AM



ASCEND CAPVENTURES INC.

INVOICING & COLLECTIONS DEPARTMENT

E. LEGAL@ASCENDCAPVENTURES.COM.
W. WWW.ASCENDCAPVENTURES.COM

05/07/2024

**VIA ELECTRONIC MAIL**

Ten Twenty Holdings LLC

c/o Branden Lathan

Email: ██████@gmail.com

RE: Ascend CapVentures Inc. |   Branden Lathan  / Ten Twenty Holdings LLC

**Invoice No./s**

L1223ICA01_2A7MZR7
S0923NBA01_345T8QB
L0823ICA01_3GPGFMR

**Amount Due:$ 327.82**

**IN ACCORDANCE WITH THE FAIR DEBT COLLECTION PRACTICES ACT (15 U.S.C. § 1692e(11), THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

**THIS COMMUNICATION IS FROM A DEBT COLLECTOR.**

To Whom It May Concern:

This communication is from Ascend CapVentures Inc., a Wyoming company which in this capacity is acting as a debt collector and is attempting to collect a debt. Under the laws of the State of Wyoming and pursuant to federal law, we are required to inform you that this is an official notice regarding the status of your account(s) with us.

As per our records, we have not received payment for the aforementioned invoice(s) (see subject line above), which were due more than 3 months ago. This delay in payment has been noted as a **SEVERE DELINQUENCY**.

In compliance with Wyoming Statutes Title 33 - Professions and Occupations, Chapter 11 - Collection Agencies (Wyo. Stat. § 33-11-101 through 33-11-113), and the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692-1692p, we are obligated to inform you that failure to address this outstanding debt within five (5) days of the date of this notice will result in the initiation of collections proceedings.

Please understand that nonpayment will further compel us to take actions including, but not limited to:

1)     Sending your account to collections; and,

2)       Immediately ceasing any efforts or activities related to the contractual agreement between you and Ascend CapVentures Inc., as we will consider you in material breach of these agreements.

Please make your payment to the order of Ascend CapVentures Inc. via wire/ach using the following bank details and ensure that it reaches us within five (5) days of receipt of this correspondence.

 You can send both domestic wire and ACH transfers to Ascend Capventures Inc's Mercury account.

• Account Name: Ascend Capventures Inc

• Account Number: ███████7933
• Routing Number: ███████
• Address: 1309 Coffeen Avenue,8847 Sheridan, WY 82801

If you have already made this payment, please disregard this notice. However, if you have any questions or need to discuss your account, please contact us at this email address.

 Sincerely,

Invoicing & Collections Department

**Please be advised that nothing contained herein is intended to nor shall it waive, compromise, or prejudice any rights, remedies, claims, or defenses that Ascend CapVentures Inc. may have now or in the future regarding any matters not specifically addressed in this correspondence.**

EX 6
616

# Exhibit 7

## <u>DECLARATION OF BRANDEN LATHAN</u>

1.     My name is Branden Lathan. I live in Boston, Massachusetts, and I am over the age of eighteen. The following statements are within my personal knowledge, and if called as a witness, I could and would testify as set forth herein.

2.     Since I signed a declaration about Ascend Ecom LLC ("Ascend") on May 28, 2024, I have received communications from Ascend. This declaration supplements my declaration dated May 28, 2024.

3.     Since I first interacted with Ascend in early 2022, Ascend has rebranded itself and reemerged under new similarly named entities. Once I began having troubles with Ascend, I have posted reviews to Ascend's profiles under Ascend Ecom and their new names on Trustpilot, including Ecom with ACV and ACV.

4.     In late May 2024, I posted a negative review on a Trustpilot profile for ACV, which is one of Ascend's names that it is using now, and updated it on or about June 2, 2024, after ACV reported it as containing inaccuracies. On June 7, 2024, ACV's Trustpilot profile was not active because, according to Trustpilot, ACV's website was closed. This makes it so that all reviews can no longer be edited. However, it seems that ACV still has the ability to reply because after I received an email saying the profile was closed for editing, I received another email notification that ACV had responded to my review. Their response was nothing but absolutely false information about themselves as well as my account, and now I can't edit my review to address those lies. According to ACV's response, "ACV and Ascend are separate entities and businesses entirely, they operate separately and have no affiliation in terms of branding, each focusing on distinct areas of e-commerce. ACV specializes in emerging marketplaces, private brand labeling, and international markets, while Ascend operates independently, primarily focusing on wholesale FBA." ACV characterized Ascend as its "sister

company" in the response to my negative review. **Attachment A** is a true and correct copy of the review that I posted and ACV's response.

5.     In or around May 2024, I started communicating directly with prospective ACV clients. On May 17, 2024, I spoke with a prospective ACV client and relayed my experiences with Ascend and warned them about joining Ascend and ACV. I told the prospective ACV client that they can and should share my name with ACV.

6.     On July 11, 2024, I spoke with another potential ACV client and warned him about ACV and Ascend. That client then spoke with his ACV salesperson, Yas, and Yas told the client that ACV was not associated with Ascend and that Yas had never heard of Ascend. Other Ascend clients in a Facebook group I created for disgruntled Ascend clients have reported that Yas was their salesperson when they joined Ascend years prior. Yas then set up a call for the potential client with Will Basta; on the call with Will Basta, the potential client said that Will said that I had not met my buyback obligations and that none of the members of my Facebook group had met their buyback obligations.

7.     I also exchanged Facebook messages with a prospective ACV client who claimed to be in Dubai, and I warned him about Ascend and ACV. **Attachment B** is a true and correct copy of my messages with the prospective ACV client.

8.     Based on my communications with prospective ACV clients, I learned that ACV is still offering Fulfilled By Amazon and is also offering Tiktok stores.

9.     On May 23, 2024, my attorney, Nima Tahmassebi, notified me that Ascend's attorney, Jonathan Herpy, had contacted him with a settlement offer. Herpy was inquiring whether I was interested in the settlement. Herpy and my attorney exchanged several settlement proposals until all parties came to an agreement in principle on June 10, 2024. On June 19, 2024, Mr. Herpy sent my attorney a draft settlement agreement for my review. Later that evening, my

1   attorney provided a revised version of the settlement agreement back to Mr. Herpy

2   that did not contain substantive changes. I asked my attorney about the status of the

3   settlement agreement on June 24, June 27, and July 2, 2024. In response to my July

4   2, 2024, inquiry, my attorney said that he was going to message Herpy and set a

5   deadline of the end of the week – July 5, 2024 – to respond. By July 8, 2024,

6   Herpy had not responded to changes my attorney made to Ascend's proposed

7   settlement, and I, therefore, concluded that Ascend's attempts to settle were likely

8   another bad faith attempt at pacifying me.

9       10.     On July 12, 2024, Ascend Capventures sent me a collections notice

10  email using the email address collections@ascendecom.com, which indicated the

11  sender was "Ascend Collections." The collections notice demanded $3,566.15 and

12  directed that I make payment to Ascend Capventures Inc. at Choice Financial

13  Group. **Attachment C** is a true and correct copy of the collections email I received

14  and my attorney's response to the email.

15      11.     On July 12, 2024, my attorney, Nima Tahmassebi, responded to the

16  collections notice, informing Ascend that he represents me and demanding that

17  Ascend direct any future correspondence to him. Nima told me that the next day –

18  a Saturday – he was bombarded by spam emails and texts. I also received spam

19  texts on Saturday, July 13, 2024. The texts froze my phone, and I had to shut it

20  down and restart it. I also lost a lot of texts in the process of trying to delete the

21  spam texts. July 13, 2024, was not the first day I received spam texts.

22      12.     Nima shared screenshots of some of the messages he received with

23  me, and they were the same sort of messages that I received in June 2024. I noticed

24  that the spam messages occurred around the time I had spoken with the prospective

25  Ascend client and around the time Ascend first reached out to Nima about settling

26  my claims.

27      13.     I have experienced more than 20 episodes of this spamming activity

28  since I began speaking directly with potential ACV clients in or around May 2024.

1    Each time I get around 2,500 text messages over the course of a few minutes. It

2    crashes my phone and interferes with both my personal and business

3    communications. I never mentioned these spam messages until Nima had informed

4    me that he had been receiving spam messages after his contacts with Ascend's

5    attorneys.

6        14.    On August 9, 2024, I visited ACV's website, ecomwithacv.io, and

7    took screenshots of its website. **Attachment D** is a true and correct copy of the

8    screenshots that I took of ACV's website.

9        15.    On August 16, 2024, someone in my Ascend Facebook group reported

10   that Ascend had changed its name to Nexus Global and had the following

11   TrustPilot profile: https://www.trustpilot.com/review/www.acvglobal.io . I visited

12   the new TrustPilot profile and tried to visit Nexus Global's website,

13   www.acvglobal.io, but the site was already down and the website address went to a

14   landing page. **Attachment E** is a true and correct copy of the screenshot I took of

15   www.acvglobal.io.

16       16.    I am aware of the threats that Jamaal Sanford received for posting

17   negative reviews about Ascend. While I did not remove any of my reviews or close

18   my Ascend Clients Facebook group, the threats worried me and made me think

19   twice about posting further negative reviews, particularly when it came to

20   mentioning Will Basta and Jeremy Leung by name. The threats Jamaal received

21   were shared in the Ascend Clients Facebook group that I had created, as well as in

22   our WhatsApp group chat. I spoke with several members of the group who were

23   scared by the threats, and some members indicated that they were going to take

24   their reviews of Ascend down.

25

26

27

28

1    I declare under penalty of perjury that the foregoing is true and correct.

2 Executed on <u>Aug 19, 2024</u>, 2024 at Boston, Massachusetts.

3

4

5                    _____

6                     Branden Lathan

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EX 7**
**622**

# Ascend Supplemental Dec

**Final Audit Report**                                                      2024-08-19

| | |
|---|---|
| Created: | 2024-08-19 |
| By: | ███████████████ |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAA1fwr79BWo2SDQonb_qBcFVgunfqlQp1m |

## "Ascend Supplemental Dec" History

📄 Document created by ███████████████
2024-08-19 - 2:12:43 PM GMT

📧 Document emailed to Branden Lathan (████████@gmail.com) for signature
2024-08-19 - 2:13:23 PM GMT

📄 Email viewed by Branden Lathan (████████@gmail.com)
2024-08-19 - 6:25:44 PM GMT

✒️ Document e-signed by Branden Lathan (████████@gmail.com)
Signature Date: 2024-08-19 - 6:37:16 PM GMT - Time Source: server

✅ Agreement completed.
2024-08-19 - 6:37:16 PM GMT

**Adobe Acrobat Sign**

**EX 7**
**623**

# Attachment A

EX 7
624



★ **Trustpilot**    🔍    ☰    Categories    Blog    **BL** Brande...    **For businesses**

**BL**

# Branden Lathan

United States   |   ✅ VERIFIED USER

**2**
☆ Reviews

**38**
👁 Reads

**5**
👍 Useful

## Reviews

Review of **ACV**

**BL** ✅ **Branden Lathan**
2 reviews

★☆☆☆☆                                                          Updated 5 days ago

### Stay far away from this company!

Ive been a "client" for over two years now at this point. Ascend got my account deactivated in September of last year for selling counterfeit products and Ascend never even attempted to appeal Amazons decision to get my store reactivated. Amazon also froze my account balance at that time and have not released that either. I most recently paid Ascend $9280 via wire transfer in July of 2023 for a wholesale product order. Not a single product was ever delivered from that payment and not a single penny was returned despite asking for them to return it. That is a crime. Sadly, I paid via wire transfer because they wanted to charge me a fee to pay with credit card so I cant dispute the charge and clawback that payment. And to make matters worse, in the past two weeks I've received backdated invoices for ~$2000 they say I owe them from last year and tried to threaten to send it to collections if I dont pay? The audacity. I have filed a case with the CFPB for unlawful debt collection. In total, I'm out over $50,000 and am currently taking legal action against them. For the last 9 months there has not been any success in trying to civilly rectify my situation through communication outside of the courts.

I STRONGLY urge any potential clients to do their own due diligence on this company, do

EX 7
625

not only trust the public reviews or any testimonial videos they provide you like I did. There is a Facebook group that has over 100 clients that speak about experiences very similar to mine. Search for "Clients of Ascend Ecom" (their original company name prior to rebranding) and check it out for yourself.

Also feel free to find me on Facebook by name and send me a message. I'm more than happy to share all the evidence of all their wrongdoings not just with me, but with many others. I've already talked to quite a few potential clients and my goal is to just try to make sure no one else becomes a victim.

**Date of experience:** May 23, 2024

 Edit    🗑 Delete    ⊷ Share

↰ **Reply from ACV**                                                    36 minutes ago

Hello Brandon,

Thank you for bringing your concerns to our attention. We want to clarify some misconceptions and address the points you've raised in your review.

First and foremost, it's important to note that ACV and Ascend are separate entities and businesses entirely, they operate separately and have no affiliation in terms of branding, each focusing on distinct areas of e commerce. ACV specializes in emerging marketplaces, private label branding, and international markets, while Ascend operates independently, primarily focusing on wholesale FBA.

Our sister company, Ascend, has informed us of their efforts to resolve any issues you may have encountered, including offering early contract terminations that would include the products you purchased. However, it seems these offers were not accepted, leading to continued dissatisfaction.

Regarding your experience... and the ability to purchase products on a rolling basis, Ascend has noted that your working capital often fell below the threshold required for wholesale operations. Wholesale models typically require a certain level of working capital to sustain ongoing inventory purchases and operations effectively. It's crucial to maintain sufficient capital to support the demands of the business and ensure its scalability.

Additionally, it's clear that there may be some misunderstanding or miscommunication at play here. We've offered options to you as recently as this week, yet they have been met with denials. It seems there may be an ulterior motive behind these actions. Slandering on the internet, especially with untruthful claims, is not only damaging but also unnecessary.

We wish you the best of luck in your endeavors and hope that you can find a resolution that satisfies all parties involved.

**EX 7**
**626**

Attachment B



Active 6h ago

Jul 16, 2024, 4:43 PM

Hey ███████ I am the admin for the ascend/ACV group. Ive also been a client of their for over two years and currently battling them for my money back. I am owed over $50k and they are playing games with me and my attorney so I maintain this group to try to help others in my situation. I see that you're looking to partner with them.

Ive accepted your membership request so that you can take a look at what real life Clients of Will and Jeremy have experienced. Long story short, run as fast as you can from these guys. Everyday we get new requests from current clients looking to take legal action against them because they have defrauded soo many people.

I see youre in Dubai which is where they have started marketing after burning all their bridges here in the US. Will and Jeremy are absolute scammers and once they get your money youll be one of us too.

Im open to talking more about my experience and to bring some light to a lot of the lies I'm sure you're being told by their sales team. I've spoken to a few potential clients lately and im familiar with the deceiving tactics their currently using to lure in new clients.

Sent

🔒 Messenger upgraded the security of this chat. New messages and calls are secured with end-to-end encryption. Learn more

You can now message and call each other and see info like active status and when you have read messages.

Hi
Yeah I was looking into it and trying to get more info about company / process /reviews ect and noticed 1 of the negative mentioning different names ect and then started looking into it more..

Yes here in UAE its a little different as we need to setup a company (which is costly) to be able to be 3rd party seller on amazon and they referred me to their business setup partner here in UAE

They also shared their business trade licence and a call with 1 of their current clients to show their store with weekly / monthly sales and ask any questions

So it all looked very convincing..especially with the garentees in place..

Jul 18, 2024, 7:44 AM

They also saying that those "other" companies have bad reputation but they are not part or affiliated to them at all..

Aa

EX 7
628

Attachment C

**From:**        Nima Tahmassebi <████ntlegal.net>
**Sent:**        Friday, July 12, 2024 11:36 AM
**To:**          legal@ascendcapventures.com; collections@ascendecom.com
**Subject:**     Re: Ascend Collections

To Whom It May Concern:

We're in receipt of your below correspondence. Be advised that Mr. Lathan is represented by counsel and any outstanding amounts purportedly owed to Ascend are presently in dispute. Moreover, any future correspondences meant for Mr. Lathan should be directed to this e-mail address instead. Put another way, do not contact my client again.

**Nima Tahmassebi**
Founding Attorney
**NT Legal**
T: 786-████
Email | About | LinkedIn

CONFIDENTIALITY NOTE: The information contained in this transmission is privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this transmission in error, do not read it. Please immediately reply to the sender that you have received this communication in error and then delete it. Thank you.

---

Begin forwarded message:

> **From:** Ascend Collections <collections@ascendecom.com>
> **Date:** July 12, 2024 at 08:09:16 EDT
> **To:** Branden Lathan ████████@gmail.com>
> **Subject: Ascend Collections**



Ascend CapVentures Inc.
Invoicing & Collections Department
e.  legal@ascendcapventures.com
w.  www.ascendcapventures.com

1

**EX 7
630**

**07/12/2024**
**VIA ELECTRONIC MAIL**

Ten Twenty Holdings LLC
c/o Branden Lathan
Email: ██████████@gmail.com
RE: Ascend CapVentures Inc. | Branden Lathan \ Ten Twenty Holdings LLC

**Invoice No./s**
O0823RRA01_2RXB7DM
F0123RRA01_2RXB7DM
F0223RRA01_2RXB7DM
S0123NBA01_2RXB7DM

**Amount Due: $**3,566.15

**IN ACCORDANCE WITH THE FAIR DEBT COLLECTION PRACTICES ACT (15 U.S.C. § 1692e(11), THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. THIS COMMUNICATION IS FROM A DEBT COLLECTOR.**

To Whom It May Concern:

This communication is from Ascend CapVentures Inc., a Wyoming company which in this capacity is acting as a debt collector and is attempting to collect a debt. Under the laws of the State of Wyoming and pursuant to federal law, we are required to inform you that this is an official notice regarding the status of your account(s) with us.

As per our records, we have not received payment for the aforementioned invoice(s) (see subject line above), which were due more than 2 months ago. This delay in payment has been noted as a **SEVERE DELINQUENCY**.

In compliance with Wyoming Statutes Title 33 - Professions and Occupations, Chapter 11 - Collection Agencies (Wyo. Stat. § 33-11-101 through 33-11-113), and the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692-1692p, we are obligated to inform you that failure to address this outstanding debt within five (5) days of the date of this notice will result in the initiation of collections proceedings.

Please understand that nonpayment will further compel us to take actions including, but not limited to:
1) Sending your account to collections; and,
2) Immediately ceasing any efforts or activities related to the contractual agreement between you and Ascend CapVentures Inc., as we will consider you in material breach of these agreements.

Please make your payment to the order of Ascend CapVentures Inc. via wire/ach using the following bank details and ensure that it reaches us within five (5) days of receipt of this correspondence.
• Bank Name: Choice Financial Group
• Account Name: Ascend Capventures Inc.
• Account Number: ██████7933

2

**EX 7**
**631**

• Routing Number: ██████████
• Address: 1309 Coffeen Avenue, 8847 Sheridan, WY 82801

If you have already made this payment, please disregard this notice. However, if you have any questions or need to discuss your account, please contact us at this email address.

Sincerely,
Invoicing & Collections Department

**Please be advised that nothing contained herein is intended to nor shall it waive, compromise, or prejudice any rights, remedies, claims, or defenses that Ascend CapVentures Inc. may have now or in the future regarding any matters not specifically addressed in this correspondence.**

**EX 7**
**632**

Attachment D

**EX 7**
**633**







## DISCLOSURE OF IMPORTANT INFORMATION ABOUT BUSINESS OPPORTUNITY
### Required by the Federal Trade Commission, Rule 16 C.F.R. Part 437

Name of Seller: _____    Address: 941 Avenue A Grand Praire, TX
                                              75050

Phone: 8008210740    Salesperson: _____    Date: _____

_____ has completed this form, which provides important information about the business opportunity it is offering you. The Federal Trade Commission, an agency of the federal government, requires that _____ complete this form and give it to you. However, the Federal Trade Commission has not seen this completed form or checked that the information is true. Make sure that this information is the same as what the salesperson told you about this opportunity.

**LEGAL ACTIONS:** Has _____ or any of its key personnel been the subject of a civil or criminal action, including any FTC Rule, involving misrepresentation, fraud, securities law violation, or unfair or deceptive practices, including any FTC Rule, within the past 10 years?

☐ YES → If the answer is yes, _____ must attach a list of all such legal actions to this form.
☒ NO

**CANCELLATION OR REFUND POLICY:** Does _____ offer a cancellation or refund policy?

☒ YES → If the answer is yes, _____ must attach a statement describing this policy to this form.
☐ NO

**EARNINGS:** Has _____ or its salesperson discussed how much money purchasers of this business opportunity can earn or have earned? In other words, have they stated or implied that purchasers can earn a specific level of sales, income, or profit?

☒ YES → If the answer is yes, _____ must attach an Earnings Claims Statement to this form.
           Read this statement carefully. You may wish to show this information to an advisor or accountant.
☐ NO

**REFERENCES:** In the section below, _____ must provide you with contact information for at least 10 people who have purchased a business opportunity from them. If fewer than 10 are listed, this is the total list of all purchasers. You may wish to contact the people below to compare their experiences with what _____ told you about the business opportunity.

Note: If you purchase a business opportunity from _____, your contact information can be disclosed in the future to other potential buyers.

|    | Name | State | Telephone Number |    | Name | State | Telephone Number |
|----|------|-------|------------------|----|------|-------|------------------|
| 1. | Michael Brown | CA. | | 6. | Elke Hansloss | Az. | |
| 2. | Catherine Dalen | NY. | | 7. | Logan Gaylord | WA. | |
| 3. | Terry Chang | | | 8. | Kris Patel | NY | |
| 4. | Ming Li | NY | | 9. | Derek Adams | FL. | |
| 5. | Richard Evans | AL. | | 10. | Luis Soto | FL | |

Signature: _____    Date: _____

By signing above, you are acknowledging that you have received this form. This is not a purchase contract. To give you enough time to research this opportunity, federal Trade Commission requires that after you receive this form, _____ must wait at least seven calendar days before asking you to sign a purchase contract or make any payments.

Attachment E

