UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:24-cv-07660-SPG-JPR *SEALED* | Date | September 13, 2024 |
| Title | FEDERAL TRADE COMMISSION V. ASCEND CAPVENTURES INC. ET AL. | | |

| Present: The Honorable | SHERILYN PEACE GARNETT<br>UNITED STATES DISTRICT JUDGE |
|---|---|
| P. Gomez | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiff: | Attorneys Present for Defendants: |
| Not Present | Not Present |

***UNDER SEAL***

**Proceeding:** (IN CHAMBERS) MINUTE ORDER GRANTING PLAINTIFF'S *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER, ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE, AND ORDER WAIVING NOTICE REQUIREMENT [ECF NO. 4]

### I. Introduction

The Court is in receipt of Plaintiff Federal Trade Commission's ("Plaintiff" or "FTC") *Ex Parte* Application for Temporary Restraining Order, Order to Show Cause Why a Preliminary Injunction Should Not Issue, and Order Waiving Notice Requirement against Defendants Ascend Capventures, Inc., Ascend Ecommerce Inc., Ascend Administration, Inc., Ascend Ecom LLC, Ascend Distribution LLC, William Michael Basta, and Jeremy Kenneth Leung (collectively, "Defendants") (ECF No. 4 ("Application")).[1] For the reasons discussed below, the Court **GRANTS** the Application.

### II. Background

Plaintiff initiated this lawsuit in federal court on September 9, 2024. (ECF No. 1 ("Complaint")). Plaintiff theorizes that the Corporate Defendants, doing business throughout the United States including within this district, operate as a common enterprise with shared

---

[1] Plaintiff asserts that Defendants first commenced the business operations with the name "Ascend Ecom" and periodically changed the name through the years. For ease of reference, the Ascend different entities and operation are hereinafter collectively referred to as "Ascend" or "Defendants." Specifically, Ascend Capventures, Inc., Ascend Ecommerce Inc., Ascend Administration, Inc., Ascend Ecom LLC, and Ascend Distribution LLC are hereinafter collectively referred to as "Corporate Defendants." (*See* ECF No. 9.2 ("Memorandum") at 11-12). Co-founders William Basta and Jeremy Leung are hereinafter collectively referred to as "Individual Defendants."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:24-cv-07660-SPG-JPR *SEALED* | Date | September 13, 2024 |
| Title | FEDERAL TRADE COMMISSION V. ASCEND CAPVENTURES INC. ET AL. | | |

ownership, addresses, contact information, websites, comingled finances, and, most importantly, the shared purpose of operating a business scheme. (*See* ECF No. 20, Declaration of Tyler Broome ("Broome Decl.") at 72, 84-90). At the forefront of this business scheme, Plaintiff alleges, are William Basta and Jeremy Leung, the co-founders and owners of the Corporate Defendants. Plaintiff asserts that the Individual Defendants operate a "confusing web of interconnected companies to mask their involvement in and control of the scheme." (ECF No. 6, Declaration of Jody Goodman ("Goodman Decl."), ¶ 14). For instance, Basta and Leung often dissipate funds received from consumers' investments to multiple banks, threaten legal action against a disgruntled client, and participate in the overall marketing. (*See* ECF No. 16, Declaration of Jeanette Schneider ("Schneider Decl."), ¶¶ 24-25); (*see also* ECF No. 20-1 at 2).

As the basis for bringing this action, Plaintiff alleges that Defendants employ deceptive earning claims to attract consumers into investing in e-commerce business opportunities as passive income. (*See* ECF No. 20-2 at 51-52). According to Plaintiffs, the primary activity of Defendants' business consists of contracting with clients to manage the daily operations of the clients' Amazon and Walmart ecommerce stores. (*See id.* at 49, 52). When prospective consumers express interest in learning more about the advertised business opportunities, sale agents on behalf of the Defendants present marketing materials, specifically a spreadsheet displaying projected earnings and purported steady growth of income. (*See* ECF No. 11 at 42). To further lure prospective clients, the sales agents guarantee that the business opportunity remains "risk-free," as Ascend promises to issue a refund if clients do not gain promised profit. (*See* ECF No. 12-1 (Declaration of Brande Lathan ("Lathan Decl."), ¶ 4). The contractual agreements generally expect clients to have access to a minimum of $30,000 in working capital. (*See* ECF No. 11 at 59). The contract also includes a "Mutual Non Disparagement" provision, which prohibits the client from releasing any disparaging statement of any service while also restricting the manager from making any disparaging statement about the client. (*See* ECF No. 15 at 64).

Plaintiff further elaborates that, upon entering the contracts, many clients began noticing Defendants' mismanagement of the stores—mainly by failing to deliver products to customers, sales of counterfeit products, and loss in inventory. (*See* ECF No. 13-1, Declaration of Paige Muller ("Muller Decl."), ¶¶ 8-10). Plaintiff claims that many clients have complained to seek resolve, but to no avail. Defendants have evaded clients' complaints by often switching communication platforms, creating long response times, and falsely promising resolution. (*See* 13, Declaration of Julie Maxwell ("Maxwell Decl."), ¶¶ 6, 10-11). Aggrieved clients are only left without meaningful choices, according to Plaintiff. Defendants often require clients to remove their online reviews to receive their refunds or expend additional funds to seek new store opportunities that typically have not materialized. (*See* ECF No. 15-1, Declaration of Anthony Patti ("Patti Decl."), ¶¶ 14-17); (*see also* ECF No. 16, Declaration of Jamaal Sanford ("Sanford Decl."), ¶ 14). In sum, none of the nineteen declarants in the record have made a profit. (*See* Memorandum at 17).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:24-cv-07660-SPG-JPR *SEALED* | Date | September 13, 2024 |
| Title | FEDERAL TRADE COMMISSION V. ASCEND CAPVENTURES INC. ET AL. | | |

Plaintiff brings forth this action under seal, alleging that Defendants have violated the following: Section 5(a) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45(a); FTC's Trade Regulation Rule entitled "Disclosure Requirements and Prohibitions Concerning Business Opportunities" (hereinafter, "Business Opportunity Rule"), 16 C.F.R. Part 437, as amended; and the Consumer Review Fairness Act ("CRFA"), 15 U.S.C. § 45b. Plaintiff has simultaneously filed the instant *Ex Parte* TRO application. Because Plaintiff has filed the *Ex Parte* Application without notifying Defendants, Defendants have not filed an Opposition.

### III. Legal Standard

Federal Rules of Civil Procedure 65 generally governs the issuance of temporary restraining orders. Fed. R. Civ. P. 65(b). However, Section 13(b) of the FTC Act permits the FTC to bring an action in a United States District Court for preliminary injunctive relief whenever the FTC "has reason to believe that any person, partnership, or corporation is violating, or is about to violate, any provision of [the FTC Act." 15 U.S.C. § 53(b)(1). Although the standards under Rule 65(b) and Section 13(b) are similar, Section 13(b) "places a lighter burden on the Commission than that imposed on private litigants by the traditional equity standard; the Commission need not show irreparable harm" to obtain injunctive relief. *FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1233 (9th Cir. 1999) (quotation and citation omitted). Based on this lenient standard, a court, therefore, evaluates the motion to "1) determine the likelihood that the Commission will ultimately succeed on the merits and 2) balance the equities." *Id.* "Under the second prong of this analysis, public interests are generally entitled to stronger consideration than private interests." *FTC v. Merch. Servs. Direct, LLC*, No. 13-CV-0279-TOR, 2013 WL 4094394, at *2 (E.D. Wash. Aug. 13, 2013); *see also FTC v. World Wide Factors, Ltd.*, 882 F.2d 344, 347 (9th Cir. 1989) ("[W]hen a district court balances the hardships of the public interest against a private interest, the public interest should receive greater weight.").

### IV. Discussion
#### A. Plaintiff Justifies Waiver of Rule 65's Notice Requirement

Rule 65 permits a court to issue a temporary restraining order without notice to the adverse party where "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant." Fed. R. Civ. P. 65(b)(1)(A). The movant must also certify in writing any efforts made to give notice and the reasons why notice should not be required. Fed. R. Civ. P. 65(b)(1)(B). A temporary restraining order is intended to preserve the status quo only until a preliminary injunction hearing can be held. *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974).

The Ninth Circuit has cautioned that there are very few circumstances justifying the issuance of an *ex parte* temporary restraining order. *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006). An *ex parte* TRO is generally only appropriate when: 1) notice would be impossible because the party is not known or cannot be located, or 2) notice

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-07660-SPG-JPR *SEALED* | Date | September 13, 2024 |
|---|---|---|---|
| Title | FEDERAL TRADE COMMISSION V. ASCEND CAPVENTURES INC. ET AL. | | |

to the defendant would render further prosecution of the action fruitless. *Id.* For the latter, a plaintiff ordinarily "'must do more than assert that the adverse party would dispose of evidence if given notice'" and "'must show that defendants would have disregarded a direct court order . . . within the time it would take for a hearing . . . [and] must support such assertions by showing that the adverse party has a history of disposing of evidence or violating court orders.'" *Id.* (quoting *First Tech. Safety Sys., Inc. v. Depinet*, 11 F.3d 641, 650-52 (6th Cir. 1993)).

Here, Plaintiff proffers sufficient evidence to show that Defendants would disregard a direct court order. For example, in November 2023, attorney Nima Tahmassebi represented thirty-one former consumers of Ascend in a mass arbitration. (*See* ECF No. 18, Declaration of Nima Tahmassebi ("Tahmassebi Decl."), ¶ 11). She sent a demand letter to Jonathan Herpy, Ascend's Chief Compliance Officer and Legal Officer, requesting that Ascend preserve all documents and electronically stored information in anticipation of arbitration of potential litigation. (*Id.* ¶ 16). Although Herpy initially agreed to comply with the request, Tahmassebi's clients subsequently received an email from Ascend informing all clients that the company switched from Slack to email for communications; the clients could no longer access their Slack accounts. (*Id.* ¶ 19). When Tahmassebi emailed Herpy to ensure the company preserved the Slack communications, Herpy did not respond about the discovery concern. (*Id.* ¶ 21). Furthermore, Defendants have defaulted on at least one lawsuit filed by an Ascend client. Accordingly, the Court finds that notice under Rule 65(b) may be waived to ensure that further prosecution of this matter is not rendered fruitless, considering the chances of Defendants disregarding a court order.

### B.   Plaintiff Meets the Standard to Obtain a Temporary Restraining Order

Plaintiff requests that the Court issue a temporary restraining order on an *ex parte* basis, enjoining Defendants' alleged illegal practices, as well as ordering ancillary equitable relief, including asset freezer, appointment of a temporary receiver, immediate access to business premises, turnover of business records, limited expedited discovery, and an order to show cause why preliminary injunction should not issue. (Application at 12). Plaintiff contends that *ex parte* relief is appropriate because Defendants continue to harm additional consumers daily, dissipate assets that remain "hidden behind a maze of confusingly similar business names," and create multiple companies and bank accounts "to hide their ill-gotten gains." (*Id.*).

As discussed above, *see supra* Section III, the Court applies a two-factor test when deciding whether to grant to the TRO filed by the FTC. First, the Court must examine whether the FTC is likely to prevail on the merits. Second, the Court must balance the equities. The Court will address each factor in turn.

### 1.   Plaintiff Has Demonstrated a Likelihood of Success on the Merits

The Complaint asserts nine counts. The first three counts allege that Defendants' conduct violated Section 5 of the FTC Act. Section 5 prohibits "unfair or deceptive acts or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:24-cv-07660-SPG-JPR *SEALED* | Date | September 13, 2024 |
| Title | FEDERAL TRADE COMMISSION V. ASCEND CAPVENTURES INC. ET AL. | | |

practices in or affecting commerce." 15 U.S.C. § 45(a). An act or practice violates this provision if (1) it is likely to mislead consumers acting reasonably under the circumstances, and (2) such representation is material. *See FTC v. Cyberspace.com LLC*, 453 F.3d 1196, 1199 (9th Cir. 2006) (citing *FTC v. Gill*, 265 F.3d 944, 950 (9th Cir. 2001)). Although a misleading representation may be expressed or implied, the "distinction" is "without a difference." *FTC v. Figgie Int'l*, 994 F.2d 595, 604 (9th Cir. 1993). A representation is likely misleading if it is either false or the person making the representations lacked a reasonable basis for asserting that the message was indeed true. *United States v. MyLife.com, Inc.*, 567 F. Supp. 3d 1152, 1164 (C.D. Cal. 2021). Moreover, a representation is material if it "involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product." *Cyberspace.com*, 453 F.3d at 1201.

Here, for purposes of the Application, Plaintiff has presented sufficient evidence to establish a likelihood that Defendants misrepresented potential earning claims and the risk-free buyback guarantee, both of which many consumers relied upon to invest significant money in the allegedly deceptive business opportunities. (*See, e.g.*, ECF No. 16-1 at 24-28; ECF No. 17 at 167; ECF No. 13 at 4-5). The Court finds Plaintiff has sufficiently shown that Defendants' statements and online advertisements about opportunities for consumers to develop sizeable assets through digital commerce investments were certainly material and likely to mislead consumers. Additionally, Plaintiff has sufficiently shown that Defendants' guarantee that consumers would receive their money back if they did not earn the promised profits also constitutes material misrepresentations that likely mislead consumers to pursue the investment opportunities with Defendants.

Furthermore, Section 5 of the FTC Act renders an act or practice unfair if it "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition." 15 U.S.C. § 45(n). Pursuant to its public policy, the FTC has emphasized that, although "not to second-guess the wisdom of particular consumer decisions," unfairness actions are brought to "halt some form of seller behavior that unreasonably creates or takes advantage of an obstacle to the free exercise of consumer decisionmaking." FTC Policy Statement on Unfairness, Appended to *International Harvester Co.*, 104 F.T.C. 949, 1070 (1984).

Here, Plaintiff has provided sufficient evidence that Defendants allegedly threaten and intimidate consumers to dissuade them from speaking out or publishing truthful reviews about their experiences with the Defendants' services. From sending graphic, threatening messages in response to a client's negative online review to requiring a client to remove his negative review before receiving his requested refund, Defendants' complaint-suppression tactics not only harm clients by hindering their own decisionmaking process but also harm prospective clients who do not have access to truthful information and reviews about Defendants' services. (*See* ECF No. 16 at 53; ECF No. 15-1 at 113). Thus, the FTC is likely to prevail on its unfairness

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:24-cv-07660-SPG-JPR *SEALED* | Date | September 13, 2024 |
| Title | FEDERAL TRADE COMMISSION V. ASCEND CAPVENTURES INC. ET AL. | | |

claim as well.

Plaintiff also brings multiple counts under the Business Opportunity Rule, which prohibits misrepresentations of income and profits while also mandating sellers to provide prospective consumers with disclosure documents describing their earnings claims. 16 C.F.R. §§ 437.1(c), 437.2. The Court finds for purposes of the Application that Plaintiff has offered sufficient evidence showing that on several occasions, Defendants provided prospective consumers with final projection spreadsheets advertising that, within a year or two, the clients could amass thousands of dollars through their investments without Defendants having any substantiation to support such projections or promises. (*See* ECF 11 at 5-6). In fact, according to all nineteen consumer declarations, none of the profits projected by Defendants materialized. Thus, FTC is likely to prevail on its Business Opportunity Rule claims as well.

Lastly, Plaintiff alleges that Defendants violated the Consumer Review Fairness Act ("CFRA"). The CFRA forbids form contracts which restrict or penalize a consumer's ability to communicate reviews or performance analyses about a seller's services. 15 U.S.C. § 45b(b)(1). The "Mutual Non Disparagement" provision effectively foreclosed the clients' ability to share negative reviews of the services. In fact, as stated above, the evidence demonstrates that on multiple occasions, Defendants or their agents withheld requested refunds until aggrieved consumers removed their negative reviews about the provided services. At this stage, FTC has sufficiently demonstrated that it is likely to prevail on this cause of action.

Given that Plaintiff has proffered sufficient evidence to demonstrate a likelihood of success on its claims, the Court finds that this factor weighs in favor of granting Plaintiff's Application. *See World Wide Factors*, 882 F.2d at 347 ("Because irreparable injury must be presumed in a statutory enforcement action, the district court need only to find some chance of probable success on the merits.") (quoting *United Stated v. Odessa Union Warehouse Co-op*, 833 F.2d 172, 176 (9th Cir. 1987)). The Court thus examines the balance of equities.

### 2. The Balance of Equities Weighs in Plaintiff's Favor

As discussed above, *see supra* Section III, the public interest warrants greater weight when balanced against the private interest in a statutory enforcement injunction, such as this one. Here, the public interest in granting Plaintiff's Application remains significant because Plaintiff has presented sufficient evidence to demonstrate a likelihood that Defendants have engaged in a common scheme to defraud public consumers in violation of the FTCA, the Business Rule, and the CFRA. *See World Wide Factors, Ltd.*, 882 F.2d at 347 ("Public equities include, but are not limited to, economic effects and pro-competitive advantages for consumers and effective relief for the commission."). Potential prejudice to Defendants does not and cannot outweigh the public's significant interest in halting this unlawful conduct that appears to continue to this day. Nor does it outweigh the public's interest in preserving assets for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:24-cv-07660-SPG-JPR *SEALED* | Date | September 13, 2024 |
| Title | FEDERAL TRADE COMMISSION V. ASCEND CAPVENTURES INC. ET AL. | | |

provision of restitution to the injured consumers. Accordingly, the hardships weigh in favor of granting Plaintiff's Application.

Because Plaintiff has demonstrated a likelihood of prevailing on the merits and the hardships weigh in favor of the requested relief, the Court **GRANTS** Plaintiff's Application.

### 3. Ancillary Relief

In addition to the temporary injunction, Plaintiff asks the Court to freeze the Individual and Corporate Defendants' assets, appoint a temporary receiver over the Corporate Defendants, grant the FTC and the temporary receiver immediate access to Defendants' business premises, and order limited expedited discovery. As an initial matter, the Ninth Circuit has made clear that, when drafting the FTCA, Congress empowered district courts with equitable authority to grant injunctions and "any ancillary relief necessary to accomplish complete justice because it did not limit that traditional equitable power explicitly or by necessary and inescapable inference." *F.T.C. v. H. N. Singer, Inc.*, 668 F.2d 1107, 1113 (9th Cir. 1982) (upholding lower court's decision to freeze assets).

Starting with the assets, "[a] party seeking an asset freeze must show a likelihood of dissipation of the claimed assets, or other inability to recover monetary damages, if relief is not granted." *Johnson v. Couturier*, 572 F.3d 1067, 1085 (9th Cir. 2009). Here, Plaintiff has submitted evidence demonstrating that Defendants' business enterprise may be predicated on a common scheme that has yielded and dissipated at least $25 million investment dollars from consumers. (Broome Decl. at 78-79); (*see also* Complaint at ¶¶ 92-96). The purported scheme allegedly successfully operated by quickly transferring massive amounts of money that consumers paid to Ascend's bank accounts to multiple accounts owned by Individual Defendants Leung and Basta, instead of properly using the clients' investment money to create and maintain clients' e-commerce stores. (*see* Complaint at ¶¶ 92-96); *see also Fed. Trade Comm'n v. Wealth Educators, Inc.*, No. CV1502357SJOJEMX, 2015 WL 11439063, at *7 (C.D. Cal. Apr. 6, 2015) (noting that courts have frozen individual defendants' assets where the individual defendants "controlled the deceptive activity and had actual or constructive knowledge of the deceptive nature") (citation omitted). Pursuant to Section 19 of the FTC Act, Plaintiff has demonstrated that, considering the Defendants' web of asset dissipation through multiple bank accounts, the interest in fulfilling justice warrants an asset freeze. Relatedly, for the same reasons as those advanced for freezing the assets, a temporary receiver is crucial to ensure that Defendants will not further dissipate their assets or discard crucial evidentiary, financial documents. *See Canada Life Ins. Co. v. LaPeter*, 563 F. 3d 837, 845 (9th Cir. 2009) (finding receiver appropriate to prevent "danger of substantial waste and risk of loss"). Thus, the Court **GRANTS** Plaintiff's requests to freeze assets, appoint a temporary receiver, and receive immediate access to the business premises.

Regarding expedited discovery, courts apply the "good cause" standard to determine

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:24-cv-07660-SPG-JPR *SEALED* | Date | September 13, 2024 |
| Title | FEDERAL TRADE COMMISSION V. ASCEND CAPVENTURES INC. ET AL. | | |

whether expedited discovery is warranted. *Rovio Entm't Ltd. v. Royal Plush Toys, Inc.*, 907 F. Supp. 2d 1086, 1099 (N.D. Cal. 2012). "Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002). Here, Plaintiff seeks expedited discovery and satisfies the showing of good cause, as the evidence currently on the record demonstrates that Defendants may attempt to destroy discoverable documents, particularly digital evidence on computer software systems, absent expedited discovery. (*See* Goodman Decl., ¶¶ 10-11). Accordingly, the Court **GRANTS** this request for expedited discovery.

**V.   CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Plaintiff's Application. The specific injunctive relief granted is attached and incorporated by reference into this Order. The temporary injunction shall expire on Wednesday, September 27, 2024, at 5 p.m.

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer   pg