JOSHUA A. DEL CASTILLO (BAR NO. 239015)
E-Mail: jdelcastillo@allenmatkins.com
MATTHEW D. PHAM (BAR NO. 287704)
E-Mail: mpham@allenmatkins.com
ALPHAMORLAI L. KEBEH (BAR NO. 336798)
E-Mail: mkebeh@allenmatkins.com
ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
865 South Figueroa Street, Suite 2800
Los Angeles, California 90017-2543
Phone: (213) 622-5555
Fax: (213) 620-8816

Attorneys for Receiver
Stephen J. Donell

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>ASCEND CAPVENTURES INC.; et al.,<br><br>Defendants. | Case No. 2:24-cv-07660-SPG-JPR<br><br>**INITIAL REPORT AND RECOMMENDATIONS OF RECEIVER, STEPHEN J. DONELL**<br><br>Date: September 25, 2024<br>Time: 3:00 p.m.<br>Ctrm: 5C<br>Judge Hon. Sherilyn Peace Garnett |

# **TABLE OF CONTENTS**

**Page**

I.   SUMMARY ................................................................................................. 3

II.  RECEIVER'S PRELIMINARY EFFORTS ............................................... 4

    A.   Initial Efforts Of The Receiver ........................................................ 5

        1.   *Providing Notice of The Initial Appointment Order* .............. 7

        2.   *Initial Financial Analysis* ....................................................... 8

        3.   *In-Person Site Visits* .............................................................. 8

        4.   *Real Property Investigations* ............................................... 11

    B.   Identification of Potential Receivership Assets ............................ 12

III. ASSETS AND LIABILITIES OF THE RECEIVERSHIP ENTITIES ................................................................................................ 13

IV.  THE RECEIVER'S INTENDED FUTURE ACTIONS .......................... 13

V.   VIABILITY OF THE RECEIVERSHIP ENTITIES' OPERATIONS ........................................................................................... 15

VI.  PRELIMINARY FINDINGS AND RECOMMENDATIONS ................ 15

VII. CONCLUSION ........................................................................................ 17

**TO ALL INTERESTED PARTIES AND THIS HONORABLE COURT:**

**PLEASE TAKE NOTICE THAT** Stephen J. Donell (the "Receiver"), the Court-appointed receiver for defendants defendant Ascend Capventures Inc., Ascend Ecomm LLC, ACV, ACV Partners, Accelerated Ecommerce Ventures; Ascend Distribution LLC (California), Ethix Capital, ACV Nexus, Ascend Ecommerce Inc., Ascend Administration Inc., Ascend Ecomm LLC, Ascend Distribution LLC (Texas), and their collective dbas, subsidiaries, and affiliates (collectively, the "Receivership Entities" or "Entities"), hereby submits this Initial Report and Recommendations of Receiver (the "Report")[1] in order to detail those critical tasks undertaken by the Receiver and his professionals since the entry of the Court's September 13, 2024 Order on Plaintiff's Ex Parte Application For (1) Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue; (2) Waiver of Notice Requirement; (3) Appointment of a Temporary Receiver, Freezing of Assets; and other Equitable Relief (the "Initial Appointment Order").

## I. SUMMARY.

As noted in the Initial Appointment Order, this Court has charged the Receiver with, among other things, assuming authority and control over the Receivership Entities and their assets ("Receivership Assets" or "Assets"); recovering all books and records concerning the Receivership Entities' business and financial activities; and identifying, marshaling, and conserving available Receivership Assets in a manner consistent with the purpose of his appointment.

The Initial Appointment Order further requires all parties in receipt of the order to cooperate with the Receiver in connection with the Receiver's Asset investigation and recovery efforts, including via the production of any documents and other materials that may be relevant to the Receiver's charge.

---

[1] This Report is preliminary and based upon limited information presently available to the Receiver. It, and any conclusions presented herein, are subject to change as additional information is obtained.

Finally, the Appointment Order requires the Receiver to provide the Court with an inventory of Receivership Assets as soon as practicable. As of the date of this Report, the Receiver's document recovery and review efforts – let alone his Asset identification and recovery efforts – remain incomplete. As reflected below, and in accordance with the fee application calendar established by the Court in the Initial Appointment Order, the Receiver recommends that the Court authorize the Receiver to continue to perform his duties and to submit an additional, first interim report ("<u>First Interim Report</u>"), no later than sixty (60) days from the date of the entry of the Initial Appointment Order, contemporaneously with the submission of his and his professionals' first interim fee applications, as contemplated in the order.

The Receiver's First Interim Report will address additional progress made and steps taken by the Receiver, we well as any conclusions reached by the Receiver and recommendations regarding the continuation or termination of the present receivership. This should permit the Receiver sufficient time to determine whether sufficient Receivership Assets exist and can be recovered so as to justify the continued existence of the receivership. It will also permit the Receiver to undertake meaningful collection efforts with respect to any Assets identified in the near term, in accordance with the provisions of the Initial Appointment Order. If, by the time the Receiver's submits his First Interim Report, he has not identified Assets sufficient to justify a continued investigation, the Receiver may recommend that the Court terminate the receivership.

## II. RECEIVER'S PRELIMINARY EFFORTS.

While the Receiver was appointed just over one week before the submission of this Report, he has already undertaken a number of efforts aimed at, among other things, better understanding the corporate and individual defendants, their interrelationships, the business operations of the Receivership Entities, and – critically – the funds raised by the Receivership Entities during the pre-receivership

period, and the amount of Assets immediately available for recovery, if any. The Receiver's most significant efforts include:

### A. Initial Efforts Of The Receiver.

Upon his appointment, the Receiver and his staff, in coordination with the plaintiff Federal Trade Commission (the "FTC"), commenced urgent efforts to contact banking and other financial institutions and other third parties believed or suspected to have conducted business with the Receivership Entities and individual defendants William Basta and Jeremy Leung, in order to, among other things: (a) provide notice of the Initial Appointment Order and the pending receivership; (2) ensure timely compliance with the temporary restraints imposed by the Initial Appointment Order, including with respect to the turnover of related premises, accounts, and documents and other materials.

As of the date of this Report, and as detailed further below, the Receiver has received some responses to the notices he has transmitted, and he expects to receive more still. Nonetheless, he remains in the process of evaluating whether and to whom additional notices and turnover requests are warranted, including in order to identify and recovery available Receivership Assets.

By way of general summary, the Receiver's near-term investigation efforts have included, among other things:

- Worked to minimize the likelihood of further allegedly fraudulent activity by the Receivership Entities via the transmittal of notices of the Initial Appointment Order to banks, financial institutions, and third parties believed to have acted in concert or in privity with the Receivership Entities, as well as the transmittal of document and data preservation letters certain financial institutions as well as known internet platforms believed to be associated with the Receivership Entities and platforms commonly used to market and interact with consumers;

- Engaging a forensic accountant and commencing a detailed review of available data[2] relating to the business and financial activities of the Receivership Entities and their principals, including individual defendants Basta and Leung;

- Reviewing and conducting an initial analysis of the financial activities described in the FTC's submissions in support of its request for a temporary restraining order;

- Reviewing preliminary materials provided by the FTC, in addition to banks and other financial institutions in receipt of notice of the Initial Appointment Order;

- Conducting in-person visits to various physical addresses associated with the Receivership Entities and their principals in order to: (a) determine the availability of potentially relevant books and records; (b) where possible, temporarily suspend known Receivership Entity operations; and (c) identify potential Receivership Entity personnel or third parties with knowledge of the Receivership Entities' operations and activities; and

- Commenced a detailed investigation into multiple real properties believed to be owned or controlled by defendants Basta and Leung, and purchased with money obtained or unlawfully diverted from allegedly defrauded consumers, as well as transmitting notices of the Initial Appointment Order to real property brokers apparently currently engaged in the marketing of two (2) such properties for sale.

As of the date of this Report and as addressed below, the Receiver has not yet been able to make a determination as to the status of all of the Receivership Entities' operations, or whether the Entities' principals remain engaged in actions consistent

---

[2] The plaintiff FTC has also provided the Receiver with summary schedules reflecting the accounting information underlying its submissions to the Court.

with the e-commerce scheme alleged in the FTC's Complaint. While the Receiver has provided the Receiver with certain accounting summaries and other materials and he has recovered potentially relevant information from his notices, demands, and site visits, it will take time to complete a review of such information, and to obtain presently outstanding responses which will likely further improve the Receiver's understanding of the present state of the Receivership Entities' operations and business and financial activities and their present status, critically including with respect to the availability of recoverable Assets.

### 1. *Providing Notice of The Initial Appointment Order.*

As of the date of this Report, the Receiver has provided notice of the Appointment Order to a number of banks and financial institutions, as well as property management companies, landlords, a warehouse operator, at least three (3) attorneys, and two real property brokerage companies believed to have acted in concert with the Receivership Entities or individual defendants Basta and Leung. While he has received responses to certain of his notices – and, through counsel, has had productive discussions with certain persons with information regarding the Entities' operations – the Receiver intends to continue his outreach efforts, including via the continued distribution of notices of the Initial Appointment Order (or any relevant preliminary injunction issued by this Court), and the submission of Asset, account, and document preservation and turnover demands, as appropriate.

The Receiver was notified on September 20, 2024 that the defendants had engaged counsel. The Receiver has, through counsel, transmitted a request for the turnover of all Assets and information subject to the immediate turnover provisions of Section XIII of the Initial Appointment Order. The Receiver intends to confer with counsel further at his earliest opportunity (and indeed may have done so by the time this Report is considered by the Court) and hopes that such discussions will aid in securing prompt compliance with all terms of the Initial Appointment Order,

including with respect to the turnover of relevant documents and records, as well as any Asset subject to the Initial Appointment Order.

### 2. *Initial Financial Analysis.*

While the materials the Receiver has recovered from non-parties to date are relatively minimal, he has obtained some records, supplemented considerably by the information submitted by the FTC in support of its request for injunctive relief or otherwise shared with the Receiver. As of the date of this Report, the Receiver's forensic accountant, SL Biggs, is in the process of conducting an initial analysis of certain of these materials in order to better understand the business and financial activities of the Receivership Entities and their defendant principals, prioritizing those records also deemed likely to identify recoverable Receivership Assets. As a result of these efforts, the Receiver has already identified a number of non-parties that may be affiliates of the Receivership Entities, or through which certain of the Receivership Entities or their principals' activities were undertaken, including the purchase of Assets subject to turnover using funds diverted from allegedly victimized consumers. While the information obtained by the Receiver to-date is substantially incomplete and insufficient to underlie a comprehensive accounting, the Receiver has identified a number of bank accounts warranting further review, as well as at least six (6) real properties which may have been purchased using consumer funds.

### 3. *In-Person Site Visits.*

#### (a) *Auburn, California.*

On September 16, 2024, the Receiver travelled to 3240 Professional Dr., Auburn, California 95602, believed to be among the principal places of business of the Receivership Entities, in order to commence the physical take-over of the Entities, critically including their books and records. While no Entity personnel were located at the Auburn facility, the Receiver interviewed a Kristi Crowley and Ashley Price, both with Executive Management Solutions TaxCite, an entity

associated with the Receivership Entities. Ms. Crowley assisted the FTC's IT personnel, who joined the Receiver at the location, in recovering a number of electronic materials believed to contain receivership records. At the Receiver's request, those materials were imaged by the FTC. Prior to materials being provided to the Receiver for his review, any recovered information will be initially reviewed for privilege or other related protections that may exist. The Receiver will commence his review and analysis of the data retrieved from those materials as soon as practicable thereafter, and will include any conclusions derived therefrom in his First Interim Report.

          *(b)    Dallas, Texas.*

On September 15, 2024, the Receiver's personnel in the Dallas Texas area travelled to two locations believed to contain Receivership Entity operations and Assets. The first of the locations proved no longer to be controlled by the Entities, which had apparently been evicted for non-payment of rent in or around July 2024. The second location, a warehouse (the "Warehouse") located at 941 Avenue N, Grand Prairie, Texas 75050 and operated by an e-commerce shipper identified as Walzon (a combination of "Wal-Mart" and "Amazon") was still operational. In accordance with the Initial Appointment Order, the Receiver's personnel immediately restricted access to the Warehouse and conducted an initial walk-through of the premises, which proved to contain as many thousands of individual items (some packed in wrapped pallets) for shipping, associated with a number of e-commerce vendors, including but not limited to the Receivership Entities. A handful of computers were also located at the Warehouse, which appeared to be in use for Warehouse operations. With the permission of Walzon's on-site manager, Nikita Loktev, those computers were later imaged for review, once the Receiver and the FTC had made their personal inspection.

On September 16, 2024, the Receiver, accompanied by FTC personnel, travelled to the Warehouse to undertake a personal review of the facility and its

contents, and to speak directly with Walzon's on-site facility manager, Mr. Loktev, who maintained strenuously that the facility operated as a delivery and drop-shipping site for multiple e-commerce vendors, not just those associated with the Receivership Entities. After discussing the urgency of obtaining a inventory distinguishing Entity-related Assets from those unrelated to the receivership with the Walzon manager and conducting his own cursory review of the materials located at the Warehouse, the Receiver determined, in his reasonable business judgment, that it was impracticable in the immediate term for him to make an assessment of what inventory was owned by or related to the Entities and their customers, and what inventory was not. Notably, Mr. Loktev conceded to the Receiver that no written inventory existed, that it was virtually impossible for a third party to ascertain what items belonged to the Receivership Entities or their affiliates and which belonged to Walzon's other clients, and it was clear to the Receiver that the Warehouse's business was operating in a chaotic and disorganized fashion. As a consequence, and having provided notice of the Initial Appointment Order to Walzon and the Warehouse's landlord and property manager, and transmitted formal correspondence from counsel regarding the risks attendant to any violations of the order, the Receiver elected to permit Walzon to continue its operations, albeit subject to the Asset disposition restrictions included in the Initial Appointment Order. Although he Receiver had initially directed that the Warehouse be re-keyed, he returned a key and access to Mr. Loktev.

The Receiver's discussion with Mr. Loktev, Walzon's on-site manager, conducted in part through a Russian-speaking interpreter, was informative as to other matters. Among other things, the Receiver learned that: (a) one of the Receivership Entities was likely the Warehouse's lessee; (b) the Warehouse manager had been in contact with defendant Leung through a variety of messaging applications, including at least WhatsApp and Telegram, to advise him of the lockdown undertaken by the Receiver's personnel and to provide him with photos of

the Receiver's Asset and record preservation letter; (c) Mr. Leung had allegedly initially committed to contacting the Receiver and engaging legal counsel, potentially for Warehouse personnel, but later reneged; and (d) Mr. Leung and a non-party also believed to be affiliated with the Entities had deleted their entire Telegram histories and all records of discussions with Warehouse personnel, after having reviewed the Receiver's preservation letter.[3]

In other words, the Receiver is confident that Mr. Leung was made aware of the Receiver's visit to the Warehouse, and accordingly of the current terms and pendency of the receivership. Despite the commitment apparently made by Mr. Leung to the Warehouse's manager, Mr. Leung has not been in contact with the Receiver, directly or through counsel. Nonetheless, given that Mr. Leung appears to have engaged counsel to represent him in this matter, and that the Receiver anticipates opening a dialogue with counsel immediately, he remains optimistic that prompt compliance with the Initial Appointment Order can be secured.

On September 16, 2024, the Receiver's personnel also conducted a site visit to a residential address in Miami, Florida, believed to be defendant Basta's primary residence, in the hopes of obtaining the turnover of materials and information falling within the ambit of the turnover provisions of the Initial Appointment Order. Unfortunately, no one was present at the address, which appeared not to have been visited in some time. Thereafter, through counsel, the Receiver provided notice of the Initial Appointment Order to an email account believed to belong to Mr. Basta. The Receiver will continue his efforts to contact Mr. Basta, through counsel.

### 4.  *Real Property Investigations.*

Based on materials obtained from the plaintiff FTC, the Receiver has identified a total of six (6) real properties in California which may have been purchased with funds obtained or unlawfully diverted from allegedly defrauded

---

[3] If true, such deletions could constitute a violation of the document preservation provisions of the Initial Appointment Order.

consumers. The Receiver has commenced a review of title documents associated with these properties, in order to determine confirm last date of sale, present ownership, and any relationship to the Receivership Entities or their principals, He also anticipated undertaking discovery and document review aimed at determining whether consumer funds were used to purchase the properties, in which case the properties would be subject to disgorgement to the Receiver.

Upon his appointment, the Receiver learned that two (2) of the above-referenced properties were currently listed for sale. Through counsel, the Receiver immediately provided notice of the Initial Appointment Order to the properties' brokers, one of whom has to-date responded, alleging no relationship to the Receivership Entities. While the Receiver assumes this response was transmitted in good faith, he understands there that video and other evidence directly links the Receivership Entities and their principals to the property in question, and accordingly will continue his investigation.

**B.    Identification of Potential Receivership Assets.**

While the receivership remains in the early stages, the Receiver has already begun inquiries regarding the nature, amount, and availability of recoverable Receivership Assets. At present, the materials the Receiver has received from banks and other financial institutions suggest that most or all known accounts associated with the Receivership Entities have been drained, or carry extremely minimal balances. The Receiver will, of course, continue to review documents in an effort to trace and recover receivership funds through the use of his own staff and a third party forensic accountant.

At present, however, and assuming for the moment that the real properties already identified prove to have been purchased using funds obtained or unlawfully diverted from allegedly defrauded consumers, these and other assets purchased with fraudulent proceeds may represent the most significant source of recovery available to the Receiver including for the eventual establishment of any funds intended to

make restitution to victimized creditors of the Receivership Entities. Accordingly, and as he deems appropriate in his experience and reasonable business judgment, the Receiver may record notices of pending receivership against these properties in order to minimize the likelihood that they are sold without his (or this Court's) permission during the pendency of the receivership.

### III. ASSETS AND LIABILITIES OF THE RECEIVERSHIP ENTITIES.

Given the substantial volume information already provided to the Receiver, including in the form of the FTC's submissions to the Court, and the Receiver's ongoing discovery efforts, the Receiver has concluded that it is premature to present a definitive assessment of the expected assets and liabilities of the Receivership Entities. The Receiver has been appointed for just over one week, and the investigation remains ongoing. The information received and processed by the Receiver thus far, however, is promising, and suggests that there may be Receivership Assets available for recovery that would justify the continued pendency of the receivership, including for the purpose of restitution efforts vis-à-vis allegedly defrauded consumers. The Receiver anticipates providing a more comprehensive evaluation of the Receivership Entities' financial status in his proposed, forthcoming First Interim Report.

### IV. THE RECEIVER'S INTENDED FUTURE ACTIONS.

The Receiver will undertake several key steps in the coming weeks to protect the Receivership Assets, pursue the recovery of Receivership Assets, and address any liabilities associated with the Receivership Entities.

First, the Receiver will continue to prioritize the preservation of all known Receivership Assets. This will include the ongoing communication with banks, payment processors, and other financial institutions known or suspected to hold accounts or assets associated with the Receivership Entities. The Receiver has already begun issuing preservation notices to these entities to prevent any transfer, dissipation, or other disposal of potential Receivership Assets. As more information

is uncovered – particularly as new potential assets are identified – the Receiver will send additional subpoenas and preservation letters to secure those assets.

In addition to preservation efforts, the Receiver will continue his efforts to recover potential assets held by third parties. Several financial institutions have been identified as holding multiple accounts linked to the Receivership Assets, and efforts are underway to compel these institutions to turn over any funds held in these accounts, and to trace any funds dissipated from these accounts. Further, the Receiver has identified real properties that may have been purchased using funds from allegedly defrauded from consumer victims. The Receiver anticipates recording notices of pending receivership against these properties and will continue to investigate other potential assets purchase with consumer funds that may be subject to turnover.

Addressing the liabilities of the Receivership Entities is also a priority. The Receiver is in the process of reviewing all known relevant financial documentation to assess the Receivership Entities' outstanding debts, obligations, and any other liabilities that may affect the receivership estate, including a developing a list of known consumer clients and other prospective creditors. As previously mentioned, the Receiver anticipates including an updated analysis of the Receivership Entities' known liabilities in the Receiver's First Interim Report.

Now that the docket for the above-captioned action has been unsealed, the Receiver will establish a website portal for the instant receivership via his existing website, www.fedreceiver.com, for the benefit of consumers and other prospective creditors of the Estate. Via this portal, consumers and others will be able to register with the Receiver, obtain information including case and filing updates, submit claims and materials, and communicate directly with the Receiver or his staff.

In sum, the Receiver will continue his diligent efforts to preserve potential Receivership Assets and documents, recover any additional assets from third parties,

and investigate the Receivership Entities' liabilities in accordance with the Initial Appointment Order and any subsequent orders issued by this Court.

## V. VIABILITY OF THE RECEIVERSHIP ENTITIES' OPERATIONS.

At this early stage of the Receivership, the Receiver has reviewed the information provided by the FTC in its Complaint and related materials, as well as the documents and financial records obtained to date. Based on this initial review, the Receiver has significant concerns about the viability of the Receivership Entities' business as a legitimate going concern, but expect to learn more about their operations in the near term, including via discussions with and review of any materials provided by defendants' counsel.

To date, the Receiver has not identified any portion of the Receivership Entities' business that appears to be unrelated to the allegedly fraudulent activity alleged by the FTC. While it remains possible that a portion of the business may be legitimate, it is the Receiver's preliminary conclusion that the proceeds from continuing to run any potentially lawful aspect of the business, as compared to the cost of such operations under the supervision of the Receiver would likely be insufficient to justify such operations. The Receiver has serious concerns regarding the operations at the Warehouse, the lack of records, inventory, accounts payable, receivables, or other similar business records that a legitimate business would be expected to maintain.

As such, the Receiver is uncertain at this time as to whether the Receivership Entities can be converted into a sustainable going concern. The Receiver will continue to investigate the Receivership Entities' business operations and present additional analysis, conclusions (if any), and recommendations to this Court in his anticipated First Interim Report.

## VI. PRELIMINARY FINDINGS AND RECOMMENDATIONS.

The information presently available to the Receiver is extremely limited, given that his efforts to obtain and review materials are approximately a week old,

and that additional document and information requests are sure to issue. Those few banks and financial institutions that have responded to the Receiver's requests have provided minimal additional information of limited value. However, some of the information obtained by the Receiver as of the date of this Report is promising and may lead to the identification and recovery of Receivership Assets, or additional financial information and other materials otherwise of value to the receivership. Of course, many financial institutions and providers continue to gather requested information and materials, and the Receiver anticipates that additional promising or valuable information will be forthcoming.

Unfortunately, the information provided to the Receiver as of the date of this Report has not led to the identification or recovery of Receivership Assets of any substantial value. Indeed, based on responses and confirmations from certain financial institutions to date, the Receiver believes that the Entities' known bank accounts presently hold only a *de minimis* amount.

Nonetheless, based on the information obtained to date, the Receiver remains optimistic that an appropriately cost-controlled follow-up regarding the information and materials received so far may lead to the identification and recovery of significantly more valuable financial and real property assets.

In other words, the Receiver's preliminary review of the materials and information obtained to date suggests potentially promising additional avenues of inquiry. The Receiver believes, in his reasonable business judgment, that these lines of inquiry should be followed.

Accordingly, and for the time being, the Receiver recommends that the Court continue the receivership and permit him to proceed with his document and asset recovery efforts. He further recommends that he be authorized to file a follow-up, First Interim Report no more than sixty (60) days after the entry of the Initial Appointment Order, contemporaneously with his and his professionals' Court-ordered fee application submission, to update the Court regarding his efforts to

identity and collect assets, further evaluate the state of the Receivership Entities operations, and address whether the instant receivership should remain in effect. If, as of the date that the First Interim Report is filed, the Receiver believes that there are insufficient recoverable assets to justify the continuation of his investigation, the Receiver will recommend to the Court that the Receivership be terminated.

In the interim, and unless otherwise instructed by the Court, the Receiver will continue in his efforts to: (1) collect and review information that may lead to the identification and recovery of Receivership Assets; (2) continue to take action to monitor and control operations of the Receivership Entities, and to terminate them as necessary; (3) identify additional individuals or entities whom the Receiver believes, in his reasonable business judgment, should be subject to the Initial Appointment Order and any subsequent injunctive orders issued by this Court; and (4) respond to consumers and other interested parties and keep them as reasonably informed as possible via his website portal, telephone, and email.

## VII. CONCLUSION.

Based on the information presented below, and given the Receiver's ongoing efforts in connection with his duties under the Appointment Order, the Receiver recommends that the Court authorize the Receiver to continue to perform his duties as established under the Appointment Order, and to submit an additional, First Interim Report, within sixty (60) days after the date of entry of the Initial Appointment Order, to address any progress made and conclusions reached by the Receiver, and to supplement his recommendations to the Court.

Dated: September 23, 2024

ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP

By:   */s/   Joshua A. del Castillo*
JOSHUA A. DEL CASTILLO
Attorneys for Receiver
Stephen J. Donell