JOSHUA A. DEL CASTILLO (BAR NO. 239015)
E-Mail: jdelcastillo@allenmatkins.com
MATTHEW D. PHAM (BAR NO. 287704)
E-Mail: mpham@allenmatkins.com
ALPHAMORLAI L. KEBEH (BAR NO. 336798)
E-Mail: mkebeh@allenmatkins.com
ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
865 South Figueroa Street, Suite 2800
Los Angeles, California 90017-2543
Phone: (213) 622-5555
Fax:  (213) 620-8816

Attorneys for Receiver
STEPHEN J. DONELL

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>ASCEND CAPVENTURES INC., et al.,<br><br>Defendants. | Case No. 2:24-CV-07660-SPG-JPR<br><br>**SUPPLEMENT TO INITIAL REPORT AND RECOMMENDATIONS OF RECEIVER, STEPHEN J. DONELL**<br><br>Date:   October 23, 2024<br>Time:  1:30 p.m.<br>Ctrm:  5C<br>Judge Hon. Sherilyn Peace Garnett |

**TO THIS HONORABLE COURT AND ALL INTERESTED PARTIES:**

**PLEASE TAKE NOTICE THAT** Stephen J. Donell (the "Receiver"), the Court-appointed receiver for defendants defendant Ascend Capventures Inc., Ascend Ecom LLC, ACV, ACV Partners, Accelerated Ecommerce Ventures; Ascend Distribution LLC (California), Ethix Capital, ACV Nexus, Ascend Ecommerce Inc., Ascend Administration Inc., Ascend Ecom LLC, Ascend Distribution LLC (Texas), and their collective dbas, subsidiaries, and affiliates (collectively, the "Receivership Entities" or "Entities"), hereby submits this

*Supplement to Initial Report and Recommendations of Receiver* (the "Supplement")[1] in order to detail those critical tasks undertaken by the Receiver and his professionals since the submission of his September 23, 2024 *Initial Report and Recommendations of Receiver* (the "Initial Report") [ECF No. 34].

## I. NOTIFICATION OF RECEIVERSHIP AND RECOVERY OF RECEIVERSHIP-RELATED RECORDS AND INFORMATION.

As of the date of this Supplement, directly and through counsel, the Receiver has notified dozens of banks, other financial institutions, payment processors, service providers, and other entities of the entry of the Initial Appointment Order and the pendency of the receivership, and requested the turnover of Entity account statements and other materials relevant to the business and financial activities of the Receivership Entities. These efforts are bearing fruit; a number of institutions have made initial productions, or committed to completing initial productions to the Receiver in the near term, of the requested documents and information. The Receiver has also received at least four (4) productions from defense counsel, although these productions have been limited in scope and utility and have not as yet included any complete Entity or accounting records. The Receiver has also endeavored to contact as many potentially affected consumers as possible, largely via engagement through his website, www.fedreceiver.com, and has already obtained critical information from certain consumers, including information suggesting that, in the wake of the entry of the Initial Appointment Orders, non-parties apparently affiliated with the Receivership Entities have endeavored to induce consumers into making additional payments (to new payment addresses distinct from those used by the Entities in the pre-receivership period) and falsely represented that the Entities are continuing to operate "business as usual".

---

[1] This Supplement is preliminary and based upon limited information presently available to the Receiver. It, and any conclusions presented herein, are subject to change as additional information is obtained.

In addition to his direct engagement and dialogue with non-parties and interested consumers, the Receiver has also served over a dozen formal document subpoenas and document demands, with more to come, in an effort to recover as much information relevant to the business and financial activities of the Receivership Entities as possible in the near term. This information will be used for, among other things: (1) preparing an accounting; (2) evaluating the legitimacy of the Entities' operations and their viability as a going concern; (3) identifying recipients of receivership assets and potential designee Receivership Entities; (4) identifying consumers; (5) recovering available assets; and (6) developing prospective asset recovery claims, including prospective causes of action inuring to the benefit of the Estate under the authority of the Receiver.

## II. ACCOUNTING AND ASSET IDENTIFICATION AND RECOVERY.

Since the submission of the Initial Report, the Receiver and his forensic accountant, SL Biggs, have diligently continued their efforts to review available materials and information, provided by the plaintiff Federal Trade Commission (the "FTC"), individual defendants Basta and Leung (through counsel), numerous bank and financial institutions, and allegedly defrauded consumers, among others, relating to the business and financial activities of the Receivership Entities. While these efforts were undertaken, in part, to enable the Receiver to evaluate the history and viability of the Receivership Entities as an enterprise, they also relate directly to the Receiver's efforts to recover funds for the benefit of the receivership estate created by this Court's September 13, 2024 *Order on Plaintiff's Ex Parte Application For (1) Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue; (2) Waiver of Notice Requirement; (3) Appointment of a Temporary Receiver, Freezing of Assets; and other Equitable Relief* (the "Initial Appointment Order") [ECF No. 30] (the "Estate") and its creditors, including allegedly defrauded consumers.

While, as discussed below, the Receiver has not yet obtained a copy of the Entities' books and records (critically including their QuickBooks records), as of the date of this Supplement, the Receiver and his forensic accountant have reviewed hundreds of documents, reflecting thousands of individual transactions. Based on this review, the Receiver has preliminarily confirmed that the Entities received many millions of dollars in apparent consumer funds, and that millions in consumer funds were, among other things: (1) commingled among various Entities, apparently without regard to corporate distinction or purpose; (2) transmitted to potential affiliates, including overseas, dissipating substantial sums to entities or individuals whose relationship to the Receivership Entities remains unclear at present; and (3) diverted potentially millions of dollars obtained from consumers for the apparent unilateral benefit of defendants Basta and Leung, including for the payment of personal expenses, personal taxes, and the purchase of luxury real properties in California. Put simply, the Receiver's accounting work to date has revealed a complicated network of apparently affiliated entities (some of whose relationship to the receivership remain unclear as of the filing of this Supplement) transferring funds obtained from consumers to and from one another, and occasionally diverting funds for purposes apparently unrelated to the purported operations of the Receivership Entities, including for the personal benefit of defendants Basta and Leung.

Unfortunately, this network is sufficiently expansive, and the volume and value of its pre-receivership transactions so significant, that, as of the date of this Supplement, and notwithstanding his having obtained relevant records and information, the Receiver has not yet recovered a substantial amount funds for the benefit of the Estate or its creditors. At present, the Receiver has identified fewer than $500,000 in Receivership Entity funds subject to the immediate turnover provisions of the Initial Appointment Order, not including more than $400,000 held by an entity designated as a Receivership Entity on October 1, 2024 (which funds

appear to have been transferred out of that entity's account sometime between September 1, 2024 and October 1, 2024, potentially in violation of the asset freeze imposed by the Initial Appointment Order) and another $150,000 in liquid assets held by another entity designated as a Receivership Entity on October 15, 2024.

Accordingly, the Receiver and his accounting team will continue to review materials as they are received in order to identify additional potentially recoverable assets, or assets held by third parties which the Receiver believes are or should be subject to disgorgement for the benefit of the Estate. By way of example, the Receiver has preliminarily concluded that consumer funds were used for the purchase of a number of real properties located in Venice, California, title to which was taken in the names of defendants Basta and Leung.[2] Indeed, based on the information presently available to the Receiver, the Receiver believes that all or nearly all of the downpayments made on each of these properties were made from diverted consumer funds.[3] Assuming, *arguendo*, that this is indeed the case, the Receiver submits that any equity in those properties up to the amount of the consumer funds used for their purchase is a receivership asset subject to turnover to the Receiver. Based on the Receiver's present valuation, such equity may exceed $1 million, in the aggregate.[4] In addition, as detailed elsewhere herein, pursuant to his authority under the Initial Appointment Order, the Receiver has recently

---

[2] The Receiver understands that, at his deposition in this matter, defendant Leung acknowledged that payments for real properties had come from accounts that the Receiver has confirmed contained funds derived from consumers.

[3] As a consequence, the Receiver has recorded *Notices of Pendency of Receivership* against each of the properties in issue.

[4] On October 7, 2024, as defendant Leung was providing deposition testimony to the FTC, the Receiver learned in real time that defendants Basta and Leung had concluded the sale of one of these properties – located at 2012 Linden Avenue, Venice, California 90291, title to which was held by defendants Basta and Leung in their personal capacities – on September 24, 2024, eleven (11) days after the entry of the Court-imposed asset freeze. The Receiver immediately contacted Granite Escrow & Settlement Services ("Granite"), the escrow company administering the sale, to advise of the asset freeze. Granite promptly confirmed that the sale had closed, but that the net proceeds of the sale had not been disbursed to defendants Basta and Leung. Granite further confirmed that the proceeds will be held pending a further disposition order of this Court.

designated a number of non-parties as Receivership Entities. In his view, any assets of these entities related to the present receivership should be treated as assets of the Estate.

### III. DESIGNATION OF NON-PARTIES AS RECEIVERSHIP ENTITIES.

Section XII(U) of this Court's Initial Appointment Order authorizes the Receiver to designate non-party entities as additional Receivership Entities. As of the date of this Supplement, the Receiver has identified three non-party entities – Global Marketing Development, Inc.,; Eaglemont Capital; and Paradyme Capital Inc. – as additional Receivership Entities. The Receiver's designation of these non-parties as Receivership Entities was based on, at least, his determination that each of the above entities was subject to the common control of individual defendants Basta or Leung, had commingled funds with the Receivership Entities, or was engaged in a common enterprise with the Receivership Entities. Notices of the Receiver's designations have been filed with this Court [see, e.g., ECF Nos. 45, 58, 59] and transmitted to the non-parties' principals or agents for service of process. In addition, the Receiver has notified banks and other financial institutions administering accounts held by, in the name of, or for the benefit of these entities of his designation, and his authority under the Initial Appointment Order.

### IV. EVALUATION OF THE RECEIVERSHIP ENTITIES' OPERATIONS.

As of the date of this Supplement, and as noted above, the Receiver has not obtained a complete set of the Entities' books and records. The Receiver understands that defendants Basta and Leung have testified that they do not have access to such materials, which are allegedly maintained and exclusively accessible by a Mr. Ben Ralph, who has been alternatively identified as an employee or quasi-employee of the Entities, or their director of operations. The Receiver has transmitted notice of the receivership and a request for documents and information to Mr. Ralph, but has received no response. Other Entity personnel have similarly failed to respond to the Receiver's outreach efforts. As a consequence, the Receiver

is now, through counsel, working directly with Intuit, which maintains the Entities' QuickBooks ledger and associated records on its cloud server. The Receiver is optimistic that full access to these materials will be obtained within the next few weeks. Notwithstanding that a complete set of books and records have not yet been obtained, a number of factors of concern have already been identified by the Receiver, each of which suggests that the Entities' may not have been engaged in a legitimate enterprise. These factors include:

- Defendants Basta's and Leung's professed limited familiarity with the day-to-day operations of the Receivership Entities and their personnel;
- Defendants Basta's and Leung's professed lack of access to Entity books and records;
- The volume and value of transfers of consumer funds among the Entities, their apparent affiliates, and entities having no discernible relationship to the Entities' operations or business purpose;
- The use of funds diverted from consumers to pay personal expenses or to purchase real properties owned by defendants Basta and Leung, as individuals;
- The unresponsiveness of pre-receivership Entity employees to the Receiver's document or access requests; and
- Post-receivership communications to consumers from (apparently overseas) personnel allegedly affiliated with the Receivership Entities intended to induce consumers to make new or additional payments to payees not under the Receiver's control[5] or to provide false reassurance to consumers, without the Receiver's knowledge or permission, regarding the continued operations of the Entities, as evidenced by the below communication transmitted to an investor who challenged such a

---

[5] The Receiver has transmitted multiple cease and desist demands in connection with such efforts.

solicitation by referencing the receivership, and other substantially similar communications:



Put simply, as of the date of this Supplement, the Receiver has recovered no information sufficient to confirm, in his reasonable business judgement, that the Entities' operations reflect (or reflected) a legitimate and viable enterprise. Likewise, to-date, the Receiver has not identified any portion of the Receivership Entities' business that appears to be unrelated to the allegedly fraudulent activity alleged by the FTC. While it remains possible that a portion of the business may be

legitimate, the Receiver's preliminary conclusion remains that the proceeds from continuing to run any lawful aspect of the business, as compared to the cost of such operations under the supervision of the Receiver would likely be insufficient to justify such operations.

## V. RECOMMENDATION AND CONCLUSION.

Based on the Receiver's efforts to-date, he believes, in his reasonable business judgment, that the continued pendency of the instant receivership may represent a successful mechanism for halting any improper business activities undertaken by the Entities and any affiliated personnel, and for recovering assets for the benefit of the Estate and its creditors, provided that sufficient assets can be located. Accordingly, and based on the information presented above, and in his Initial Report, the Receiver recommends that the Court authorize the Receiver to continue to perform his duties as established under the Appointment Order, and to submit an additional, First Interim Report, within sixty (60) days after the date of entry of the Initial Appointment Order, to address any progress made and conclusions reached by the Receiver, and to supplement his recommendations to the Court.

Dated: October 18, 2024

ALLEN MATKINS LECK GAMBLE
　MALLORY & NATSIS LLP
JOSHUA A. DEL CASTILLO
MATTHEW D. PHAM
ALPHAMORLAI L. KEBEH

By:  　　/s/　  *Joshua A. del Castillo*
　　JOSHUA A. DEL CASTILLO
　　Attorneys for Receiver
　　STEPHEN J. DONELL