**KRONENBERGER ROSENFELD, LLP**
Karl S. Kronenberger (Bar No. 226112)
karl@kr.law
Jeffrey M. Rosenfeld (Bar No. 222187)
jeff@kr.law
Virginia Sanderson (Bar No. 240241)
ginny@kr.law
Liana Chen (Bar No. 296965)
liana@kr.law
548 Market Street #85399
San Francisco, CA 94104-5401
Telephone: (415) 955-1155
Facsimile: (415) 955-1158

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **FEDERAL TRADE COMMISSION**, <br><br> Plaintiff, <br><br> v. <br><br> **ASCEND CAPVENTURES INC.**, also doing business as Ascend Ecom LLC**,** *et al*. <br><br> Defendants. | Case No. 2:24-cv-07660-SPG(JPRx) <br><br> **DEFENDANTS' RESPONSE TO ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE [D.E. 30, 42, 55]** <br><br> Date:     October 23, 2024 <br> Time:    3:00 p.m. <br> Location:First Street Courthouse <br>          Courtroom 5C <br> Judge:    Sherilyn Peace Garnett |

**DEFENDANTS' OPPOSITION TO TRO AND OSC RE. PI**

*Kronenberger Rosenfeld*
*150 Post Street, Suite 520 San Francisco, CA 94108*

1    Defendants Ascend Capventures Inc., Ascend Ecommerce Inc., Ascend

2  Administration Inc., Ascend Ecom LLC, Ascend Distribution LLC, William Basta,

3  and Jeremy Leung (collectively, "Defendants") hereby respond to the Court's Order

4  to Show Cause Why a Preliminary Injunction Should Not Issue. [D.E. 30, 42, 55.]

5                              **INTRODUCTION**

6    The draconian preliminary injunction with a full asset freeze requested by

7  Plaintiff Federal Trade Commission ("FTC") is not warranted. The FTC has

8  presented cherry-picked materials from their lengthy investigation, omitting

9  information that supports the defense. At the same time, the FTC has frozen all of

10  Defendants' assets and forced time-consuming expedited discovery, greatly

11  inhibiting Defendants' efforts to mount any sort of meaningful defense. The

12  Receiver has effectively shut down the business at issue, and Defendants lack access

13  to key company and financial accounts with evidence to defend this case. This is

14  contrary to a typical lawsuit in which the plaintiff must first obtain a judgment and

15  then pursue assets, and where defendants are otherwise entitled to access their assets

16  and records, including to pay for living expenses and mount a defense.

17    Notably, despite the FTC's story, Defendants offered meaningful services to

18  customers, with many customers overtly expressing satisfaction and achieving

19  profits. Moreover, Defendants had been increasing compliance and, while disputing

20  that the Business Opportunity Rule ("BOR") applied to their consulting services,

21  still provided BOR disclosures with numerous customer references, using the FTC's

22  template form. In fact, Defendants prioritized customer service, settled with unhappy

23  customers, and dispute making any threats to consumers. In addition, although the

24  FTC asserts that Defendants "bilked" $25 million from customers [D.E. 6 at 1:6],

25  Defendants did not "pocket" money that went to employees, marketing and other

26  services, and inventory for customers; and importantly, the FTC is not authorized to

27  obtain punitive penalties or full disgorgement of the total gross sales. Against this

28  background, a preliminary injunction with a full asset freeze is not supported.

Case No. 2:24-cv-07660-SPG(JPRx)        1        **DEFENDANTS' OPPOSITION
                                                  TO TRO AND OSC RE. PI**

Nonetheless, while Defendants dispute the FTC's requests and underlying claims, Defendants' hands have been tied with the temporary restraining order ("TRO") [D.E. 30]; and Defendants have thus discussed potential stipulated preliminary injunction terms with the FTC e.g., to allow new business for the two international individual Defendants and carve out reasonable living expenses from the asset freeze, as supported by prior cases that contain more narrowly tailored terms.

## BACKGROUND

### A. Defendants' Legitimate Business Practices

Defendants offered consulting services for their customers' businesses, including those selling on Amazon.com. (Declaration of William Basta ¶2.) While Defendants contend that their services were always lawful, over the past year, Defendants have increased legal compliance, seeking advice from multiple law firms and prioritizing customer communications and disclosure forms, including use of the FTC's BOR disclosure form listing ten references. (Basta Decl. ¶¶3-6 & Ex. A.) Numerous customers have expressed satisfaction with Defendants and achieved profits through Defendants' services; for example, recent sales records for nearly 60 customers show their net profits. (Basta Decl. ¶¶ 7-8 & Ex. B.) In fact, it was this case and the shutdown of services that harmed customers, including where inventory was not shipped. (Basta Decl. ¶9.)

The FTC has provided declarations showing unhappy customers, but that does not show the whole story. In fact, Defendants' key competitor (Ecom Authority) retained an attorney who (a) not only demanded large amounts of money for the competitor business but also (b) represented a number of customers (after connecting through a consumer Facebook group) in arbitrations against Defendants for damages. [D.E. 18, FTC's Ex. 23 in Support of TRO, ¶¶10, 33, and *passim*.] Defendants were surprised that after negotiations (and some settlements) with customers, the same individuals submitted declarations in support of the FTC in this case. (Basta Decl. ¶¶ 10-12.)

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

In actuality, many of Defendants' customers had positive experiences, as demonstrated by numerous comments about Defendants' great work, such as:

- I am happy with Ascend's service and over all performance.
- Since having you guys, response times are amazing and we actually have a successful store . . .
- I truly appreciate you for all your support and hard work
- The money comes in, and you guys have been responsive.
- The team has definitely made some great improvements.
- Communication between the team is very efficient and any issues are handled promptly. The entire team is also on the lookout for your profitable well being and continuously coach you through each steps. I am grateful for the amazing team . . . Thank you
- You [sic] guys performance has been excellent. I really do apricate some of my suggestions are reviewed and applied. Very excited about growing the store .
- I am really happy to see progress I appreciate the communication
- I wanted to mention how **impressed I am with how the store is turning out**. I'm very excited to finally see some positive numbers [emphasis in original]
- Have a great weekend and thank you for all your hard work and efforts maintaining the store! You guys are very much appreciated!
- i wouldnt [sic] change anything about how things have been going. Keep up the good work. I appreciate you guys!

(Basta Decl. ¶¶12-13 & Ex. C.)

## B.    Defendants' Unrelated Business and Assets

The FTC has sought to freeze all of Defendants assets, whether or not related to the underlying claims; and while indicating that the individual Defendants should simply get another job, the FTC has proposed preliminary injunction terms that would stifle Defendants' ability to work, especially as they are not in the United States. For example, the terms would prohibit cashing checks or incurring business credit card

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

charges for unrelated businesses, would not carve out any living or other expenses, and would require turning over "foreign" documents unrelated to the claims. The FTC has sought to freeze not only Defendants' business accounts and assets tied to the alleged wrongdoing, but all of Defendants' assets at the time of an order. These undue terms would cover, for example, unconnected business properties, credit cards and checks for unrelated new businesses, any foreign "documents," and gifts from relatives prior to the order; and Defendants have been unable to pay not only employees but mortgages and personally-guaranteed credit card debt. (Basta Decl. ¶15.) The asset freeze also prevents a robust defense on the disputed complex issues.[1]

## C.    Procedural History

The FTC filed its Complaint on September 9, 2024 [D.E. 2] and obtained the ex parte TRO [D.E. 30], which froze Defendants' assets and imposed a receivership, without prior notice. This is despite the fact that Defendants cooperated with the FTC's prior subpoena and thereafter increased compliance. (Basta Decl. ¶¶3-5.)

The FTC's claims offer an incomplete and slanted factual and legal presentation to this Court; and although the FTC clearly spent months if not longer to prepare its filings, Defendants have had relatively limited time to review and research their own evidence, all while their assets are frozen, and their accounts are under the receivership (with the business operations halted, including inventory shipments, and despite customers and employees complaining about the frozen operations). Furthermore, the TRO immediately imposed rigorous compliance requirements, including detailed financial forms, expedited depositions and written discovery, turning over all accounts, passwords, customer lists, and records (to the FTC and Receiver), and document review and productions, which have required ongoing if not daily attention. Thus, despite having legitimate arguments, Defendants accepted

---

[1] *See e.g., FTC v. Empire Holdings Group, LLC,* Case No. 2:24-CV-4949-WB, D.E. 35 (E.D. Pa. Motion Filed Oct. 11, 2024) (seeking to modify the FTC's TRO to unfreeze over $230,000 for legal defense fees incurred and $150,000 for fees expected for preparing for the preliminary injunction show cause hearing).

Case No. 2:24-cv-07660-SPG(JPRx)        4        **DEFENDANTS' OPPOSITION
TO TRO AND OSC RE. PI**

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

service, agreed to extend the TRO while they were complying with its onerous terms, and have been negotiating next steps on various issues with the FTC.

Specifically, counsel for Defendants and counsel for the FTC met and conferred about this matter and potential stipulated preliminary injunction terms on a Zoom video conference on October 17, 2024 and are continuing to make progress on a potential stipulated preliminary injunction, despite this present deadline for Defendants to file a response to the Court's Order to Show Cause.

**ARGUMENT**

A preliminary injunction is an extraordinary remedy never awarded as a matter of right; courts must balance the competing claims of injury and consider the effect on each party of the granting or withholding of the requested relief. *See Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7, 24 (2008); *see also* Fed. R. Civ. P. 65; *FTC v. Consumer Def., LLC*, 926 F.3d 1208, 1212 (9th Cir. 2019) (FTC must at least show that: (1) it is likely to succeed on the merits; and (2) the balance of equities tips in its favor, considering defendant and public interests). Any injunctive relief must be tailored to remedy the specific harm and should be no more burdensome than necessary. *See Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 941 F.2d 970, 974 (9th Cir. 1991). Further, a preliminary injunction is not meant to be punitive; rather, it is a device for preserving the status quo until a final judgment is reached. *See United States v. Guess*, 390 F. Supp. 2d 979, 984 (S.D. Cal. 2005).

In this case, the FTC has not met its burden for a preliminary injunction, including a far-reaching asset freeze, because the FTC has not shown a likelihood of prevailing on its claims, and the balance of equities weighs in Defendants' favor. Alternatively, any preliminary injunction should be more tailored. In particular, Defendants seek at minimum certain asset freeze carveouts for reasonable living expenses and provisions that do not unduly restrict unrelated future business; Defendants should also not be forced to concede factual arguments at this stage. In other words, continuing the TRO or broader order pending litigation is unwarranted.

Case No. 2:24-cv-07660-SPG(JPRx)        5        **DEFENDANTS' OPPOSITION TO TRO AND OSC RE. PI**

**A.    A preliminary injunction is not warranted because the FTC has not shown a sufficient likelihood of success on the merits or balance of interests.**

As an initial matter, the FTC's past routine of obtaining drastic preliminary relief with asset freezes under Section 13(b) of the FTC Act was shut down in *AMG Capital Management v. FTC*, 593 U.S. 67, 82 (2021), which held that Section 13(b) "does not grant the Commission authority to obtain equitable monetary relief" (therefore, it does not support a preliminary injunction with an asset freeze). *See also FTC v. Simple Health Plans LLC*, 58 F.4th 1322, 1328 (11th Cir. 2023) (recognizing that an asset freeze or receivership is inappropriate when premised solely on Section 13(b) because there is no need to preserve resources for a future judgment when monetary relief is not available). The FTC recognizes that asset freezes premised solely on Section 13(b) liability are no longer available. [D.E. 6 at 12:7-9.] However, the TRO's stated authority in this case was Section 13(b) of the FTC Act. [D.E. 30 at 4:13-15.] *Compare e.g., FTC v. BCO Consulting,* No. 23-cv-00699, D.E. 38 at 4:13 (C.D. Cal. May 14, 2023) (asserting authority under Section 13(b) *and* Section 19); *FTC v. SL Fin.*, No. 23-cv-00698, D.E. 30 at 5:5 (C.D. Cal. May 12, 2023) (same). Even under Section 19, relief is only authorized as "necessary to redress injury to consumers"; exemplary or punitive damages are not authorized. 15 U.S.C. §57b(b). In other words, Section 19 damages, if only a fraction of gross sales, do not necessarily justify an asset freeze and traditional receivership. *See FTC v. Zurixx, LLC*, No. 2:19-CV-713-DAK-DAO, 2021 WL 5179139, at *6-*7 (D. Utah Nov. 8, 2021) (noting gross sales does not demonstrate redress damages under Section 19).

With this in mind, Defendants dispute that the FTC has a strong likelihood of success on the merits. For example, deception and harm is disputed as Defendants obtained evidence of customer satisfaction and profits. (Basta Decl., Exs. B, C.) Moreover, Defendants dispute that the BOR applied to their consulting services (under a plain reading of the BOR, 16 C. F. R. §437[2]), but nevertheless provided

---

[2] In a November 2022 Advance Notice of Proposed Rulemaking Concerning the

**DEFENDANTS' OPPOSITION
TO TRO AND OSC RE. PI**

customers with BOR disclosures. (Basta Decl. Ex A.) In addition, Defendants dispute any Consumer Review Fairness Act ("CRFA") violations, especially relating to *all* customers who entered into different agreements, including contracts without any non-disparagement provision; and Defendants dispute making the stated "threats" to customers. (Basta Decl., Ex. A.) Further, there is no likelihood of any ongoing or imminent violations, including as this case has effectively halted the business operations. Thus, even if there were violations (which is disputed), the FTC would not be able to recover all gross revenues; and the proposed preliminary injunction with a full asset freeze and receivership is not warranted.

The requested preliminary relief is also not supported when considering the balance of the equities and other factors. The FTC merely argued that the balance of hardships weighs in its favor to halt unlawful conduct and preserve assets for restitution to injured customers, and that Defendants have no legitimate interest in continuing their "scam." [D.E. 6 at 25:5-11.] However, Defendants have already turned over account, business, and asset information; the FTC has obtained extensive expedited discovery from Defendants and third parties; and the business is no longer operating, meaning there is no likelihood of continued violations with the business. (*See* Basta Decl. ¶9.) Further, the relief is not warranted in light of the satisfied customers who were making money (or expected to make money if this case had not shut down business) and given Defendants' proactive efforts to refund or settle with the customers who were not satisfied with the services. (Basta Decl. ¶¶ 12, Ex. C.)

On the other hand, there is no dispute that Defendants' interests will be irreparably harmed by a preliminary injunction, assuming it will contain an oppressive asset freeze and receivership, which essentially prevent the individual Defendants from maintaining any livelihood or legal defense. The FTC has not

---

Business Opportunity Rule, the FTC outlined that it was considering whether the Rule should be extended to include business opportunities and other moneymaking opportunity programs not currently covered by the Rule, including business coaching.

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

demonstrated how preservation of assets—especially personal and unrelated assets—is necessary. For these reasons, a preliminary injunction is not warranted.

**B.    The FTC's proposed injunction terms are not appropriate and, at minimum, should not freeze all assets or prohibit future work.**

At the very least, if a preliminary injunction is granted, it should be more tailored. For example, in similar cases, there have been carveouts in preliminary injunction asset freezes for things like living and legal expenses. *See e.g., FTC v. Legion Media, LLC,* No. 8:24-cv-1459, D.E. 63 at 4-5 (M.D. Fla. July 15, 2024) (allowing withdrawal of thousands of dollars for living, tax, employee, accounting, credit card, and legal expenses); *FTC v. Empire Holdings Group LLC,* No. 2:24-cv-04949, D.E. 20 at 1 (E.D. Pa. Sept. 20, 2024) (TRO carveout for living expenses); *FTC v. BCO Consulting,* No. 23-cv-00699, D.E. 38 at 11:14-19 (C.D. Cal. May 14, 2023) (allowing defendants to withdraw certain sums of money); *FTC v. SL Fin.*, No. 23-cv-00698, D.E. 30 at 14:7-12 (C.D. Cal. May 12, 2023) (providing carveout for housing and personal living expenses); *FTC v. Zurixx, LLC,* No. 2:19-CV-713-DAK-DAO, 2021 WL 5179139, at *8 (D. Utah Nov. 8, 2021) (lifting asset freeze to grant each defendant $50,000); *FTC v. Digital Altitude, LLC*, No. LACV1800729JAKMRWX, 2018 WL 1942392, at *12 (C.D. Cal. Mar. 9, 2018) (allowing applications for disbursements for reasonable and necessary living and medical expenses that could not otherwise be covered); *FTC v. Health Formulas, LLC,* Case No. 2:14-CV-01649-RFB-GWF, D.E. 77 at 2-3 (D. Nev. Dec. 4, 2014) (authorizing $30,000 per month for payment of attorney's fees); *FTC v. World Wide Factors, Ltd.*, 882 F.2d 344, 346-48 (9th Cir. 1989) (noting allowance for living, legal, and other expenses); *FTC v. Asset & Capital Mgmt.*, Case No. 13-cv-01107, D.E. 77, 92 (C.D. Cal. Oct. 1, 2013) (authorizing $105,000 for attorney's fees). *C.f. Luis v. United States*, 578 U.S. 5, 8–9 (2016) (agreeing that untainted assets may not be frozen in criminal cases as it violates Sixth Amendment rights to counsel).

Here, Defendants are willing to agree to reasonable terms prohibiting violations of the FTC Act, the BOR, and the CRFA. Defendants are further willing to confirm that they are preserving evidence and not dissipating relevant assets. However, while there was insufficient reason to seek a draconian TRO with an asset freeze under seal in the first instance, there is even less justification for continuing the relief through the entire litigation given Defendants' active ongoing cooperation with the FTC. Therefore, although Defendants dispute that any preliminary injunction is warranted, if one is ordered, the terms should be more tailored.

More specifically, Defendants should not be required to admit liability (where it is disputed); and if an asset freeze is continued, Defendants request clear carve-outs, including for living expenses. In addition, if there is any preliminary injunction, Defendants request reasonably tailored prohibitions that still allow the individuals to conduct lawful new business. For example, the two individuals should be allowed to work in other businesses (including to earn a living), deposit new checks, and open other company credit cards; and they should not be required to "repatriate" all unrelated accounts or documents, especially since they are international residents. Defendants are willing to work with the FTC on reasonable terms but have not yet been presented with workable terms that take the circumstances into consideration.

## CONCLUSION

For the foregoing reasons, the Court should not enter a preliminary injunction, especially if the terms prohibit lawful business, impose undue and unsupported requirements, or fail to account for reasonable living expenses.

Respectfully Submitted,

DATED: October 18, 2024                **KRONENBERGER ROSENFELD, LLP**


By: _____

    Karl S. Kronenberger

Attorneys for Defendants

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108