1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>ASCEND CAPVENTURES INC., et al.,<br><br>Defendants. | No. LA CV 24-07660-SPG(JPRx)<br><br>**[PROPOSED] PRELIMINARY INJUNCTION** |

On September 9, 2024, Plaintiff, the Federal Trade Commission, filed its Complaint for Permanent Injunction, Monetary Judgment, and Other Equitable Relief pursuant to Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b), 57b (Docket No. 1). Pursuant to Fed. R. Civ. P. 65(b), the FTC also filed an ex parte application for a temporary restraining order, asset freeze, other equitable relief, and an order to show cause why a preliminary injunction should not issue against Ascend Capventures Inc., Ascend Ecommerce Inc., Ascend Administration Inc., Ascend Ecom LLC, Ascend Distribution LLC,

William Michael Basta, and Jeremy Kenneth Leung (collectively, "Defendants")
(Docket No. 4).

The Court granted the application, issuing a temporary restraining order
("TRO") on September 13, 2024, including an asset freeze, appointment of a
receiver, immediate access to Defendants' business premises, and other temporary
relief. (Docket No. 30). Upon the parties' stipulation, the Court continued the TRO
until October 9, 2024. (Docket No. 42).

The Court, having considered Plaintiff's Application and the parties'
stipulation, and finding good cause therefore, hereby GRANTS the Application
and ORDERS as follows:

## FINDINGS

The Court, having considered the Complaint, the application for a TRO and
order to show cause, declarations, exhibits, and the memorandum of points and
authorities filed in support thereof, and the parties' stipulation, and being otherwise
advised, finds that:

A.      This Court has jurisdiction over the subject matter of this case, and
there is good cause to believe that it will have jurisdiction over all parties hereto
and that venue in this district is proper.

B.      Defendants consent to the entry of this Stipulated Preliminary
Injunction, but reserve all rights to contest or challenge the authority of the FTC to
seek and this Court to award any further relief sought by the FTC.

C.      The FTC alleges that there is good cause to believe that in numerous
instances, Defendants, in the marketing and selling of business opportunities
("Defendants' products or services"), have violated the FTC Act and rules
governing their conduct. Specifically, Defendants have (1) made false or
unsubstantiated earnings claims, (2) violated multiple trade regulation rule
provisions in the selling of Defendants' products or services, and (3) used threats

1    and non-disparagement clauses to discourage purchasers from publishing truthful

2    reviews about Defendants and their products or services.

3          D.    The FTC alleges that there is good cause to believe that Defendants

4    have engaged in and are likely to engage in acts or practices that violate Section

5    5(a) of the FTC Act, 15 U.S.C. § 45(a); the FTC's Trade Regulation Rule entitled

6    "Disclosure Requirements and Prohibitions Concerning Business Opportunities"

7    ("Business Opportunity Rule" or "Rule"), 16 C.F.R. Part 437, as amended; and the

8    Consumer Review Fairness Act ("CRFA"), 15 U.S.C. § 45b, and that Plaintiff is

9    therefore likely to prevail on the merits of this action. As demonstrated by the

10    declarations of consumers who purchased Defendants' products or services,

11    investigator declarations, and the additional evidence contained in the FTC's

12    volumes of exhibits, the FTC has established a likelihood of success in showing

13    that, in numerous instances, Defendants have made false or unsubstantiated

14    statements and engaged in other unfair or deceptive acts or practices in the

15    marketing of Defendants' products or services.

16          E.    The FTC alleges that there is good cause to believe that Defendants

17    have taken at least $25 million from consumers in connection with their unlawful

18    practices.

19          F.    The FTC alleges that there is good cause to believe that immediate

20    and irreparable harm will result from Defendants' ongoing violations of the FTC

21    Act, the Business Opportunity Rule, and the CRFA unless Defendants are

22    restrained and enjoined by order of this Court.

23          G.    The FTC alleges that good cause exists for the Court to order: (1) the

24    continued appointment of a Receiver over the Receivership Entities; (2)

25    maintaining the freeze over Defendants' assets; and (3) the ancillary relief ordered

26    below.  The FTC has demonstrated a likelihood that the Individual Defendants are

27    individually liable and properly subject to the asset freeze.  An asset freeze is

28

3

1    appropriate equitable relief permitted by the FTC Act and the inherent equitable

2    powers of the Court. *See FTC v. H.N. Singer, Inc.*, 668 F.2d 1107, 1112-13 (9th Cir.

3    1982) (Section 13(b) of the FTC Act "provides a basis" for a preliminary

4    injunction "freezing assets"); *see also FTC v. Noland*, No. cv-20-00047, 2021 WL

5    4318466 (D. Ariz. Sept. 23, 2021).

6         H.      Weighing the equities and considering Plaintiff's likelihood of

7    ultimate success on the merits, a preliminary injunction with an asset freeze, the

8    appointment of a receiver, and other equitable relief is in the public interest.

9         I.      This Court has authority to issue this Order pursuant to Sections 13(b)

10   and 19 of the FTC Act, 15 U.S.C. § 53(b) and 57b; Fed. R. Civ. P. 65; and the All

11   Writs Act, 28 U.S.C. § 1651.

12        J.      The FTC is an independent agency of the United States and no

13   security is required of any agency of the United States for issuance of a

14   preliminary injunction order. Fed. R. Civ. P. 65(c).

15                               **DEFINITIONS**

16           For the purpose of this Order, the following definitions apply:

17        A.      "**Asset**" means any legal or equitable interest in, right to, or claim to,

18   any property, wherever located and by whomever held.

19        B.      "**Corporate Defendants**" means Ascend Capventures Inc., Ascend

20   Ecommerce Inc., Ascend Administration Inc., Ascend Ecom LLC, and Ascend

21   Distribution LLC, and each of their subsidiaries, affiliates, successors, and assigns.

22        C.      "**Defendants**" means the Corporate Defendants and the Individual

23   Defendants, individually, collectively, or in any combination.

24        D.      "**Document**" is synonymous in meaning and equal in scope to the

25   usage of "document" and "electronically stored information" in Fed. R. Civ.

26   P. 34(a) and includes writings, drawings, graphs, charts, photographs, sound and

27   video recordings, images, Internet sites, web pages, websites, electronic

28

correspondence, including e-mail and instant messages, contracts, accounting data, advertisements, FTP Logs, Server Access Logs, books, written or printed records, handwritten notes, telephone logs, telephone scripts, receipt books, ledgers, personal and business canceled checks and check registers, bank statements, appointment books, computer records, customer or sales databases and any other electronically stored information, including Documents located on remote servers or cloud computing systems, and other data or data compilations from which information can be obtained directly or, if necessary, after translation into a reasonably usable form.  A draft or non-identical copy is a separate document within the meaning of the term.

E.      **"Earnings Claim(s)"** means any oral, written, or visual representation to a prospective purchaser that conveys, expressly or by implication, a specific level or range of actual or potential sales, or gross or net income or profits. Earnings Claims include, but are not limited to: (1) any chart, table, or mathematical calculation that demonstrates possible results based upon a combination of variables; and (2) any statements from which a prospective purchaser can reasonably infer that he or she will earn a minimum level of income.

F.      **"Electronic Data Host"** means any person or entity in the business of storing, hosting, or otherwise maintaining electronically stored information. This includes, but is not limited to, any entity hosting a website or server, and any entity providing "cloud based" electronic storage.

G.      **"General Media"** means any instrumentality through which a person may communicate with the public, including, but not limited to, television, radio, print, Internet, billboard, website, commercial bulk email, and mobile communications.

H.      **"Individual Defendants"** means William Basta and Jeremy Leung, individually or collectively.

I.      "**Receiver**" means the receiver appointed in Section XI of this Order and any deputy receivers that shall be named by the temporary receiver.

J.      "**Receivership Entities**" means Corporate Defendants as well as any other entity that has conducted any business related to the marketing and sale of Defendants' products or services, including receipt of Assets derived from any activity that is the subject of the Complaint in this matter, and that the Receiver determines is controlled or owned by any Defendant.

## ORDER

## I.      PROHIBITED BUSINESS ACTIVITIES

**IT IS THEREFORE ORDERED** that Defendants, Defendants' officers, agents, employees, and all other persons in active concert or participation with them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or indirectly, in connection with the advertising, marketing, promoting, or offering for sale of any goods or services, are preliminarily restrained and enjoined from:

A.      Making any Earnings Claims to a prospective purchaser, unless the Earnings Claim is non-misleading and, at the time the Earnings Claim is made, Defendants (1) have a reasonable basis for the claim; (2) have in their possession written materials that substantiate the claimed earnings; and (3) make the written substantiation for Earnings Claims available upon request to the consumer, potential purchaser or investor, the Receiver, and the FTC;

B.      Making any Earnings Claims in the General Media, unless the Earnings Claim is non-misleading and, at the time the Earnings Claims is made, Defendants (1) have a reasonable basis for the claim; (2) have in their possession written materials that substantiate the claimed earnings; and (3) state in immediate conjunction with the claim (a) the beginning and ending dates when the represented earnings were achieved and (b) the number and percentage of all

1   persons who purchased Defendants' products or services prior to the ending date in

2   Section I.B.3.a who achieved at least the stated level of earnings;

3           C.    Disseminating any industry financial, earnings, or performance

4   information, unless Defendants have written substantiation demonstrating that the

5   information reflects, or does not exceed, the typical or ordinary financial, earnings,

6   or performance experience of purchasers of Defendants' products or services;

7           D.    Failing to provide any consumer, potential purchaser, or investor with

8   disclosure documents in the form and manner required by 16 C.F.R. §§ 437.2,

9   437.3(a)(1)-(5), and 437.4;

10         E.    Misrepresenting or assisting others in misrepresenting, expressly or by

11   implication, that Defendants' products or services:

12               1.    Will allow purchasers to earn a specific level or range of actual

13                    or potential sales, or gross or net income or profits, revenues,

14                    financial gains, percentage gains, or return on investment with

15                    little to no effort on their part; and

16               2.    Will use artificial intelligence to maximize revenues;

17         F.    Misrepresenting or assisting others in misrepresenting, expressly or by

18   implication, any other fact material to consumers concerning any good or service,

19   such as:  the total costs; any material restrictions, limitations, or conditions; or any

20   material aspect of its performance, efficacy, nature, or central characteristics; and

21         G.    Prohibiting or restricting any consumer, potential purchaser, or

22   investor from communicating reviews, performance assessments, and similar

23   analyses about Defendants' products or services, or the conduct of Defendants; or

24   threatening or imposing a penalty or fee against any consumer, potential purchaser,

25   or investor who engages in such communications.

26

27

28

## II.    PROHIBITION ON RELEASE OF CUSTOMER INFORMATION

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby preliminarily restrained and enjoined from:

A.    Selling, renting, leasing, transferring, or otherwise disclosing, the name, address, birth date, telephone number, email address, credit card number, bank account number, Social Security number, or other financial or identifying information of any person that any Defendant obtained in connection with any activity that pertains to the subject matter of this Order; and

B.    Benefitting from or using the name, address, birth date, telephone number, email address, credit card number, bank account number, Social Security number, or other financial or identifying information of any person that any Defendant obtained in connection with any activity that pertains to the subject matter of this Order.

Provided, however, that Defendants may disclose such identifying information to a law enforcement agency, including the Plaintiff; to their attorneys as required for their defense; as required by any law, regulation, or court order; or in any filings, pleadings, or discovery in this action in the manner required by the Federal Rules of Civil Procedure and by any protective order in the case.

## III.    ASSET FREEZE

**IT IS FURTHER ORDERED** that Defendants and their officers, agents, employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby preliminarily restrained and enjoined from:

A. Transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, relinquishing,

spending, withdrawing, granting a lien or security interest or other interest in, or otherwise disposing of any Assets that are:

    1. owned or controlled, directly or indirectly, by any Defendant;

    2. held, in part or in whole, for the benefit of any Defendant;

    3. in the actual or constructive possession of any Defendant; or

    4. owned or controlled by, in the actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed, or controlled by any Defendant.

B. Opening or causing to be opened any safe deposit boxes, commercial mailboxes, or storage facilities titled in the name of any Defendant, or subject to access by any Defendant, except as necessary to comply with written requests from the Receiver acting pursuant to its authority under this Order;

C. Incurring charges or cash advances on any credit, debit, or ATM card issued in the name, individually or jointly, of any Corporate Defendant or any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by any Defendant or of which any Defendant is an officer, director, member, or manager. This includes any corporate bankcard or corporate credit card account for which any Defendant is, or was on the date that this Order was signed, an authorized signor; or

D. Cashing any checks or depositing any money orders or cash received from consumers, clients, or customers of any Defendant.

1   The Assets affected by this Section shall only include: (1) Assets of

2   Defendants as of the time the initial TRO was entered (Docket No. 30); and

3   (2) Assets obtained by Defendants after the initial TRO was entered if those Assets

4   are derived from any activity that is the subject of the Complaint in this matter or

5   that is prohibited by this Order. This Section does not prohibit any transfers to the

6   Receiver or repatriation of foreign Assets specifically required by this order.

7   **IV.   DUTIES OF ASSET HOLDERS AND OTHER THIRD PARTIES**

8   **IT IS FURTHER ORDERED** that any financial or brokerage institution,

9   Electronic Data Host, credit card processor, payment processor, merchant bank,

10   acquiring bank, independent sales organization, third party processor, payment

11   gateway, insurance company, business entity, or person who receives actual notice

12   of this Order (by service or otherwise) that:

13   (a) has held, controlled, or maintained custody, through an account or

14   otherwise, of any Document on behalf of any Defendant or any Asset that has been

15   owned or controlled, directly or indirectly, by any Defendant; held, in part or in

16   whole, for the benefit of any Defendant; in the actual or constructive possession of

17   any Defendant; or owned or controlled by, in the actual or constructive possession

18   of, or otherwise held for the benefit of, any corporation, partnership, asset

19   protection trust, or other entity that is directly or indirectly owned, managed or

20   controlled by any Defendant;

21   (b) has held, controlled, or maintained custody, through an account or

22   otherwise, of any Document or Asset associated with credits, debits, or charges

23   made on behalf of any Defendant, including reserve funds held by payment

24   processors, credit card processors, merchant banks, acquiring banks, independent

25   sales organizations, third party processors, payment gateways, insurance

26   companies, or other entities; or

27

28

1    (c) has extended credit to any Defendant, including through a credit card
2    account, shall:

3    A.    Hold, preserve, and retain within its control and prohibit the
4    withdrawal, removal, alteration, assignment, transfer, pledge, encumbrance,
5    disbursement, dissipation, relinquishment, conversion, sale, or other disposal of
6    any such Document or Asset, as well as all Documents or other property related to
7    such Assets, except by further order of this Court; provided, however, that this
8    provision does not prohibit Individual Defendant from incurring charges on a
9    personal credit card established prior to entry of this Order, up to the pre-existing
10    credit limit;

11    B.    Deny any person, except the Receiver, access to any safe deposit box,
12    commercial mailbox, or storage facility that is titled in the name of any Defendant,
13    either individually or jointly, or otherwise subject to access by any Defendant;

14    C.    If they have not done so already in compliance with the TRO
15    previously issued and extended in this matter (Docket Nos. 30 and 42), provide
16    Plaintiff's counsel and the Receiver, within two (2) days of the issuance of this
17    Order, a sworn statement setting forth, for each Asset or account covered by this
18    Section:

19    1.    The identification number of each such account or Asset;
20    2.    The balance of each such account, or a description of the nature
21    and value of each such Asset as of the close of business on the
22    day on which this Order is served, and, if the account or other
23    Asset has been closed or removed, the date closed or removed,
24    the total funds removed in order to close the account, and the
25    name of the person or entity to whom such account or other
26    Asset was remitted; and

27
28

3.     The identification of any safe deposit box, commercial mailbox, or storage facility that is either titled in the name, individually or jointly, of any Defendant, or is otherwise subject to access by any; and

D.     If they have not done so already in compliance with the TRO previously issued and extended in this matter (Docket Nos. 30 and 42), upon the request of Plaintiff's counsel or the Receiver, promptly provide Plaintiff's counsel and the Receiver with copies of all records or other Documents pertaining to any account or Asset covered by this Section, including originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, including wire transfers and wire transfer instructions, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and all logs and records pertaining to safe deposit boxes, commercial mailboxes, and storage facilities.

Provided, however, that this Section does not prohibit any transfers to the Receiver or repatriation of foreign Assets specifically required by this order.

## V.     FINANCIAL DISCLOSURES

**IT IS FURTHER ORDERED** that, if they have not done so already in compliance with the TRO previously issued and extended in this matter (Docket Nos. 30 and 42), each Defendant, within five (5) days of the issuance of this Order, shall prepare and deliver to Plaintiff's counsel and the Receiver:

A.     completed financial statements on the forms attached to this Order as **Attachment A** (Financial Statement of Individual Defendant) for both Individual Defendants, and **Attachment B** (Financial Statement of Corporate Defendant) for each Corporate Defendant; and

B.     completed **Attachment C** (IRS Form 4506, Request for Copy of a Tax Return) for each Individual Defendant and Corporate Defendant.

## VI.    FOREIGN ASSET REPATRIATION

**IT IS FURTHER ORDERED** that, if they have not done so already in compliance with the TRO previously issued and extended in this matter (Docket Nos. 30 and 42), within five (5) days following the issuance of this Order, each Defendant shall:

A.    Provide Plaintiff's counsel and the Receiver with a full accounting, verified under oath and accurate as of the date of this Order, of all Assets, Documents, and financial accounts outside of the United States which are: (1) titled in the name, individually or jointly, of any Defendant; (2) held by any person or entity for the benefit of any Defendant, or for the benefit of any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed or controlled by any Defendant; or (3) under the direct or indirect control, whether jointly or singly, of any Defendant;

B.    Take all steps necessary to provide Plaintiff's counsel and Receiver access to all Documents and records that may be held by third parties located outside of the territorial United States of America, including signing the Consent to Release of Financial Records appended to this Order as **Attachment D**.

C.    Transfer to the territory of the United States all Documents and Assets located in foreign countries which are: (1) titled in the name, individually or jointly, of any Defendant; (2) held by any person or entity for the benefit of any Defendant, or for the benefit of any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed or controlled by any Defendant; or (3) under the direct or indirect control, whether jointly or singly, of any Defendant; and

D.    The same business day as any repatriation, (1) notify the Receiver and counsel for Plaintiff of the name and location of the financial institution or other

1 entity that is the recipient of such Documents or Assets; and (2) serve this Order on

2 any such financial institution or other entity.

3   The Assets and financial accounts affected by this Section shall only include:

4 (1) Assets and financial accounts of Defendants existing as of the time the initial

5 TRO was entered (Docket No. 30); and (2) Assets and financial accounts obtained

6 or created by Defendants after the initial TRO was entered if those Assets and

7 financial accounts are derived from any activity that is the subject of the Complaint

8 in this matter or that is prohibited by this Order.

9   The Documents affected by this Section shall only include: (1) Documents of

10 Defendants existing as of the time the initial TRO was entered (Docket No. 30);

11 and (2) Documents obtained or created by Defendants after the initial TRO was

12 entered if those Documents are related to any activity that is the subject of the

13 Complaint in this matter or that is prohibited by this Order.

14   **VII. NON-INTERFERENCE WITH REPATRIATION**

15    **IT IS FURTHER ORDERED** that Defendants, Defendants' officers,

16 agents, employees, and all other persons in active concert or participation with any

17 of them, who receive actual notice of this Order, whether acting directly or

18 indirectly, are hereby preliminarily restrained and enjoined from taking any action,

19 directly or indirectly, which may result in the encumbrance or dissipation of

20 foreign Assets, or in the hindrance of the repatriation required by this Order,

21 including, but not limited to:

22   A. Sending any communication or engaging in any other act, directly or

23 indirectly, that results in a determination by a foreign trustee or other entity that a

24 "duress" event has occurred under the terms of a foreign trust agreement until such

25 time that all Defendants' Assets have been fully repatriated pursuant to this Order;

26 or

27

28

1    B.    Notifying any trustee, protector, or other agent of any foreign trust or

2    other related entities of either the existence of this Order, or of the fact that

3    repatriation is required pursuant to a court order, until such time that all

4    Defendants' Assets have been fully repatriated pursuant to this Order.

5    **VIII.  CONSUMER CREDIT REPORTS**

6    **IT IS FURTHER ORDERED** that Plaintiff may obtain credit reports

7    concerning any Defendants pursuant to Section 604(a)(1) of the Fair Credit

8    Reporting Act, 15 U.S.C. § 1681b(a)(1), and that, upon written request, any credit

9    reporting agency from which such reports are requested shall provide them to

10   Plaintiff.

11   **IX.    PRESERVATION OF RECORDS**

12   **IT IS FURTHER ORDERED** that Defendants, Defendants' officers,

13   agents, employees, and all other persons in active concert or participation with any

14   of them, who receive actual notice of this Order, whether acting directly or

15   indirectly, are hereby preliminarily restrained and enjoined from:

16   A.    Destroying, erasing, falsifying, writing over, mutilating, concealing,

17   altering, transferring, or otherwise disposing of, in any manner, directly or

18   indirectly, Documents that relate to: (1) the business, business practices, Assets, or

19   business or personal finances of any Defendant; (2) the business practices or

20   finances of entities directly or indirectly under the control of any Defendant; or

21   (3) the business practices or finances of entities directly or indirectly under

22   common control with any other Defendant; and

23   B. Failing to create and maintain Documents that, in reasonable detail,

24   accurately, fairly, and completely reflect Defendants' incomes, disbursements,

25   transactions, and use of Defendants' Assets.

26

27

28

## X. REPORT OF NEW BUSINESS ACTIVITY

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby preliminarily restrained and enjoined from creating, operating, or exercising any control over any business entity, whether newly formed or previously inactive, including any partnership, limited partnership, joint venture, sole proprietorship, or corporation, without first providing Plaintiff's counsel and the Receiver with a written statement disclosing: (1) the name of the business entity; (2) the address and telephone number of the business entity; (3) the names of the business entity's officers, directors, principals, managers, and employees; and (4) a detailed description of the business entity's intended activities.

## XI. APPOINTMENT OF RECEIVER

**IT IS FURTHER ORDERED** that Stephen Donell is appointed Receiver of the Receivership Entities with full powers of an equity receiver. The Receiver shall be solely the agent of this Court in acting as Receiver under this Order.

## XII. DUTIES AND AUTHORITY OF RECEIVER

**IT IS FURTHER ORDERED** that the Receiver is directed and authorized to accomplish the following:

A. Assume full control of Receivership Entities by removing, as the Receiver deems necessary or advisable, any director, officer, independent contractor, employee, or agent of any Receivership Entity from control of, management of, or participation in, the affairs of the Receivership Entity;

B. Take exclusive custody, control, and possession of all Assets and Documents of, or in the possession, custody, or under the control of, any Receivership Entity, wherever situated;

C.    Take exclusive custody, control, and possession of all Documents or
Assets associated with credits, debits, or charges made on behalf of any
Receivership Entity, wherever situated, including reserve funds held by payment
processors, credit card processors, merchant banks, acquiring banks, independent
sales organizations, third party processors, payment gateways, insurance
companies, or other entities;

D.    Conserve, hold, manage, and prevent the loss of all Assets of the
Receivership Entities, and perform all acts necessary or advisable to preserve the
value of those Assets. The Receiver shall assume control over the income and
profits therefrom and all sums of money now or hereafter due or owing to the
Receivership Entities. The Receiver shall have full power to sue for, collect, and
receive, all Assets of the Receivership Entities and of other persons or entities
whose interests are now under the direction, possession, custody, or control of the
Receivership Entities. Provided, however, that the Receiver shall not attempt to
collect any amount from a consumer if the Receiver believes the consumer's debt
to the Receivership Entities has resulted from the deceptive acts or practices or
other violations of law alleged in the Complaint in this matter, without prior Court
approval;

E.    Obtain, conserve, hold, manage, and prevent the loss of all Documents
of the Receivership Entities, and perform all acts necessary or advisable to
preserve such Documents. The Receiver shall: divert mail; preserve all Documents
of the Receivership Entities that are accessible via electronic means (such as online
access to financial accounts and access to electronic documents held onsite or by
Electronic Data Hosts), by changing usernames, passwords, or other log-in
credentials; take possession of all electronic Documents of the Receivership
Entities stored onsite or remotely; take whatever steps necessary to preserve all

1    such Documents; and obtain the assistance of the FTC's Digital Forensic Unit for

2    the purpose of obtaining electronic documents stored onsite or remotely.

3        F.        Choose, engage, and employ attorneys, accountants, appraisers, and

4    other independent contractors and technical specialists, as the Receiver deems

5    advisable or necessary in the performance of duties and responsibilities under the

6    authority granted by this Order;

7        G.        Make payments and disbursements from the receivership estate that

8    are necessary or advisable for carrying out the directions of, or exercising the

9    authority granted by, this Order, and to incur, or authorize the making of, such

10    agreements as may be necessary and advisable in discharging his or her duties as

11    Receiver. The Receiver shall apply to the Court for prior approval of any payment

12    of any debt or obligation incurred by the Receivership Entities prior to the date of

13    entry of this Order, except payments that the Receiver deems necessary or

14    advisable to secure Assets of the Receivership Entities, such as rental payments;

15        H.        Take all steps necessary to secure and take exclusive custody of each

16    location from which the Receivership Entities operate their businesses. Such steps

17    may include, but are not limited to, any of the following, as the Receiver deems

18    necessary or advisable: (1) securing the location by changing the locks and alarm

19    codes and disconnecting any internet access or other means of access to the

20    computers, servers, internal networks, or other records maintained at that location;

21    and (2) requiring any persons present at the location to leave the premises, to

22    provide the Receiver with proof of identification, and/or to demonstrate to the

23    satisfaction of the Receiver that such persons are not removing from the premises

24    Documents or Assets of the Receivership Entities. Law enforcement personnel,

25    including, but not limited to, police or sheriffs, may assist the Receiver in

26    implementing these provisions in order to keep the peace and maintain security. If

27    requested by the Receiver, the United States Marshal will provide appropriate and

28

1  necessary assistance to the Receiver to implement this Order and is authorized to
2  use any necessary and reasonable force to do so;

3       I.    Take all steps necessary to prevent the modification, destruction, or
4  erasure of any web page or website registered to and operated, in whole or in part,
5  by any Defendants, and to provide access to all such web pages or websites to
6  Plaintiff's representatives, agents, and assistants, as well as Defendants and their
7  representatives;

8       J.    Enter into and cancel contracts and purchase insurance as advisable or
9  necessary;

10       K.    Prevent the inequitable distribution of Assets and determine, adjust,
11  and protect the interests of consumers who have transacted business with the
12  Receivership Entities;

13       L.    Make an accounting, as soon as practicable, of the Assets and
14  financial condition of the receivership and file the accounting with the Court and
15  deliver copies thereof to all parties;

16       M.    Institute, compromise, adjust, appear in, intervene in, defend, dispose
17  of, or otherwise become party to any legal action in state, federal, or foreign courts
18  or arbitration proceedings as the Receiver deems necessary and advisable to
19  preserve or recover the Assets of the Receivership Entities, or to carry out the
20  Receiver's mandate under this Order, including but not limited to, actions
21  challenging fraudulent or voidable transfers;

22       N.    Issue subpoenas to obtain Documents and records pertaining to the
23  Receivership, and conduct discovery in this action on behalf of the receivership
24  estate, in addition to obtaining other discovery as set forth in this Order;

25       O.    Open one or more bank accounts at designated depositories for funds
26  of the Receivership Entities. The Receiver shall deposit all funds of the
27  Receivership Entities in such designated accounts and shall make all payments and
28

disbursements from the receivership estate from such accounts. The Receiver shall
serve copies of monthly account statements on all parties;

P.    Maintain accurate records of all receipts and expenditures incurred as
Receiver;

Q.    Allow Plaintiff's representatives, agents, and assistants, as well as
Defendants' representatives and Defendants themselves, reasonable access to the
premises of the Receivership Entities, or any other premises where the
Receivership Entities conduct business. The purpose of this access shall be to
inspect and copy any and all books, records, Documents, accounts, and other
property owned by, or in the possession of, the Receivership Entities or their
agents. The Receiver shall have the discretion to determine the time, manner, and
reasonable conditions of such access;

R.    Allow Plaintiff's representatives, agents, and assistants, as well as
Defendants and their representatives, reasonable access to all Documents in the
possession, custody, or control of the Receivership Entities;

S.    Cooperate with reasonable requests for information or assistance from
any state or federal civil or criminal law enforcement agency;

T.    Suspend business operations of the Receivership Entities if in the
judgment of the Receiver such operations cannot be continued legally and
profitably;

U.    If the Receiver identifies a nonparty entity as a Receivership Entity,
promptly notify the entity as well as the parties, and inform the entity that it can
challenge the Receiver's determination by filing a motion with the Court.
Provided, however, that the Receiver may delay providing such notice until the
Receiver has established control of the nonparty entity and its assets and records, if
the Receiver determines that notice to the entity or the parties before the Receiver
establishes control over the entity may result in the destruction of records,

1  dissipation of assets, or any other obstruction of the Receiver's control of the

2  entity; and

3         V.     If in the Receiver's judgment the business operations cannot be

4  continued legally and profitably, take all steps necessary to ensure that any of the

5  Receivership Entities' web pages or websites relating to the activities alleged in the

6  Complaint cannot be accessed by the public, or are modified for consumer

7  education and/or informational purposes, and take all steps necessary to ensure that

8  any telephone numbers associated with the Receivership Entities cannot be

9  accessed by the public, or are answered solely to provide consumer education or

10 information regarding the status of operations.

11 **XIII.  TRANSFER OF RECEIVERSHIP PROPERTY TO RECEIVER**

12        **IT IS FURTHER ORDERED** that Defendants and any other person with

13 possession, custody, or control of property of, or records relating to, the

14 Receivership Entities shall, upon notice of this Order by personal service or

15 otherwise, fully cooperate with and assist the Receiver in taking and maintaining

16 possession, custody, or control of the Assets and Documents of the Receivership

17 Entities and immediately transfer or deliver to the Receiver possession, custody,

18 and control of, the following:

19        A.     All Assets held by or for the benefit of the Receivership Entities;

20        B.     All Documents or Assets associated with credits, debits, or charges

21 made on behalf of any Receivership Entity, wherever situated, including reserve

22 funds held by payment processors, credit card processors, merchant banks,

23 acquiring banks, independent sales organizations, third party processors, payment

24 gateways, insurance companies, or other entities;

25        C.     All Documents of or pertaining to the Receivership Entities;

26        D.     All computers, electronic devices, mobile devices, and machines used

27 to conduct the business of the Receivership Entities;

28

E.  All Assets and Documents belonging to other persons or entities whose interests are under the direction, possession, custody, or control of the Receivership Entities; and

F.  All keys, codes, user names, and passwords necessary to gain or to secure access to any Assets or Documents of or pertaining to the Receivership Entities, including access to their business premises, means of communication, accounts, computer systems (onsite and remote), Electronic Data Hosts, or other property.

In the event that any person or entity fails to deliver or transfer any Asset or Document, or otherwise fails to comply with any provision of this Section, the Receiver may file an Affidavit of Non-Compliance regarding the failure and a motion seeking compliance or a contempt citation.

## XIV.  PROVISION OF INFORMATION TO RECEIVER

**IT IS FURTHER ORDERED** that Defendants, if they have not already done so in compliance with the TRO previously issued and extended in this matter (Docket Nos. 30 and 42), shall immediately provide to the Receiver:

A.  A list of all Assets and accounts of the Receivership Entities that are held in any name other than the name of a Receivership Entity, or by any person or entity other than a Receivership Entity;

B.  A list of all agents, employees, officers, attorneys, servants, and those persons in active concert and participation with the Receivership Entities, or who have been associated or done business with the Receivership Entities; and

C.  A description of any documents covered by attorney-client privilege or attorney work product, including files where such documents are likely to be located, authors or recipients of such documents, and search terms likely to identify such electronic documents.

22

## XV.   COOPERATION WITH THE RECEIVER

**IT IS FURTHER ORDERED** that Defendants; Receivership Entities; Defendants' or Receivership Entities' officers, agents, employees, and all other persons in active concert or participation with any of them; and any other person with possession, custody, or control of property of or records relating to the Receivership Entities who receive actual notice of this Order shall fully cooperate with and assist the Receiver. This cooperation and assistance shall include, but is not limited to, providing information to the Receiver that the Receiver deems necessary to exercise the authority and discharge the responsibilities of the Receiver under this Order; providing any keys, codes, user names, and passwords required to access any computers, electronic devices, mobile devices, and machines (onsite or remotely) and any cloud account (including specific method to access account) or electronic file in any medium; advising all persons who owe money to any Receivership Entity that all debts should be paid directly to the Receiver; and transferring funds at the Receiver's direction and producing records related to the Assets and sales of the Receivership Entities.

## XVI.  NON-INTERFERENCE WITH THE RECEIVER

**IT IS FURTHER ORDERED** that Defendants; Receivership Entities; Defendants' or Receivership Entities' officers, agents, employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, and any other person served with a copy of this Order, are hereby restrained and enjoined from directly or indirectly:

A.     Interfering with the Receiver's efforts to manage, or take custody, control, or possession of, the Assets or Documents subject to the receivership;

B.     Transacting any of the business of the Receivership Entities;

C.     Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any Assets owned, controlled, or

1  in the possession or custody of, or in which an interest is held or claimed by, the

2  Receivership Entities; or

3      D.      Refusing to cooperate with the Receiver or the Receiver's duly

4  authorized agents in the exercise of their duties or authority under any order of this

5  Court.

6              **XVII. STAY OF ACTIONS**

7      **IT IS FURTHER ORDERED** that, except by leave of this Court, during

8  the pendency of the receivership ordered herein, Defendants; Defendants' officers,

9  agents, employees, attorneys; and all other persons in active concert or

10  participation with any of them, who receive actual notice of this Order; and their

11  corporations, subsidiaries, divisions, or affiliates; and all investors, creditors,

12  stockholders, lessors, customers, and other persons seeking to establish or enforce

13  any claim, right, or interest against or on behalf of Defendants, and all others

14  acting for or on behalf of such persons, are hereby enjoined from taking action that

15  would interfere with the exclusive jurisdiction of this Court over the Assets or

16  Documents of the Receivership Entities, including, but not limited to:

17      A.      Filing or assisting in the filing of a petition for relief under the

18  Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, or of any similar insolvency proceeding

19  on behalf of the Receivership Entities;

20      B.      Commencing, prosecuting, or continuing a judicial, administrative, or

21  other action or proceeding against the Receivership Entities, including the issuance

22  or employment of process against the Receivership Entities, except that such

23  actions may be commenced if necessary to toll any applicable statute of

24  limitations; or

25      C.      Filing or enforcing any lien on any asset of the Receivership Entities;

26  taking or attempting to take possession, custody, or control of any Asset of the

27  Receivership Entities; or attempting to foreclose, forfeit, alter, or terminate any

28

1    interest in any Asset of the Receivership Entities, whether such acts are part of a

2    judicial proceeding, acts of self-help, or otherwise.

3         Provided, however, that this Order does not stay: (1) the commencement or

4    continuation of a criminal action or proceeding; (2) the commencement or

5    continuation of an action or proceeding by a governmental unit to enforce such

6    governmental unit's police or regulatory power; or (3) the enforcement of a

7    judgment, other than a money judgment, obtained in an action or proceeding by a

8    governmental unit to enforce such governmental unit's police or regulatory power.

9         **XVIII.    COMPENSATION OF RECEIVER**

10         **IT IS FURTHER ORDERED** that the Receiver and all personnel hired by

11    the Receiver as herein authorized, including counsel to the Receiver and

12    accountants, are entitled to reasonable compensation for the performance of duties

13    pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by

14    them, from the Assets now held by, in the possession or control of, or which may

15    be received by, the Receivership Entities. The Receiver shall file with the Court

16    and serve on the parties periodic requests for the payment of such reasonable

17    compensation. The Receiver shall not increase the hourly rates used as the bases

18    for such fee applications without prior approval of the Court.

19         **XIX.  IMMEDIATE PRODUCTION OF BUSINESS RECORDS**

20         **IT IS FURTHER ORDERED** that the Corporate Defendants shall allow

21    the Receiver and FTC's employees and agents access to the Defendants' business

22    records to inspect and copy Documents and to identify and locate assets.

23         The Corporate Defendants shall, immediately upon issuance of this Order, if

24    they have not already done so in compliance with the TRO previously issued and

25    extended in this matter (Docket Nos. 30 and 42), produce to the FTC for

26    inspection, inventory, and copying, at a location designated by FTC, the following

27    materials: (1) all customer information, including names, phone numbers,

28

1    addresses, e-mail addresses, customer complaints, and payment information for all

2    consumers who have purchased Corporate Defendants' business opportunities and

3    coaching services; (2) all contracts, including settlement agreements with

4    customers; (3) any correspondence, including electronic correspondence, that

5    refers or relates to the Corporate Defendants' business opportunities and coaching

6    services; (4) an electronic copy of all advertisements for the Corporate Defendants'

7    business opportunities and coaching services; (5) all telephone and

8    videoconferencing scripts used during the sales process; (6) all slide decks, sales

9    projections, charts, and spreadsheets used during the sales process; (7) all

10   Documents pertaining to Earnings Claims and other representations related to the

11   marketing, advertising, promotion, offer for sale, or sale of Defendants' business

12   opportunities and coaching services, including substantiation for any Earnings

13   Claims; and (8) accounting information, including profit and loss statements,

14   annual reports, receipt books, ledgers, personal and business canceled checks and

15   check registers, bank statements, appointment books, copies of federal, state or

16   local business or personal income or property tax returns, and 1099 forms. The

17   FTC shall return any materials produced pursuant to this Section within seven (7)

18   days of the Corporate Defendants' production.

19               **XX.   DISTRIBUTION OF ORDER BY DEFENDANTS**

20          **IT IS FURTHER ORDERED** that Defendants shall immediately provide a

21   copy of this Order to each affiliate, telemarketer, marketer, sales entity, successor,

22   assign, member, officer, director, employee, agent, independent contractor, client,

23   attorney, spouse, subsidiary, division, and representative of any Defendant, and

24   shall, within ten (10) days from the date of entry of this Order, provide Plaintiff

25   and the Receiver with a sworn statement that this provision of the Order has been

26   satisfied, which statement shall include the names, physical addresses, phone

27   number, and email addresses of each such person or entity who received a copy of

28

the Order. Furthermore, Defendants shall not take any action that would encourage officers, agents, members, directors, employees, salespersons, independent contractors, attorneys, subsidiaries, affiliates, successors, assigns, or other persons or entities in active concert or participation with them to disregard this Order or believe that they are not bound by its provisions.

## XXI.    SERVICE OF THIS ORDER

**IT IS FURTHER ORDERED** that copies of this Order as well as all other filings in this case, may be served by any reasonable means, including facsimile transmission, email, or other electronic messaging, personal or overnight delivery, U.S. Mail or FedEx, by agents and employees of Plaintiff, by any law enforcement agency, or by private process server, upon any Defendant, or any person (including any financial institution) that may have possession, custody, or control of any Asset or Document of any Defendant, or that may be subject to any provision of this Order pursuant to Rule 65(d)(2) of the Federal Rules of Civil Procedure. For purposes of this Section, service upon any branch, subsidiary, affiliate, or office of any entity shall effect service upon the entire entity.

## XXII. CORRESPONDENCE WITH FTC

**IT IS FURTHER ORDERED** that, for the purpose of this Order, all correspondence and service of pleadings on Plaintiff shall be addressed via email to Jody Goodman (jgoodman1@ftc.gov) and Elsie Kappler (ekappler@ftc.gov).

## XXIII.    RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for all purposes.


IT IS SO ORDERED.


Dated:                                   _____

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE