JOSHUA A. DEL CASTILLO (BAR NO. 239015)
E-Mail: jdelcastillo@allenmatkins.com
MATTHEW D. PHAM (BAR NO. 287704)
E-Mail: mpham@allenmatkins.com
ALPHAMORLAI L. KEBEH (BAR NO. 336798)
E-Mail: mkebeh@allenmatkins.com
ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
865 South Figueroa Street, Suite 2800
Los Angeles, California 90017-2543
Phone: (213) 622-5555
Fax: (213) 620-8816

Attorneys for Receiver
STEPHEN J. DONELL

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>ASCEND CAPVENTURES INC., et al.,<br><br>Defendants. | Case No. 2:24-CV-07660-SPG-JPR<br><br>**EX PARTE APPLICATION OF RECEIVER, STEPHEN J. DONELL, FOR ORDER AUTHORIZING REJECTION OF WAREHOUSE LEASE AND ABANDONMENT OF ASSOCIATED WAREHOUSE INVENTORY**<br><br>[Declarations of Stephen J. Donell, Joshua A. del Castillo, and Jennifer Guillen; and [Proposed] Order submitted concurrently herewith]<br><br>Judge Hon. Sherilyn Peace Garnett |

**TO THIS HONORABLE COURT AND ALL INTERESTED PARTIES:**

      **PLEASE TAKE NOTICE THAT** Stephen J. Donell (the "Receiver"), the Court-appointed receiver for defendants Ascend Capventures Inc., Ascend Ecom LLC, ACV, ACV Partners, Accelerated Ecommerce Ventures; Ascend Distribution LLC (California), Ethix Capital, ACV Nexus, Ascend Ecommerce Inc., Ascend Administration Inc., Ascend Ecom LLC, Ascend Distribution LLC (Texas), and their collective dbas, subsidiaries, and affiliates, including Global Marketing Development, Inc., Eaglemont Capital, Paradyme Capital Inc., and AC Ventures Global Inc (collectively, the "Receivership Entities" or "Entities"), hereby submits the instant *Ex Parte Application for Order Authorizing Rejection of Warehouse Lease and Abandonment of Associated Warehouse Inventory* (the "Application") on the grounds that one of the Receivership Entities is a party to a pre-receivership lease for a storage and shipping warehouse used by the Receivership Entities in connection with their operations, which lease the Entities have insufficient funds to pay. Moreover, the warehouse contains inventory of certain goods believed to be property of the Entities which the Receiver has determined, in his reasonable business judgment, cannot be monetized for a net benefit to the receivership estate (the "Estate"). Costs associated with the maintenance of the lease and the preservation of the associated inventory continue to accrue, further escalating a deficiency which the Estate presently has no means of satisfying. Finally, the landlord for the warehouse has recently advised the Receiver that it has a current tenant who has offered to lease the warehouse space if it can be made available by March 1, 2025, but who may elect to leave the building in which the warehouse is located entirely if the space cannot be made available. Each of these factors militates in favor of rejecting the warehouse lease and abandoning any associated inventory. Accordingly, and in order to minimize the Estate's exposure, the Receiver believes it is appropriate at this time to reject the lease, as an executory

contract, abandon the associated warehouse inventory, and return possession and control of the warehouse to the landlord.

This Application is made following conference of counsel pursuant to Local Rule 7-3, which took place on February 4 and 5, 2025. At that time, notice of this Application has been provided to counsel for the plaintiff Federal Trade Commission, and for defendants William Basta and Jeremy Leung, whose respective contact information is as follows:

**Plaintiff's Counsel**

Jody Goodman, Esq. (jgoodman1@ftc.gov)
Elsie Kappler, Esq. (ekappler@ftc.gov)
Federal Trade Commission
600 Pennsylvania Ave., NW, CC-8528
Washington, D.C. 20580
(202) 326-3096

**Defendants' Counsel**

Karl S. Kronenberger, Esq. (karl@kr.law)
Liana Chen, Esq. (liana@kr.law)
Virginia Sanderson, Esq. (ginny@kr.law)
Jeffrey M. Rosenfeld (jeff@kr.law)
Kronenberger Rosenfeld, LLP
548 Market Street #85399
San Francisco, CA 94104-5401
(415) 955-1155

Based on discussions with counsel, the Receiver understands the parties do not oppose to the Application. (*See* concurrently filed Declaration of Joshua A. del Castillo ["del Castillo Decl."] at ¶ 2.)

Dated: February 6, 2025

ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
JOSHUA A. DEL CASTILLO
MATTHEW D. PHAM
ALPHAMORLAI L. KEBEH


By:    /s/   *Joshua A. del Castillo*
    JOSHUA A. DEL CASTILLO
    Attorneys for Receiver
    STEPHEN J. DONELL

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION.

By this Application, the Receiver requests an order authorizing him to: (1) deem as rejected an unexpired, pre-receivership lease agreement for a Texas storage and shipping warehouse; and (2) deem as abandoned the Receivership Entities' interest in any remaining inventory located within the warehouse. Upon his thorough investigation and based on his reasonable business judgment, the Receiver has determined that neither the lease nor the inventory provides any meaningful value to the Estate. Specifically, costs associated with the maintenance of the lease and warehouse inventory – which the Estate does not have the means to satisfy – continue to accrue, at a rate of more than $11,150.00 per month, inclusive of rent and other expenses. In addition, after a detailed examination of prospective auction or other liquidation efforts, the Receiver has determined that the cost of selling the warehouse inventory (inclusive of maintaining the warehouse lease for a period sufficient to market and sell the inventory, along with the costs of advertising and sale) would exceed the likely value of the inventory in an auction setting. In other words, the inventory appears to represent a net liability to the Estate and should be abandoned. Finally, a representative of the landlord has recently contacted the Receiver to advise that another tenant in the building has asked to lease the warehouse space should it be made available by March 1, 2025, but that it expects vacate the building entirely at the end of its lease term if the space cannot rented by that date.

For the foregoing reasons, the Receiver believes action is required on an exigent basis in order to minimize the Estate's exposure to the mounting and unsatisfied expenses associated with the warehouse lease and inventory. The Receiver accordingly respectfully requests that this Court enter an order authorizing him to deem the warehouse lease rejected, as an executory contract, and to deem the Entities' interest in any inventory remaining at the warehouse abandoned.

## II. RELEVANT FACTUAL BACKGROUND.

The Court and all interested parties are invited to review the following materials for a more detailed summary of the relevant facts underlying the request for relief presented in this Application:

- *Order on Plaintiff's Ex Parte Application for (1) Temporary Restraining Order and Order to Show Cause why a Preliminary Injunction Should not Issue; (2) Waiver of Notice Requirement; (3) Appointment of a Temporary Receiver, Freezing Assets; and Other Equitable Relief* (the "Initial Appointment Order") [ECF No. 30], entered on September 13, 2024;

- *Initial Report and Recommendations of Receiver, Stephen J. Donell* (the "Initial Report") [ECF No. 34], filed on September 23, 2024;

- *Supplement to Initial Report and Recommendations of Receiver, Stephen J. Donell* [ECF No. 60], filed October 18, 2024;

- *First Interim Report and Petition for Instructions of Receiver, Stephen J. Donell* (the "First Interim Report") [ECF No. 77], filed November 13, 2024; and

- *Supplement to First Interim Report and Petition for Instructions of Receiver, Stephen J. Donell* (the "Supplemental Report") [ECF No. 80], filed November 19, 2024.

### A. The Warehouse Lease And The Receiver's Initial Inspection.

As reflected in the Receiver's Initial Report and First Interim Report, shortly after his appointment, the Receiver was informed that the Receivership Entities may have been or were conducting business at the a warehouse located at 910-904 Avenue N., Grand Prairie, TX 75050 (the "Warehouse"). (*See* concurrently filed Declaration of Stephen J. Donell ("Donell Decl.") ¶ 2.) Upon learning of the Warehouse, the Receiver promptly arranged to visit the Warehouse, in person, in order to determine what, if any, Receivership Entity operations were conducted out

of the Warehouse and what, if any Receivership Entity inventory might be located at or stored at the Warehouse, along with the potential monetary value of that inventory. (*Id.*) During the visit, the Receiver observed significant disorganization of inventory within the Warehouse, with goods stacked indiscriminately and no discernible method for distinguishing inventory belonging to the Receivership Entities (the "Receivership Inventory") from inventory apparently belonging to other, non-receivership entities. (*Id.* at ¶ 3.) The lack of organized storage or tracking records rendered it impossible for the Receiver to determine ownership or assess the value of the inventory on-site. (*Id.*)

During the Receiver's site visit, he was able to speak with and interview Nikita Loktev, an employee of Walzon, LLC ("Walzon"), who appeared to run the day-to-day operations of the Warehouse, and who confirmed to the Receiver that certain shipping operations of the Receivership Entities had been carried out through the Warehouse, but also that Walzon or other non-receivership entities were using the Warehouse for their own operations. (*Id.* at ¶ 4.) Initially, Mr. Loktev claimed that he could distinguish the Receivership Inventory; however, he subsequently conceded to the Receiver that distinguishing such inventory from other clients' property would be nearly impossible, if not entirely so. (*Id.*) At the time, the inventory appeared to consist primarily of low-value household items. (*Id.*)

Weeks after his visit to the Warehouse, the Receiver was provided with a copy of what appeared to be an active lease agreement (the "Lease") between Dallas NLM TT, LLC (the "Landlord") and the Receivership Entity Ascend Distribution, LLC. (*Id*. at ¶ 5, Ex. A.) The Lease provides that Ascend Distribution, LLC will make monthly rental payments in the amount of $11,150.00, through June 30, 2025. (*Id.*) The Estate does not have funding sufficient to make these payments, and unsatisfied Lease payments continue to accrue. (*Id.*)

### B. The Receiver's Subsequent Communications With Walzon Management And Additional Warehouse Inspection.

Following his on-site inspection, the Receiver directly communicated with Walzon to address the status of the Receivership Inventory and ensure compliance with the Court's Initial Appointment Order. (*Id.* at ¶ 6.) On September 18, 2024, the Receiver sent a formal letter to Walzon reiterating the requirement to preserve all inventory and records related to the Receivership Entities. (*Id.*) The Receiver also requested a detailed inventory list to evaluate the Estate's interest in the Warehouse inventory. (*Id.*)

While Walzon acknowledged these directives, it failed to produce the requested comprehensive inventory list, allegedly due to a lack of accurate records, effectively confirming the Receiver's initial conclusion that an accurate accounting of Receivership Inventory is not practicable. (*Id.*) To mitigate disruptions to third-party clients unrelated to the receivership, the Receiver initially permitted Walzon to resume operations for non-Receivership Entity-related business, subject to the restrictions imposed by the Initial Appointment Order. (*Id.* at ¶ 7.) The Receiver was later informed by Walzon, in October 2024, that Walzon had vacated the Warehouse and had abandoned in the Warehouse any inventory it determined (on a basis never explained to the Receiver) to be Receivership Inventory. (*Id.*)

Given Walzon's consistent inability to provide the Receiver with an accurate list identifying the Receivership Inventory, the Receiver ultimately requested that his Texas local counsel conduct a follow-up visit to the Warehouse to determine the nature and quantity of any purported Receivership Inventory remaining at the Warehouse, and to arrange to restore access and control of the Warehouse to the Landlord, which has been demanding payment for rent and utilities from the receivership which the Estate lacks funding to make, even if the Warehouse contained valuable inventory. (*Id.* at ¶ 8.)

  The Receiver's local Texas counsel visited the Warehouse on or around January 6, 2025, and was able to access parts of the Warehouse that had been inaccessible during the Receiver's initial visit. (*Id* at ¶ 9.) During this additional visit, and in addition to confirming the presence of inventory with apparently *de minimis* value (including the toiletries and other items discussed in the Receiver's First Interim Report), the Receiver's local counsel was able to identify potentially valuable inventory, including numerous Starlink mobile internet kits and children's electronic vehicles, none of which had been visible or accessible during the Receiver's initial visit to the Warehouse. (*Id.*)

### C. The Receiver's Sale Analysis.

  Given that certain newly discovered and apparent Receivership Inventory appeared to be of higher sale value than the previously identified Receivership Inventory, the Receiver immediately undertook efforts to determine whether and how such inventory might be monetized for the benefit of the Estate. (*Id.* at ¶ 10.) After soliciting recommendations for auctioneers and sale administrators, the Receiver determined to use Texas auctioneer Rosen Systems (the "Auctioneer") for any prospective sale of the Receivership Inventory, including the newly discovered inventory. (*Id.*) In connection with that effort, the Receiver arranged for Auctioneer personnel to visit the Warehouse and review the visible inventory, along with detailed videos and photographs taken during the Receiver's local Texas counsel's recent visit to the Warehouse. (*Id.*) Unfortunately, based on the tasks and anticipated costs reported to the Receiver by the Auctioneer in connection with the prospective sale of the Receivership Inventory, the Receiver determined, in his reasonable business judgment, that a prospective sale or auction of the Receivership Inventory was unlikely to result in a net monetary benefit to the Estate, after accounting for, among other things: (1) the costs of continued Lease payments to house the inventory during the sale process; (2) utilities for the same period; (3) the expense of marketing, unpacking, and presenting the Receivership Inventory for

sale; and (4) the Auctioneer's fee. (*Id.*) Accordingly, the Receiver has reluctantly concluded that the costs of selling the Receivership Inventory outweigh the likely monetary benefit, and accordingly that all Receivership Inventory located at the Warehouse should be abandoned. (*Id.*)

### D.   The Landlord's Recent Inquiry.

On February 3, 2025, a representative of the Landlord contacted Receiver's counsel to advise that another tenant in the building in which the Warehouse is located had offered to lease the Warehouse space if it could be made available by March 1, 2025, but that it had also advised that – should the Warehouse space not be promptly made available – it intended to vacate the building entirely at the end of its lease term. (*See* del Castillo Decl. ¶ 3; Declaration of Jennifer Guillen ["Guillen Decl."] ¶ 2.) The Landlord's interest in administering the Warehouse is somewhat attenuated from the consumer protection goals of the receivership; however the Landlord is nonetheless an interested party which presently believes its rights in property (the Warehouse) to be affected by the pendency of the receivership. (Guillen Decl. ¶ 3.) While the Receiver does not entirely agree with the Landlord on all points, he is sensitive to the Landlord's concerns, and certainly wants to return possession of the Warehouse to the Landlord as promptly as possible, in accordance with whatever orders this Court may enter on this Application.

## III.   ARGUMENT

### A.   The Court Is Empowered To Authorize The Rejection Of The Lease And Abandonment Of The Receivership Inventory.

It is axiomatic that federal district courts presiding over equity receiverships have broad power and wide discretion in the supervision of such receiverships, to facilitate the orderly and efficient administration of the receivership assets. *See, e.g., SEC v. Hardy*, 803 F.3d 1034, 1037-38 (9th Cir. 1986). This power and discretion includes the authority to "make rules which are practicable as well as

equitable." Id. at 1039 (*quoting First Empire Bank-New York v. FDIC*, 572 F.2d 1361, 1368 (9th Cir. 1978)).

In addition, Local Civil Rule 66-8 of this Court applies bankruptcy principles (including but not limited to equitable principles) to the administration of receivership estates, providing, in pertinent part:

> Except as otherwise ordered by the Court, a receiver shall administer the estate as nearly as possible in accordance with the practice in the administration of estates in bankruptcy.

In bankruptcy, a trustee may abandon property of the estate that is burdensome or of inconsequential value to the estate. *See* 11 U.S.C. § 554(a). Bankruptcy Code similarly empowers a trustee to assume or reject any executory contract or unexpired lease that he or she determines not to represent a benefit to the estate. 11 U.S.C. § 365(a). *See*, *e.g.*, *In re James Wilson Assocs.*, 965 F.2d 160, 165 (7th Cir. 1992) ("A lease is, with regard to its unexpired portion, an executory contract; and a trustee in bankruptcy … is free to repudiate without liability the debtor's executory contracts, expressly including any unexpired leases.").

Here, the Lease is an executory contract, given that it does not expire until June 30, 2025, meaning it remains subject to future performance by the tenant Receivership Entity. As in the bankruptcy context, the Receiver has determined that the Lease does not represent a benefit to the Estate; indeed, it represents an ongoing and increasing liability, given that unpaid rent and other expenses continue to accrue and that the Estate has no means of satisfying such expenses, even if the continued use of the Warehouse were of value to the receivership, which it is not. Moreover, the Landlord has expressed an urgent interest in recovering possession and control over the Warehouse, and the Receiver can see no purpose for failing to accommodate its request, to the degree possible. Accordingly, the Receiver's

request to reject the unexpired Lease falls squarely within the Court's authority, and the Lease should be deemed rejected.[1]

### B. The Receivership Inventory Does Not Represent A Net Value To The Estate And Is Subject To Abandonment.

In keeping with Local Civil Rule 66-8, in the receivership estate administration context, courts are deferential to the business judgment of bankruptcy trustees, receivers, and similar estate custodians. *See*, *e.g.*, *Bennett v. Williams*, 892 F.2d 822, 824 (9th Cir. 1989) ("[W]e are deferential to the business management decisions of a bankruptcy trustee."); *Southwestern Media, Inc. v. Rau*, 708 F.2d 419, 425 (9th Cir. 1983) ("The decision concerning the form of … [estate administration] … rested with the business judgment of the trustee."); *In re Thinking Machines Corp.*, 182 B.R. 365, 368 (D. Mass. 1995) ("The application of the business judgment rule … and the high degree of deference usually afforded purely economic decisions of trustees, makes court refusal unlikely.") (rev'd on other grounds, *In re Thinking Machines Corp.*, 67 F.3d 1021 (1st Cir. 1995)).

Similar deference should apply here to the Receiver's determination that the sale or auction of the Receivership Inventory would not yield a net monetary benefit to the Estate and, accordingly, that is should be abandoned. Put simply, the sale or auction of the Receivership Inventory cannot be justified on a cost-benefit basis; continuing to incur mounting liability on the Lease to store inventory that cannot be monetized to benefit the Estate would be harmful to the very stakeholder interests the Receiver was appointed to protect. Accordingly, the Receiver respectfully requests that this Court enter an order authorizing him to deem the Entities' interest in all Receivership Inventory located at the Warehouse to be abandoned.

---

[1] It is possible that the rejection of the Lease could establish Landlord as an unsecured creditor of the Estate in some capacity. The question of Landlord's entitlement to a claim against the Estate, and any prospective payment on such a claim, is not presently before the Court and will not be decided unless and until the Receiver proposes, and the Court approves, a claims process.

## IV. CONCLUSION

Based on the foregoing, the Receiver respectfully requests an order authorizing the Receiver to deem the Lease rejected and to deem any Receivership Inventory remaining at the Warehouse abandoned.

Dated: February 6, 2025

ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP
JOSHUA A. DEL CASTILLO
MATTHEW D. PHAM
ALPHAMORLAI L. KEBEH

By: /s/ *Joshua A. del Castillo*
JOSHUA A. DEL CASTILLO
Attorneys for Receiver
STEPHEN J. DONELL