JOSHUA A. DEL CASTILLO (BAR NO. 239015)
E-Mail: jdelcastillo@allenmatkins.com
MATTHEW D. PHAM (BAR NO. 287704)
E-Mail: mpham@allenmatkins.com
ALPHAMORLAI L. KEBEH (BAR NO. 336798)
E-Mail: mkebeh@allenmatkins.com
ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
865 South Figueroa Street, Suite 2800
Los Angeles, California 90017-2543
Phone: (213) 622-5555
Fax:  (213) 620-8816

Attorneys for Receiver
STEPHEN J. DONELL

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>ASCEND CAPVENTURES INC., et al.,<br><br>Defendants. | Case No. 2:24-CV-07660-SPG-JPR<br><br>**THIRD INTERIM REPORT AND PETITION FOR INSTRUCTIONS OF RECEIVER, STEPHEN J. DONELL**<br><br>[Proposed] Order submitted concurrently herewith<br><br>Date:   August 13, 2025<br>Time:  1:30 p.m.<br>Ctrm:  5C<br>Judge Hon. Sherilyn Peace Garnett |

**TO THIS HONORABLE COURT AND ALL INTERESTED PARTIES:**

**PLEASE TAKE NOTICE THAT** Stephen J. Donell (the "Receiver"), the Court-appointed receiver for defendants Ascend Capventures Inc., Ascend Ecom LLC, ACV, ACV Partners, Accelerated Ecommerce Ventures; Ascend Distribution LLC (California), Ethix Capital, ACV Nexus, Ascend Ecommerce Inc., Ascend Administration Inc., Ascend Distribution LLC (Texas), and their collective dbas, subsidiaries, and affiliates, including Global Marketing Development, Inc., Eaglemont Capital, Paradyme Capital Inc., and AC Ventures Global Inc (collectively, the "Receivership Entities" or "Entities"), hereby submits this *Third*

*Interim Report and Petition for Instructions* (the "Report") in order to detail the tasks undertaken by the Receiver and his professionals for the period from February 1, 2025 through June 30, 2025 (the "Reporting Period").

## I. PRELIMINARY STATEMENT.

Pursuant to this Court's September 13, 2024 *Order on Plaintiff's Ex Parte Application For (1) Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue; (2) Waiver of Notice Requirement; (3) Appointment of a Temporary Receiver, Freezing of Assets; and other Equitable Relief* (the "Initial Appointment Order") [ECF No. 30], as extended and reaffirmed by this Court's December 3, 2024 *Order Granting Stipulation for Court to Enter Preliminary Injunction* (the "Preliminary Injunction") [ECF No. 82], the Receiver has been charged with, among other things, assuming control over the Receivership Entities and their assets ("Receivership Assets" or "Assets"); taking those actions he deems necessary or appropriate to administer the Entities and their Assets; performing an analysis of the business and financial activities of the Entities; preparing an accounting; and marshaling recoverable Receivership Assets for the benefit of the receivership estate established by this Court's orders (the "Estate") and its potential creditors.

As set forth below, during the Reporting Period, the Receiver made additional progress in satisfying these duties, including obtaining orders regarding control over key real property Assets, addressing attempts to interfere with the administration of those Assets, and pursuing relief from the Court on outstanding matters critical to the continued administration of the Estate. Nonetheless, challenges remain, particularly with respect to the Receiver's efforts to obtain possession of the real property Asset located at 2010 Linden Avenue, Venice, California ("Linden 2"), maximizing the sale value of the real property located at 25 Brooks Avenue, Unit 2, Venice, California 90291 ("Brooks"),as well as ensuring that the Receiver and his professionals' are timely compensated for the services they have provided in this

matter, including in connection with their pending amended first interim fee application.

The Receiver remains committed to his duties, and respectfully submits this Report to update the Court on recent developments, provide recommendations based on those developments, and seek further instruction from the Court as appropriate.

## II. GENERAL BACKGROUND.

In addition to the documents referenced in his February 21, 2025 *Second Interim Report and Petition for Instructions* [ECF No. 88-1], the Receiver invites the Court and all interested parties to review the following materials for a more detailed summary of developments relevant to the receivership during the Reporting Period:

- *Ex Parte Application of Receiver, Stephen J. Donell, for Order Authorizing Rejection of Warehouse Lease and Abandonment of Associated Warehouse Inventory* (the "Rejection Application") [ECF No. 87, *et seq.*], filed on February 6, 2025;

- *Second Interim Report and Petition for Instructions of Receiver, Stephen J. Donell* (the "Second Interim Report") [ECF No. 88, *et seq.*], filed on February 21, 2025;

- *Order Granting Stipulation: (1) Authorizing Turnover of Sales Proceeds by Granite Escrow and Settlement Services; (2) Authorizing Receiver to Manage, Market, and Sell Residential Real Properties; and (3) Releasing Defendants' Claims to Proceeds Held or Recovered by Receiver* [ECF No. 92] (the "Turnover Order");

- *Amended First Interim Application for Payment of Fees and Reimbursement of Expenses of Receiver, Stephen J. Donell, and his Professionals* (the "Amended First Fee Application") [ECF No. 93, *et seq.*], filed on March 13, 2025);

- *Supplement to Second Interim Report and Petition for Instructions of Receiver, Stephen J. Donell* [ECF No. 96], filed on March 20, 2025; and

- *Supplemental Report and Petition for Instructions of Receiver, Stephen J. Donell Re: Real Properties Subject to Turnover Order* [ECF No. 100, *et seq.*], filed on April 29, 2025.

As reflected in the above-identified pleadings, the Receiver has continued efforts to stabilize and preserve the Estate's Assets, including securing orders regarding, among other critical matters: (i) the rejection of a lease relating to and the abandonment of a shipping and receiving warehouse (the "Warehouse") located in Grand Prairie, Texas, and used by the Receivership Entities in the pre-receivership period and (ii) the turnover of real property Receivership Assets previously controlled by individual defendants William Basta and Jeremy Leung (the "Defendants"); (iii) ongoing issues concerning the unlawful occupancy of such real property Asset; (iv) preparing and submitting supplemental pleadings to the Court regarding critical outstanding receivership matters.  These efforts—summarized further in this Report—reflect the Receiver's ongoing commitment to his duties and to maximizing the value of the Estate, despite continued challenges posed by, among other things, the Defendants' omissions or incomplete disclosures of critical facts, meritless third-party claims to Receivership Assets, and interference resulting in delays in obtaining relief necessary for administration of the receivership.

### III. SUMMARY OF RECEIVER'S ACTIVITIES AND EFFORTS.

The following reflects a summary of the Receiver's activities and efforts during the Reporting Period, including with respect to some related matters occurring after the close of the Reporting Period:

### A. Notifications To Consumers And Efforts to Prevent Further Harm.

The Receiver continues to monitor for potential fraudulent solicitations directed at Entity consumers. To that end, the Receiver continues to maintain a dedicated webpage—https://fedreceiver.com/case/federal-trade-commission-v-ascend-capventures-inc-et-al/—which provides public access to key filings and Court orders, along with notices cautioning consumers against fraudulent solicitations. The Receiver and his team also remain responsive to inquiries from consumers and have continued to assist affected individuals with inquiries regarding their prior transactions with the Entities and the status of the receivership.

### B. Document Recovery And Analysis.

During the Reporting Period, the Receiver issued additional subpoenas to lenders, foreclosure trustees, and other third parties believed to possess information relevant to the Receiver's administration of Linden 2 and Brooks, including in a successful effort to confirm secured lienholders, resolve non-judicial foreclosure efforts commenced in violation of this Court's prior orders, and develop an appropriate marketing and sale plan for Linden 2 and Brooks, as provided for in the Turnover Order. As a result of these efforts, the Receiver has, among other things: (i) confirmed the status and amount of secured debt encumbering the Brooks property; (ii) obtained information critical to the marketing and potential sale of Brooks; (iii) assessed title, occupancy, and encumbrance issues affecting Linden 2; and (iv) successfully halted the pending foreclosures of each of these real property Assets.

The Receiver and his professionals continue to review and analyze the documents produced in response to these subpoenas. As relevant information is obtained, the Receiver will use it to inform his administration of the real property Assets and to determine whether additional action may be necessary to maximize value for the Estate.

### C.     Asset Identification And Asset Recovery.

As detailed in prior reports, upon his appointment, the Receiver provided notice of his appointment and the Court's orders freezing assets to multiple banks and financial institutions, and requested the turnover of any accounts maintained by, in the name of, or for the benefit of the Receivership Entities.  As of the date of this Report, the Receiver has recovered approximately $850,000 in cash, including approximately $400,000 in net proceeds recovered from the Defendants' unauthorized post-receivership sale of the real property located at 2012 Linden Avenue, Venice, California 90291 ("Linden 1").  Of the total amount recovered, approximately $150,000 has been returned to consumer W. McCrary pursuant to the Court's prior orders and consistent with the Receiver's previous recommendations, as described below.

#### 1.     Status of Brooks Property.

Following months of diligent effort, the Receiver has successfully secured possession and administrative control over the Brooks property.  These efforts included: (i) identifying and obtaining critical documents concerning the property's title, the amount and status of secured debt encumbering the property, and relevant homeowners association records; (ii) regaining possession of Brooks from Ms. Tia Fouroohi, who was unlawfully occupying the premises and ultimately vacated only after the Receiver filed an *ex parte* application seeking contempt and other relief; and (iii) identifying and engaging with the lender and foreclosure trustee associated with Brooks—who, in apparent violation of the Court's Preliminary Injunction, had initiated foreclosure proceedings against the property—and securing a cessation of those efforts.

The Receiver faced significant challenges in accomplishing each of these steps.  Those challenges stemmed from the Defendants' failure to disclose material information regarding the Brooks property's occupancy status and associated encumbrances, including the identity of the lender and the foreclosure trustee, to say

nothing of Ms. Fouroohi, defendant Leung's former fiancée. As a result, the Receiver was forced to expend significantly more time, expense, and resources than might otherwise have been necessary to secure control of the property.

Since obtaining possession, the Receiver confirmed that Ms. Fouroohi had been unlawfully subletting the Brooks property to a third party. The Receiver has established contact with the third-party subtenant, who has agreed to remain as a tenant on a month-to-month basis and pay market rent ($10,600 per month) to the Receiver while the property is marketed for sale. To that end, the Receiver has retained a licensed real estate broker to assist with marketing the property. In the meantime, the Receiver continues to pay applicable homeowners association dues and utilities on the property. While he has discovered that the debt secured by the Brooks property is larger than initially anticipated, the Receiver remains hopeful that a sale may be completed in short order and yield material benefit to the Estate.

### 2. Status of Linden 2 Property.

Linden 2 remains occupied by Mr. Berlin Lu, who claims to possess a leasehold interest in the property. That claim has been expressly refuted in sworn declarations submitted by defendant Jeremy Leung, the property's owner of record, who attests that no lease was ever executed with Mr. Lu.

In an effort to effectuate turnover of Linden 2, the Receiver filed an *ex parte* application with the Court seeking relief sufficient to effectuate Mr. Lu's removal from the property. (*See* ECF No. 101, *et seq.*) Although the Court ultimately declined to grant immediate relief on the Receiver's application, it requested supplemental briefing regarding its authority to issue a writ of possession as to the property. The Receiver timely filed a supplemental brief on June 12, 2025 [ECF No. 109]. His request remains pending as of the date of this Report.

Given that Mr. Lu has restricted access to Linden 2, including via changing the locks and posting signage warning third parties of legal challenges, and absent a possessory order issued by the Court, the Receiver will be unable to access, assess,

or market Linden 2 as contemplated by the Turnover Order. In the meantime, secured debt encumbering Linden 2 continues to accrue, and the condition of the property likely continues to deteriorate—raising concerns that any equity remaining in Linden 2 is rapidly eroding.

### 3. Turnover of Proceeds from Sale of Linden 1 Property.

As detailed in prior reports, the Receiver, Defendants, and the plaintiff Federal Trade Commission ("FTC") stipulated to the turnover and administration of certain real property Assets and proceeds, including the net proceeds from the Defendants' September 2024 sale of Linden 1 property. On February 24, 2025, the Court entered the Turnover Order. In accordance with the Turnover Order, the Receiver has confirmed receipt of approximately $400,000 in net proceeds relating to the sale of Linden 1, and considers the matter resolved.

### 4. Rejection of the Warehouse Lease.

As previously reported, the Receiver filed his Rejection Application on February 6, 2025. On February 24, 2025, the Court entered an order granting the application [ECF No. 90]. Thereafter, the Receiver formally rejected the Warehouse lease and abandoned the Warehouse and any inventory located therein.

### 5. Resolution of Consumer W. McCrary's Post-Receivership Wire Transfer.

As detailed in prior reports, consumer W. McCrary was fraudulently induced to wire funds into a frozen Entity account, post-receivership, by persons apparently affiliated with the Entities in the pre-receivership period. Mr. McCrary's funds were not commingled with other entity or consumer funds, and the persons who solicited the wire were ultimately unable to access the wired funds as a consequence of the asset freeze imposed by this Court. The funds were later turned over to the Receiver, who recommended that they be returned to Mr. McCrary. Consistent with the Receiver's prior recommendations, and after obtaining approval and authorization from this Court, the Receiver has returned all of Mr. McCrary's funds.

As of the filing of this Report, there are no remaining claims or outstanding issues concerning those funds.

### D. Review And Analysis Of Receivership Entities' Business And Financial Activities.

The Receiver has substantially completed his review of the Receivership Entities' business and financial activities, including a thorough analysis of documents produced by banks, escrow and title companies, web hosting platforms, and other third parties. This review confirmed that the Entities were not engaged in a wholly legitimate commercial enterprise and that consumer funds were diverted to principals and affiliates in ways inconsistent with ordinary business practices. Based on the materials reviewed, the Receiver believes most, if not all, accessible Receivership Assets have been identified. As such, his focus has shifted to securing control and possession of those Assets still subject to administration—principally the Brooks and Linden 2 properties—and, to the extent economically appropriate, monetizing them for the benefit of the Estate.

### E. The Receiver's Pending Amended First Fee Application.

On November 13, 2024, the Receiver and his professionals submitted their *First Interim Application for Payment of Fees and Reimbursement of Expenses of Receiver, Stephen J. Donell, and his Professionals* [ECF No. 78] (the "First Fee Application") in connection with services rendered from the Receiver's appointment on September 13, 2024 through October 31, 2024 (the "First Fee Application Period"). After no party—including the plaintiff FTC—opposed the application, the Court took the matter off calendar and under submission.

On February 24, 2025, the Court issued an order approving reimbursement of expenses but denying, without prejudice, the applicants' requested fees, and inviting the applicants to submit a clarified application addressing particular areas of interest to the Court in greater detail. (ECF No. 89) In response, the Receiver promptly filed the Amended First Fee Application, which he believes addresses all of the

issues raised by the Court in its order, and includes sworn declarations from each fee applicant describing their qualifications and attesting to the reasonableness of their rates and billing practices.

After the Amended First Fee Application was filed, the FTC filed a notice of non-opposition to the application. (ECF No. 94) The Court subsequently took the Amended First Fee Application off calendar and has not yet entered an order on the matter. At present, neither the Receiver nor any of his professionals has received compensation for their work performed since the inception of the receivership on September 13, 2024.

The Receiver and his professionals have continued to incur fees and expenses since the First Fee Application Period in connection with the recovery, stabilization, and administration of Receivership Assets, as described herein and in prior reports. The First Fee Application reflects approximately $320,000 in accrued fees and expenses, and the Receiver anticipates that a forthcoming catch-up application may request a similar aggregate amount in accrued fees and expenses. While the Receiver is endeavoring to minimize expenses and maximize recoveries for the benefit of the Estate, it may become administratively impossible for him to do so if fees and expenses incurred cannot be timely approved by this Court.

## IV. RECOMMENDATIONS AND PETITION FOR FURTHER INSTRUCTIONS.

The Receiver respectfully recommends that the Court authorize the continued administration of the Estate, including (i) ongoing efforts to market and sell the Brooks property, subject to the Receiver's determination that a sale is in the best interest of the Estate; and (ii) continued administration of Estate Assets pending the Court's ruling on the Receiver's supplemental briefing concerning Linden 2.

With respect to Brooks, the Receiver intends to proceed with marketing efforts and, if appropriate, negotiate and consummate a sale to maximize the value of the Asset for the benefit of the Estate.

1  As to Linden 2, the Receiver remains prepared to take all steps necessary to secure possession of the property, assess its condition, and market the property for sale if and when the Court issues an order authorizing relief sufficient to effectuate Mr. Lu's removal, and provided that a sale at market price is likely to yield a net benefit to the Estate. Until such time, the Receiver will continue to monitor the property to the extent possible and respectfully requests that the Court consider expediting a ruling on the Receiver's pending supplemental briefing.

Finally, with respect to the Receiver's Amended First Fee Application, the Receiver reaffirms his commitment to provide any additional information or materials the Court may require in order to issue a ruling thereon. The Receiver respectfully requests that the Court grant such relief as may be necessary to ensure the continued, effective administration of the Estate, including the timely payment of approved fees and expenses incurred to date.

Dated: July 7, 2025

ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
JOSHUA A. DEL CASTILLO
MATTHEW D. PHAM
ALPHAMORLAI L. KEBEH

By:   /s/   *Alphamorlai L. Kebeh*
ALPHAMORLAI L. KEBEH
Attorneys for Receiver
STEPHEN J. DONELL