1

2

3

4

5

6

7

8

9          **UNITED STATES DISTRICT COURT**

10         **CENTRAL DISTRICT OF CALIFORNIA**

11

12   FEDERAL TRADE COMMISSION,

13                    Plaintiff,              Case No. 2:24-cv-07660-SPG-JPR

14            v.

15                                            **ORDER GRANTING
                                              STIPULATION FOR COURT**
16   ASCEND CAPVENTURES INC., et              **ORDER ENTERING**
     al.,                                     **PERMANENT INJUNCTION AND**
17                    Defendants.             **MONETARY JUDGMENT AS TO
                                              ASCEND CAPVENTURES INC.,**
18                                            **ASCEND ECOMMERCE, INC.,
                                              ASCEND ADMINISTRATION,**
19                                            **INC., ASCEND ECOM LLC,
                                              ASCEND DISTRIBUTION LLC,**
20                                            **WILLIAM MICHAEL BASTA,
                                              AND JEREMY KENNETH**
21                                            **LEUNG [ECF NO. 111]**

22

23

24

25

26

27

28

1

1       Before the Court is the parties' instant Stipulation for Court Order Entering

2 Permanent Injunction and Monetary Judgment as to Ascend Capventures, Inc.,

3 Ascend Ecommerce, Inc., Ascend Administration, Inc., Ascend Ecom LLC, Ascend

4 Distribution LLC, William Michael Basta, and Jeremy Kenneth Leung

5 ("Defendants").  (ECF No. 111 ("Stipulation")).  The Court, having considered the

6 parties' Stipulation, and finding good cause thereof, hereby GRANTS the Stipulation

7 and ORDERS as follows:

8       Plaintiff, the Federal Trade Commission ("Commission" or "FTC"), filed its

9 Complaint for Permanent Injunction, Monetary Judgment, and Other Equitable

10 Relief ("Complaint") pursuant to Sections 13(b) and 19 of the Federal Trade

11 Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b), 57b, the FTC's Trade Regulation

12 Rule entitled "Disclosure Requirements and Prohibitions Concerning Business

13 Opportunities" ("Business Opportunity Rule"), 16 C.F.R. Part 437, as amended, and

14 the Consumer Review Fairness Act of 2016 ("CRFA"), 15 U.S.C. § 45b (ECF No.

15 1). The Commission and Defendants stipulate to the entry of this Stipulated Order

16 for Permanent Injunction and Monetary Judgment ("Order") to resolve all matters

17 in dispute in this action between them.

18       THEREFORE, IT IS ORDERED as follows:

19 **FINDINGS**

20     A.    This Court has jurisdiction over this matter.

21     B.    The Complaint alleges that Defendants participated in deceptive and

22 unfair acts or practices that violate Section 5(a) of the FTC Act, 15 U.S.C. § 45(a),

23 the Business Opportunity Rule, and the CRFA, in the marketing and promotion of

24 their online e-commerce store business opportunities.

25     C.    The FTC alleges that there is good cause to believe that Defendants

26 have taken at least $25 million from consumers in connection with their unlawful

27 practices.

28

D.    Defendants neither admit nor deny any of the allegations in the Complaint, except as specifically stated in this Order. Only for purposes of this action, Defendants admit the facts necessary to establish jurisdiction.

E.    Defendants waive any claim that they may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order, and agree to bear their own costs and attorney fees.

F.    Defendants and the Commission waive all rights to appeal or otherwise challenge or contest the validity of this Order.

## DEFINITIONS

For the purpose of this Order, the following definitions apply:

A.    "**Assisting Others**" includes the following:

1.    performing customer service functions, including receiving or responding to consumer complaints;

2.    formulating or providing, or arranging for the formulation or provision of, any advertising or marketing material, including any telephone sales script, direct mail solicitation, or the design, text, or use of images of any Internet website, email, or other electronic communication;

3.    formulating or providing, or arranging for the formulation or provision of, any marketing support material or service, including web or Internet Protocol addresses or domain name registration for any Internet websites, affiliate marketing services, or media placement services;

4.    providing names of, or assisting in the generation of, potential customers;

5.    performing marketing, billing, payment processing, or payment services of any kind; or

3

6.    acting or serving as an owner, officer, director, manager, or principal of any entity.

B.    "**Business Coaching Program**" means any program, plan, good, or service, including those related to business opportunities, that represents, expressly or by implication, to coach, train, or teach a participant or Purchaser how to establish, operate, or improve the Purchaser's business.

C.    "**Business Opportunity**" means a commercial arrangement in which:

1.    A Seller solicits a prospective Purchaser to enter into a new business; and

2.    The prospective Purchaser makes a required payment; and

3.    The Seller, expressly or by implication, orally or in writing, represents that the Seller or one or more Designated Persons will:

(i)    Provide locations for the use or operation of equipment, displays, vending machines, or similar devices, owned, leased, controlled, or paid for by the Purchaser; or

(ii)    Provide outlets, accounts, or customers, including Internet outlets, accounts, or customers, for the Purchaser's goods or services; or

(iii)    Buy back any or all of the goods or services that the Purchaser makes, produces, fabricates, grows, breeds, modifies, or provides, including providing payment for such services as, for example, stuffing envelopes from the Purchaser's home.

D.    "**Corporate Defendants**" means Ascend Capventures Inc., Ascend Ecommerce Inc., Ascend Administration Inc., Ascend Ecom LLC, and Ascend Distribution LLC, and each of their subsidiaries, affiliates, successors, and assigns.

E.    "**Covered communication**" means a written, oral, or pictorial review, performance assessment, or other similar analysis, including by electronic means, of goods, services, or conduct.

F.    "**Defendants**" means the Corporate Defendants and the Individual Defendants, individually, collectively, or in any combination.

G.    "**Earnings Claim(s)**" means any oral, written, or visual representation to a prospective purchaser that conveys, expressly or by implication, a specific level or range of actual or potential sales, or gross or net income or profits, revenues, financial gains, percentage gains, or return on investment. Earnings Claims include, but are not limited to: (1) any chart, table, or mathematical calculation that demonstrates possible results based upon a combination of variables; and (2) any statements from which a prospective purchaser can reasonably infer that he or she will earn a minimum level of income (e.g., "earn enough money to buy a Porsche," "earn a six-figure income," or "earn your investment back within one year"); (3) references to quitting one's job, not having to work, or living off income from online sales; (4) references to increased purchases or savings, including a home, cars, boats, vacations, or travel; (5) any statements, claims, success stories, endorsements, or testimonials about the performance or profitability of representatives, endorsers, instructors, or customers; and (6) any representation, even hypothetical, of how much money a consumer could or would earn.

H.    "**Individual Defendants**" means William Basta and Jeremy Leung, individually or collectively.

I.    "**Prohibited contract provision**" means a standard contract provision used in the course of selling or leasing goods or services that:

1.    prohibits or restricts the ability of a Person who is a party to the contract to engage in a Covered communication; or

2.    imposes a penalty or fee against a Person who is a party to the contract for engaging in a Covered communication; or

3.    transfers, or requires a person who is a party to the contract to transfer, to any other person any intellectual property rights in a Covered Communication, with the exception of a non-exclusive license to lawfully use a Covered Communication about a Defendant's goods, services, or conduct.

J.    "**Provide locations, outlets, accounts, or customers**" means furnishing the prospective purchaser with existing or potential locations, outlets, accounts, or customers; requiring, recommending, or suggesting one or more locators or lead-generating companies; providing a list of locator or lead-generating companies; collecting a fee on behalf of one or more locators or lead-generating companies; offering to furnish a list of locations; or otherwise assisting the prospective purchaser in obtaining his or her own locations, outlets, accounts, or customers.

K.    "**Receiver**" means Stephen Donell, the receiver appointed in Section XI of the Preliminary Injunction entered as to each Defendant (ECF 82), and any deputy receivers that shall be, or have been, named by the Receiver.

L.    "**Receivership Entities**" means Corporate Defendants and their successors and assigns, as well as any other entity that has conducted any business related to the marketing and sale of Defendants' products or services, including receipt of assets derived from any activity that is the subject of the Complaint in this matter, and that the Receiver determines is controlled or owned by any Defendant.

M.    "**Receivership Estate**" means the assets identified in Section IV.B of this Order and all assets of the Receivership Entities, including: (a) any assets of the Receivership Entities currently in the possession of the Receiver; (b) all the funds, property, premises, accounts, documents, mail, and all other assets of, or in the

possession or under the control of the Receivership Entities, wherever situated, the income and profits therefrom, all sums of money now or hereafter due or owing to the Receivership Entities, and any other assets or property belonging or owed to the Receivership Entities; (c) any assets of the Receivership Entities held in asset protection trusts; (d) any reserve funds or other accounts associated with any payments processed on behalf of any Receivership Entities, including such reserve funds held by a payment processor, credit card processor, or bank; and (e) all proceeds from the sale of such assets, except those assets the sale of which the Receiver determines will not add appreciably to the value of the estate.

## ORDER

### I.    BUSINESS OPPORTUNITY AND BUSINESS COACHING BAN

IT IS THEREFORE ORDERED that Defendants are permanently restrained and enjoined from advertising, marketing, distributing, promoting, or offering for sale, or Assisting Others in the advertising, marketing, distributing, promoting, or offering for sale of, any Business Opportunity or Business Coaching Program.

### II.    PROHIBITED BUSINESS ACTIVITIES

IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, marketing, promoting, or offering for sale of any goods or services, are permanently restrained and enjoined from:

A.    Making any Earnings Claims or Assisting Others in making any Earnings Claims, unless the Earnings Claim is non-misleading and, at the time the Earnings Claim is made, Defendants (1) have a reasonable basis for the claim; (2) have in their possession written materials that substantiate the claimed earnings and that the claimed earnings are typical for consumers similarly situated to those to whom the claim is made; and (3) make the written substantiation for Earnings

1  Claims available upon request to the consumer, potential purchaser or investor, and

2  the FTC;

3      B.    Misrepresenting or Assisting Others in misrepresenting, expressly or by

4  implication, that Defendants' products or services:

5          1.    Will allow purchasers to earn a specific level or range of actual

6              or potential sales, or gross or net income or profits, revenues,

7              financial gains, percentage gains, or return on investment with

8              little to no effort on their part; and

9          2.    Will use artificial intelligence (AI) to maximize revenues or

10             otherwise enhance the profitability or effectiveness of the good

11             or service;

12     C.    Misrepresenting or Assisting Others in misrepresenting, expressly or by

13  implication, any other fact material to consumers concerning any good or service,

14  such as:  the total costs; any material restrictions, limitations, or conditions; or any

15  material aspect of its performance, efficacy, nature, or central characteristics; or any

16  material aspect of the nature or terms of the refund, cancellation, exchange,

17  repurchase, or remedy policies; and

18     D.    Prohibiting or restricting any consumer, potential purchaser, or investor

19  from communicating reviews, performance assessments, and similar analyses about

20  Defendants' products or services, or the conduct of Defendants; or threatening or

21  imposing a penalty or fee against any consumer, potential purchaser, or investor who

22  engages in such communications.

### III.    INJUNCTION AGAINST SUPPRESSING COVERED COMMUNICATIONS THROUGH PROHIBITED CONTRACT PROVISIONS

26     IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents,

27  employees, and attorneys, and all other persons in active concert or participation

28

8

with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby permanently restrained and enjoined from offering, attempting to enforce, or asserting the validity of, any Prohibited contract provision. Nothing in this Section shall affect any other legal duty of a party to a contract or affect any cause of action arising from the breach of such duty.

### IV. MONETARY JUDGMENT AND PARTIAL SUSPENSION AS TO INDIVIDUAL DEFENDANTS

IT IS FURTHER ORDERED that:

A.    Judgment in the amount of Twenty-five Million Dollars ($25,000,000) is entered in favor of the Commission against Defendants, jointly and severally, as monetary relief.

B.    Within 7 days of entry of this Order, Individual Defendant William Basta is ordered to take all necessary steps to liquidate the real property located at and commonly known as 2304 119th Street North, Seminole, FL 33778 [APN 04-30-15-74790-003-0150] ("Seminole Property"), titled in the name of 89CLTV LLC, a limited liability corporation solely owned and controlled by Individual Defendant Basta, whether through an arms-length sale at his own expense or by allowing a foreclosure action to proceed. Time is of the essence for such liquidation. Individual Defendant Basta is ordered to pay to the Commission all proceeds due to him or due to 89CLTV LLC from such liquidation by electronic fund transfer in accordance with instructions to be provided by a representative of the Commission. Individual Defendant Basta is ordered to forward to the Commission all documentation of such liquidation in accordance with instructions to be provided by a representative of the Commission.

C.    Within 7 days of entry of this Order, Defendants are ordered to surrender to Receiver all control, title, dominion, and interest each has to the following assets:

1      1.    All interest the Defendants have in funds in any accounts in the

2               name of the Receivership Entities;

3      2.    All cash held by the Receiver;

4      3.    All assets owned by the Receivership Entities, including any real,

5               personal, or intellectual property, chattel, goods, instruments,

6               equipment, fixtures, general intangibles, effects, leaseholds,

7               contracts, mail, or other deliveries, shares or stock, securities,

8               inventory, checks, notes, accounts, credits, receivables,

9               insurance policies, lines of credit, cash, trusts (including asset

10               protection trusts), lists of consumer names and reserve funds or

11               any other accounts associated with any payments processed by,

12               or on behalf of, any Corporate Defendants.

13      D.    As previously ordered on February 24, 2025 [ECF 82], Individual

14 Defendants are ordered to cooperate fully with the Receiver in connection with the

15 Receiver's efforts to liquidate the real property located at and commonly known as

16 2010 Linden Ave., Venice, California 90291 [APN 4241-030-027] ("Linden 2").  If

17 the Receiver provides written notice to Individual Defendants that he will not

18 liquidate Linden 2, Individual Defendants are ordered to take all necessary steps to

19 liquidate Linden 2, whether through an arms-length sale at their own expense or by

20 allowing a foreclosure action to proceed.  Individual Defendants are ordered to

21 initiate such steps with 7 days of receiving such notice.  Time is of the essence for

22 such liquidation.  Individual Defendants are ordered to pay to the Commission all

23 proceeds due to them from such liquidation by electronic fund transfer in accordance

24 with instructions to be provided by a representative of the Commission.  Individual

25 Defendants are ordered to forward to the Commission all documentation of such

26 liquidation in accordance with instructions to be provided by a representative of the

27

28

1   Commission. For clarity, this subsection is in addition to and not in lieu of any prior

2   court order regarding Linden 2.

3        E.    Immediately upon entry of this Order, Individual Defendants are

4   ordered to surrender to the FTC all control, title, dominion, and interest each has to

5   the assets in the accounts identified in Subsection F, below.

6        F.    The following entities, within 7 days of entry of this Order, are ordered

7   to transfer to the Commission frozen funds that they hold in accounts pursuant to the

8   Asset Freeze:

9           1.    Bank of America, N.A. is ordered to transfer the following:

10              a.    Account ending in 1470 in the name of Grand B

11                     Investments LLC;

12              b.    Account ending in 1496 in the name of Essence & Mar

13                     LLC;

14              c.    Account ending in 1519 in the name of Sir Buster Inc.;

15           2.    Apex Fintech Solutions is ordered to transfer all funds in the

16               name of William Basta, including all funds held in accounts

17               ending in 27602 and 35440;

18           3.    Choice Bank, N.A. and/or Mercury Technologies Inc. is ordered

19               to transfer all funds in the name of:

20              a.    89CLTV, including funds held in the accounts ending in

21                     1677;

22               b.    Bunnie M Inc., including accounts held in the account

23                     ending in 8708;

24               c.    Grand B Investments LLC, including funds held in the

25                     account ending in 5216;

26               d.    JeTu Wholesale, including funds held in the account

27                     ending in 3908;

28

e.    Lodge Store LLC, including funds held in the account ending in 6935; and

f.    Sir Buster Inc. (dba 89 Collective), including funds held in the account ending in 3996.

4.    Crypto.com is ordered to transfer all funds in the name of William Basta, including funds held in the account ending in 6309853.

5.    Metropolitan Commercial Bank and/or Revolut Technologies Inc. is ordered to transfer all funds in the name of:

a.    William Basta, including all funds held in the account ending in 5097; and

b.    Jeremy Leung, including all funds held in the account ending in 6920.

6.    Middlesex Federal Savings, F.A. is ordered to transfer all funds in the name of Grand B Investments LLC, including funds held in the account ending in 3919.

7.    Navy Federal Credit Union is ordered to transfer all funds in the name of:

a.    William Basta, including funds held in the accounts ending in 1308 and 6861; and

b.    Jeremy Leung, including funds held in the accounts ending in 0837 and 4616.

8.    Payoneer Inc. is ordered to transfer all funds in the name of Bunnie Management Fzco, including all funds in the account ending in 5355.

9.    PayPal, Inc. is ordered to transfer all funds in the name of Jeremy Leung, including all funds in the account ending in 5575.

The payments and transfers ordered in this subsection must be made by electronic fund transfer in accordance with instructions to be provided by a representative of the Commission.

G.   To the extent they are not already in the possession of the Receiver, Defendants shall deliver the assets identified in Subsection C above to the Receiver's possession within 7 days of the entry of this Order.  Except for the lists of consumer names and customer information identified in Section VI below, the Receiver shall, as soon as practicable, commence the sale of the unliquidated assets identified in Subsection C above and surrendered pursuant to this Order using a commercially reasonable procedure. The Receiver shall hold the surrendered assets, and the proceeds from the sale of the unliquidated assets, for future transfer in accordance with further instructions from the Court.

H.   Upon the completion of all payments and transfers specified in Subsections B, C, D, E, and F above, the remainder of the judgment is suspended as to Individual Defendants, subject to Subsections I-K, below.

I.   The Commission's agreement to the suspension of part of the judgment is expressly premised upon the truthfulness, accuracy, and completeness of Defendants' sworn financial statements and related Documents (collectively, "financial representations") submitted to the Commission, namely:

      1.   the deposition of Jeremy Leung taken on October 7, 2024;

      2.   the deposition of William Basta taken on October 16, 2024;

      3.   the information and documentation sent by Defendants' counsel to Commission Counsel on October 3, 2024, in a folder entitled "Production 3," including the documents in a subfolder entitled "Basta Taxes" and identified as follows:

      4.   1040 2021 Basta, William;

      5.   1040 2022 Basta;

6.    1040_2021 ASCEND_ADMIN_Basta;

7.    1040_2021_HelloJoy_Inc_Basta;

8.    201912_Wage and Income_BAST_1009333427774 (1);

9.    202012_Wage and Income_BAST_100933345086 (1);

10.    US_W-2_7757616923746861;

11.    W2 2022 Basta;

12.    W2 2023 Basta, William;

13.    W2; and

14.    W2_2021_RIPPLING PEO1 Basta;

15.    the information and documentation sent by Defendants' counsel to Commission Counsel on October 3, 2024, in a folder entitled "Production 3," including the documents in a subfolder entitled "Leung Taxes" and identified as follows:

    a.    1040 2021 Leung, Jeremy;

    b.    US_W-2_7757616924608196 (1);

    c.    US_W-2_7757616924608196;

16.    the information and documentation sent by Defendants' counsel to Commission Counsel on October 3, 2024, in a folder entitled "Production 3," including the documents in a subfolder entitled "Ascend Administration" and identified as follows:

    a.    1120 2022 Ascend Admin;

    b.    1120 2023 Ascend Administration, Inc; and

    c.    1120_2021_FYE12.31    Ascend    Administration Inc_5.25.2022;

17.    the information and documentation sent by email from Defendants' counsel to Commission Counsel on October 11,

2024, in a folder entitled "Ascend Production 4 (SENT 10.11.24)," including the documents identified as follows:

    a.    Attachment A to Discl. of W. Basta (DATED 10.11.24);

    b.    J. Leung Individual Disclosures (DATED 10.10.24);

    c.    Attachment A to Discl. of J. Leung (DATED 10.11.24);

    d.    Account Transcript 2022 Leung;

    e.    Special Group Banking Information Re Brooks Ave Deposit;

    f.    W2 2022 Leung;

    g.    Wage and Income Transcript 2022 Leung; and

    h.    Wage and Income Transcript Unmasked 2022 Leung;

    i.    Corporate Financial Form - Ascend Administration Inc. (DATED 10.11.24);

    j.    Attachment A to Corp Form – Ascend Administration Inc. (DATED 10.11.24);

    k.    Corporate Financial Form - Ascend Capventures Inc. (DATED 10.11.24);

    l.    Corporate Financial Form - Ascend Distribution Inc. (DATED 10.11.24);

    m.    Corporate Financial Form - Ascend Ecom LLC (DATED 10.11.24); and

    n.    Corporate Financial Form - Ascend Ecommerce Inc. (DATED 10.11.24);

18.    the document entitled "Reprinted Basta Financial Disclosures (DATED 10.14.24)" sent by email from Defendants' counsel to Commission Counsel on October 14, 2024;

19.    the information and documentation regarding William Basta's student loan (entitled "Student Loan") submitted by email from Defendants' counsel to Commission counsel on October 18, 2024;

20.    the information and documentation submitted by email from Defendants' counsel to Commission counsel on October 30, 2024, in a folder entitled "Production 6," including subfolders containing the following documents:

   a.    "Basta – Loan Info" with documents "LOAN" and "statement loan";

   b.    "Leung – Commonwealth Bank" with documents "AccountStatement – 2024-09-12" and monthly statements for an account ending in 9514 with Commonwealth Bank of Australia from December 12, 2021 through June 12, 2024;

   c.    "Leung – Financial Account Records" and monthly statements for Navy Federal Credit Union accounts ending in 0837 and 4616 covering the period from February 28, 2022 to December 12, 2023; and

   d.    "Leung – Mashreq" and a statement for a saving account ending in 1100 with Mashreq Bank in the United Arab Emirates covering the period of January 4, 2024 to March 4, 2024;

21.    the financial statement executed by Jeremy Leung on October 23, 2024, described as "Leung Multi Co – Corporate Financial Forms," for Arturo LLC, Mr. Woof LLC, Scotch Enterprises, Wynton Enterprises, and Jaxon LLC, which was sent by email

1          from Defendants' counsel to Commission counsel on October 31,

2          2024;

3     22.   the document entitled "Decl of W. Basta re. TRO (SIGNED

4          11.11.24)" sent by email from Defendants' counsel to

5          Commission counsel on November 12, 2024;

6     23.   the document entitled "Decl of J. Leung re. TRO (FINAL

7          11.14.24)" sent by email from Defendants' counsel to

8          Commission counsel by email on November 15, 2024;

9     24.   the information and documents sent by email from Defendants'

10         counsel to Commission counsel on December 6, 2024, in a folder

11         entitled "ACV Production 10," including the documents

12         identified as follows:

13         a.    Supp. Decl. of J. Leung (DATED 12.6.24);

14         b.    Supp. Decl. of W. Basta (DATED 12.6.24);

15         c.    Leung Att C (DATED 12.6.24);

16         d.    Leung Att D (DATED 12.6.24);

17         e.    Basta Att C (DATED 126.24);

18         f.    Basta Att D (DATED 12.6.24);

19         g.    Ascend Administration Att C (DATED 12.6.24);

20         h.    Ascend Capventures Att C (DATED 12.6.24);

21         i.    Ascend Distribution Att C (DATED 12.6.24);

22         j.    Ascend Ecom Att C (DATED 12.6.24); and

23         k.    Ascend Ecommerce Att C (DATED 12.6.24); and

24    25.   the email from Defendants' Counsel to Commission Counsel

25         dated January 16, 2024;

26    26.   the email from Defendants' Counsel to Commission Counsel

27         dated February 14, 2025, including the attached statement from

28

17

1            Shellpoint to 89CLTV LLC dated January 19, 2025 for the account ending in 3285 relating to the Seminole Property;

27.    the email from Defendants' Counsel to Commission Counsel dated May 9, 2025, including the attached statement from Shellpoint to 89CLTV LLC dated April 18, 2025 for the account ending in 3285 relating to the Seminole Property;

28.    The declaration signed by Jeremy Leung on May 10, 2025, and filed by the Receiver as Docket No. 101-3; and

29.    The declaration signed by Jeremy Leung on June 6, 2025.

J.    The suspension of the judgment will be lifted as to any Defendant if, upon motion by the Commission, the Court finds that Defendant failed to disclose any material Asset, materially misstated the value of any Asset, or made any other material misstatement or omission in the financial representations identified above.

K.    If the suspension of the judgment is lifted, the judgment becomes immediately due as to that Defendant in the amount specified in Subsection A above (which the parties stipulate only for purposes of this Section represents the consumer injury alleged in the Complaint), less any payments previously made pursuant to this Section, plus interest computed from the date of entry of this Order.

## V.    ADDITIONAL MONETARY PROVISIONS

IT IS FURTHER ORDERED that:

A.    Defendants relinquish dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order and may not seek the return of any assets.

B.    The facts alleged in the Complaint will be taken as true, without further proof, in any subsequent civil litigation by or on behalf of the FTC, including in a proceeding to enforce its rights to any payment or monetary judgment pursuant to this Order, such as a nondischargeability complaint in any bankruptcy case.

C.    The facts alleged in the Complaint establish all elements necessary to sustain an action by the FTC pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and this Order will have collateral estoppel effect for such purposes.

D.    Each Defendant acknowledges that Defendant's Taxpayer Identification Numbers (Social Security Numbers or Employer Identification Numbers), which Defendants previously submitted to the Commission, may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. §7701.

E.    All money paid to the Commission or assets ultimately surrendered to the Commission pursuant to this Order (or any subsequent Court order issued in this matter) and further instructions from the Court may be deposited into a fund administered by the FTC or its designee on behalf of the FTC. This fund shall be used for equitable relief, including consumer redress and any attendant expenses for the administration of any redress fund.  If a representative of the FTC decides that direct redress to consumers is wholly or partially impracticable or money remains after redress is completed, the Commission may apply any remaining money for such relief (including consumer information remedies) as it determines to be reasonably related to Defendants' practices alleged in the Complaint.  Any money not used for relief shall be deposited to the U.S. Treasury.  Defendants have no right to challenge any actions the Commission or its representatives may take pursuant to this subsection.

F.    The asset freeze imposed by the December 3, 2024 Preliminary Injunction ECF No. 82] is modified to permit the payments and transfers identified in Section IV, Subsections B, C, D, E, and F, above.  Upon completion of those payments and transfers, the asset freeze as to Defendants is dissolved.

G.      Defendants must fully cooperate with the Commission and the Receiver as to the asset freeze and the Receivership. Defendants must take all steps reasonable or necessary to assist in the transfer or liquidation of each asset identified in the Section IV above. If requested to execute appropriate documents, such as to liquidate, transfer, or assign any frozen asset, Defendants must execute such documents within 3 days of a written request from a representative of the Commission or the Receiver.

## VI.    CUSTOMER INFORMATION

IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, employees, attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby permanently restrained and enjoined from:

A.      Failing to provide sufficient customer information to enable the FTC to efficiently administer consumer redress. Defendants represent that they have provided this redress information to the FTC. If a representative of the FTC requests in writing any information related to redress, Defendants must provide it, in the form prescribed by the FTC, within 14 days.

B.      Selling, renting, leasing, transferring, or otherwise disclosing the name, address, birth date, telephone number, email address, credit card number, bank account number, Social Security number, or other financial or identifying information of any person that any Defendant obtained in connection with any activity that pertains to the subject matter of this Order;

C.      Benefitting from or using the name, address, birth date, telephone number, email address, credit card number, bank account number, Social Security number, or other financial or identifying information of any person that any Defendant obtained in connection with any activity that pertains to the subject matter of this Order; and

D.     Failing to destroy such customer information in all forms in their possession, custody, or control within 30 days after receipt of written direction to do so from a representative of the FTC.

Provided, however, that Defendants may disclose such identifying information to a law enforcement agency, including the Plaintiff, as required by any law, regulation, or court order.

## VII.   RECEIVERSHIP TERMINATION

IT IS FURTHER ORDERED that:

A.     The Receivership remains in effect until it is terminated and the Receiver is discharged by further order of this Court.

B.     The Receiver must complete all duties within 180 days after entry of this Order, but any party or the Receiver may request that the Court extend that Receiver's term for good cause.

## VIII. RECEIVER'S FINAL REPORT AND DISBURSEMENTS

IT IS FURTHER ORDERED that:

A.     No later than 180 days from the date of the entry of this Order, the Receiver shall file and serve on the parties a report (the "Final Report") to the Court that details the steps taken to dissolve the Receivership Estate. The Final Report must include an accounting of the Receivership Estate's finances and total assets and a description of what other actions, if any, must be taken to wind down the Receivership.

B.     The Receiver shall mail copies of the Final Report to all known creditors of the Receivership Entities with a notice stating that any objections to paying any assets of the Receivership Entities to satisfy the Receiver's costs and expenses and the monetary judgment set forth in this Order must be submitted to the Court and served by mail upon the Receiver and the parties within twenty-eight (28) days of the mailing of the Final Report.

C.     No later than fourteen (14) days after submission of the Final Report, the Receiver shall file an application for payment of compensation and expenses associated with his performance of his duties as Receiver.

D.     The Court will review the Final Report and any objections to the report and, absent a valid objection, will issue an order directing that the Receiver:

    1.     Pay the reasonable costs and expenses of administering the Receivership, including compensation of the Receiver and the Receiver's personnel authorized by Section VIII of this Order or other orders of this Court and the actual out-of-pocket costs incurred by the Receiver in carrying out his duties;

    2.     Pay all remaining funds to the Commission or its designated agent to reduce the monetary judgment in Section IV.

E.     With Court approval, the Receiver may hold back funds for a specified period as a reserve to cover additional fees and costs related to actions to be addressed in a supplemental application. If the Receiver does not make a supplemental application for fees and expenses within the specified period, or if funds remain in the reserve funds after the payment of fees and expenses approved by the Court in response to such a supplemental application, all funds in the reserve funds shall be immediately paid to the Commission or its designated agents.

F.     Any and all uncollected judgments obtained for the benefit of the Corporate Defendants shall be assigned to the Commission for further collection efforts.

## IX.     ORDER ACKNOWLEDGEMENTS

IT IS FURTHER ORDERED that Defendants obtain acknowledgments of receipt of this Order:

22

A.      Each Defendant, within 7 days of entry of this Order, must submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.      For five (5) years after entry of this Order, Defendants William Basta and Jeremy Leung, for any business that such Defendant, individually or collectively with any other Defendants, is the majority owner or controls directly or indirectly, and each Corporate Defendant must deliver a copy of this Order to:  (1) all principals, partners, officers, directors, and LLC managers and members; (2) all employees, agents, and representatives who participate in conduct related to Business Coaching Programs and Business Opportunities; and (3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting. Delivery must occur within 7 days of entry of this Order for current personnel. For all others, delivery must occur before they assume their responsibilities.

C.      From each individual or entity to which a Defendant delivered a copy of this Order, that Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

## X.    COMPLIANCE REPORTING

IT IS FURTHER ORDERED that Defendants make timely submissions to the Commission:

A.      One year after entry of this Order, each Defendant must submit a compliance report, sworn under penalty of perjury:

1.      Each Defendant must:  (a) identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of the FTC may use to communicate with Defendant; (b) identify all of that Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the

activities of each business, including the goods and services offered, the means of advertising, marketing, and sales, and the involvement of any other Defendant (which Individual Defendants must describe if they know or should know due to their own involvement); (d) describe in detail whether and how that Defendant is in compliance with each Section of this Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the FTC.

2. Additionally, each Individual Defendant must: (a) identify all telephone numbers and all physical, postal, email and Internet addresses, including all residences; (b) identify all business activities, including any business for which such Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest; and (c) describe in detail such Defendant's involvement in each such business, including title, role, responsibilities, participation, authority, control, and any ownership.

B. For 10 years after entry of this Order, each Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

1. Each Defendant must report any change in: (a) any designated point of contact; or (b) the structure of any Corporate Defendant or any entity that Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including: creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

2.  Additionally, each Individual Defendant must report any change in: (a) name, including aliases or fictitious name, or residence address; or (b) title or role in any business activity, including any business for which such Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest, and identify the name, physical address, and any Internet address of the business or entity.

C.  Each Defendant must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against such Defendant within 14 days of its filing.

D.  Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on: _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E.  Unless otherwise directed by an FTC representative in writing, all submissions to the FTC pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580. The subject line must begin: FTC v. Ascend Capventures Inc., et al., X240047.

## XI. RECORDKEEPING

IT IS FURTHER ORDERED that Defendants must create certain records for 10 years after entry of the Order, and retain each such record for 5 years. Specifically, Corporate Defendants and each Individual Defendant for any business that such

Defendant, individually or collectively with any other Defendants, is a majority owner or controls directly or indirectly, must create and retain the following records:

A.    Accounting records showing the revenues from all goods or services sold;

B.    Personnel records showing, for each person providing services, whether as an employee or otherwise, that person's:  name; addresses; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

C.    Records of all consumer complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response;

D.    A copy of each unique advertisement or other marketing material; and

E.    All records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the FTC.

## XII.   COMPLIANCE MONITORING

IT IS FURTHER ORDERED that, for the purpose of monitoring Defendants' compliance with this Order, including the financial representations upon which part of the judgment was suspended and any failure to transfer any assets as required by this Order:

A.    Within 14 days of receipt of a written request from a representative of the FTC, each Defendant must:  submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying.  The FTC is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including depositions by remote means), 31, 33, 34, 36, 45, and 69.

B.    For matters concerning this Order, the FTC is authorized to communicate directly with each Defendant. Defendants must permit representatives of the FTC to interview any employee or other person affiliated with any Defendant

1  who has agreed to such an interview. The person interviewed may have counsel

2  present.

3        C.    The FTC may use all other lawful means, including posing, through

4  their representatives, as consumers, suppliers, or other individuals or entities, to

5  Defendants or any individual or entity affiliated with Defendants, without the

6  necessity of identification or prior notice. Nothing in this Order limits the FTC's

7  lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15

8  U.S.C. §§ 49, 57b-1.

9        D.    Upon written request from a representative of the FTC, any consumer

10  reporting agency must furnish consumer reports concerning Individual Defendants,

11  pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. §1681b(a)(1).

12                 **XIII.  RETENTION OF JURISDICTION**

13        IT IS FURTHER ORDERED that this Court retains jurisdiction of this matter

14  for purposes of construction, modification, and enforcement of this Order.

15        **IT IS SO ORDERED.**

16

17  Dated: August 11, 2025

18                    HON. SHERILYN PEACE GARNETT

19                    UNITED STATES DISTRICT JUDGE

20

21

22

23

24

25

26

27

28