JOSHUA A. DEL CASTILLO (BAR NO. 239015)
MATTHEW D. PHAM (BAR NO. 287704)
ALPHAMORLAI L. KEBEH (BAR NO. 336798)
ALLEN MATKINS LECK GAMBLE
   MALLORY & NATSIS LLP
865 South Figueroa Street, Suite 2800
Los Angeles, California 90017-2543
Phone:  (213) 622-5555
Fax:  (213) 620-8816
E-Mail:  jdelcastillo@allenmatkins.com
         mpham@allenmatkins.com
         mkebeh@allenmatkins.com

Attorneys for Receiver
STEPHEN J. DONELL

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>ASCEND CAPVENTURES INC., et al.,<br><br>Defendants. | Case No. 2:24-CV-07660-SPG-JPR<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF RECEIVER, STEPHEN J. DONELL, FOR ORDER:<br>(1) APPROVING FINAL REPORT AND ACCOUNTING;<br>(2) AUTHORIZING PAYMENT OF FINAL FEE APPLICATION OF RECEIVER AND PROFESSIONALS;<br>(3) ESTABLISHING RESERVE FOR CLOSING RECEIVERSHIP;<br>(4) AUTHORIZING TRANSFER OF RECEIVERSHIP ASSETS TO PLAINTIFF FEDERAL TRADE COMMISSION; (5) AUTHORIZING ABANDONMENT OR DESTRUCTION OF RECORDS; AND<br>(6) CLOSING RECEIVERSHIP AND DISCHARGING AND RELEASING RECEIVER**<br><br>[Notice of Motion and Motion; Declaration of Stephen J. Donell; Final Report and Accounting; Final Fee Application; and [Proposed] Order submitted concurrently herewith]<br><br>Date:  February 25, 2026<br>Time:  1:30 p.m.<br>Ctrm:  5C<br>Judge Hon. Sherilyn Peace Garnett |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................5

II. RELEVANT FACTUAL BACKGROUND .......................................................7

III. RECOMMENDED CLOSING AND DISCHARGE PROCEDURES ..........................................................................................................10

    A. Receivership Wind-Down And Final Closing Tasks ..........................10

        1. Approval of the Receiver's Final Report and Accounting ..........................................................................................10

        2. Payment of Fees and Expenses of Receiver and his Professionals ..............................................................................10

        3. Transmittal of the Remittance to the FTC ...............................11

        4. Establishment of the Reserve .....................................................11

        5. Abandonment or Destruction of Records ................................12

        6. Completing Outstanding Closing Tasks for the Receivership and Discharging and Releasing Receiver ........................................................................................12

IV. ARGUMENT ......................................................................................................12

    A. The Proposed Final Closing Tasks Should Be Authorized And The Receiver Discharged And Released .....................................12

    B. The Final Fee Application Is Reasonable And Appropriate, And Payment Of All Outstanding Fees and Expenses Should Be Authorized At This Time .................................14

        1. The Fees and Expenses Requested in the Final Fee Application are Reasonable ......................................................15

        2. The Applicants Are Highly Experienced Practitioners And Their Hourly Rates Are Appropriate ................................................................................17

        3. The Fees and Expenses Requested in the Final Fee Application Have Been Submitted to the FTC for Review and Comment, Without Opposition ...........................18

        4. The Receiver should Be Authorized to Pay all Approved Fees from Cash On-Hand .......................................19

V. CONCLUSION ..................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bennett v. Williams*,
 892 F.2d 822 (9th Cir. 1989) .................................................................................. 13

*CFTC v. Topworth Int'l*,
 205 F.3d 1107 (9th Cir. 1999) ................................................................................ 13

*Drilling & Expl. Corp. v. Webster*,
 69 F.2d 416 (9th Cir. 1934) .................................................................................... 15

*Fed. Trade Comm'n v. E.M. Sys. & Servs., LLC*,
 2018 WL 1801214 (M.D. Fla. Jan. 22, 2018) ........................................................ 14

*Fed. Trade Comm'n v. GDP Network LLC*,
 2022 WL 17851632 (M.D. Fla. Sept. 26, 2022) .................................................... 15

*Finn v. Childs Co.*,
 181 F.2d 431 (2d Cir. 1950) ................................................................................... 18

*Fleet Nat'l Bank v. H&D Entm't*,
 926 F.Supp. 226 (D. Mass. 1996) .......................................................................... 13

*Gaskill v. Gordon*,
 27 F.3d 248 (7th Cir. 1994) .................................................................................... 14

*In re Phila. & Reading Coal & Iron Co.*,
 61 F. Supp. 120 (E.D. Pa. 1945) ...................................................................... 18, 19

*In re Thinking Machs. Corp.*,
 182 B.R. 365 (D. Mass. 1995),
 rev'd on other grounds, 67 F.3d 1021 (1st Cir. 1995) ........................................... 13

*Quilling v. Trade Partners, Inc.*,
 572 F.3d 293 (6th Cir. 2009) .................................................................................. 15

*San Vicente Med. Partners, Ltd. v. Orr (In re San Vicente Med. Partners, Ltd.)*,
 962 F.2d 1402 (9th Cir. 1992) ................................................................................ 15

*SEC v. Am. Capital Invs.*,
 98 F.3d 1133 (9th Cir. 1996) .................................................................................. 13

*SEC v. Basic Energy & Affiliated Res.*, 273
 F.3d 657 (6th Cir. 2001) ........................................................................................ 12

*SEC v. Byers*,
 590 F.Supp.2d 637 (S.D.N.Y. 2008) ................................................................ 14, 15

*SEC v. Elliott*,
 953 F.2d 1560 (11th Cir. 1992) ........................................................................ 12, 15

|   |   | **Page(s)** |
|---|---|---|

*SEC v. Fifth Ave. Coach Lines, Inc.*,
　364 F. Supp. 1220 (S.D.N.Y. 1973) ..................................................... 16, 18

*SEC v. Forex Asset Mgmt., LLC*,
　242 F.3d 325 (5th Cir. 2001) ................................................................... 12

*SEC v. Hardy*,
　803 F.2d 1034 (9th Cir. 1986) ................................................................. 12

*SEC v. Health Maint. Ctrs., Inc.*,
　2002 WL 34388014 (W.D. Wash. 2002) ................................................ 13

*SEC v. Wang*,
　944 F.2d 80 (2d Cir. 1991) ...................................................................... 12

*Sw. Media, Inc. v. Rau*,
　708 F.2d 419 (9th Cir. 1983) ............................................................. 13, 16

*U.S. Tr. v. Tamm (In re Hokulani Square, Inc.)*,
　460 B.R. 763 (B.A.P. 9th Cir. 2011) ....................................................... 16

**Treatises**

2 Clark, Ralph Ewing, *A Treatise on the Law and Practice of Receivers*,
　§ 637 (3d ed. Rev. 1992) .......................................................................... 14

LAW OFFICES
Allen Matkins Leck Gamble Mallory & Natsis LLP

4917-6145-3189.2                         -4-

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION.

Stephen J. Donell (the "Receiver") was appointed as the receiver for defendants Ascend Capventures Inc., Ascend Ecom LLC, ACV, ACV Partners, Accelerated Ecommerce Ventures; Ascend Distribution LLC (California), Ethix Capital, ACV Nexus, Ascend Ecommerce Inc., Ascend Administration Inc., Ascend Distribution LLC (Texas), and their collective dbas, subsidiaries, and affiliates, including Global Marketing Development, Inc., Eaglemont Capital, Paradyme Capital Inc., and AC Ventures Global Inc. (collectively, the "Receivership Entities" or "Entities") pursuant to this Court's September 13, 2024 *Order on Plaintiff's Ex Parte Application For (1) Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue; (2) Waiver of Notice Requirement; (3) Appointment of a Temporary Receiver, Freezing of Assets; and other Equitable Relief* (the "Initial Appointment Order") [ECF No. 30], as reaffirmed by the Court's December 3, 2024 *Order Granting Stipulation for Court to Enter Preliminary Injunction* (the "Preliminary Injunction") [ECF No. 82].

Pursuant to the Initial Appointment Order, Preliminary Injunction, the Court's subsequent orders regarding the Receiver's administration of the estate of the Receivership Entities (the "Estate"), and law governing federal equity receivers, the Receiver's most significant responsibilities during the pendency of the instant receivership included:

1. Obtaining records relevant to the business and financial activities of the Receivership Entities and their personnel, and performing an accounting of the Receivership Entities' financial activities and condition;

2. Assuming control and authority over the Entities' assets (the "Receivership Assets" or "Assets");

3. Investigating, locating, and recovering Receivership Assets, including Assets unlawfully diverted to or for the benefit of third parties;

4. Marshaling and monetizing available Receivership Assets to maximize their value for the benefit and administration of the Estate;

5. Engaging with allegedly injured consumers and mitigating future harm arising from or in connection with the operations of the Receivership Entities; and

6. Preparing periodic updates and reports to the Court regarding his efforts and the status of the receivership.

The specific tasks undertaken by and accomplishments of the Receiver, some of which are addressed herein, are presented in more detail in the Receiver's concurrently submitted *Final Report and Accounting of Receiver, Stephen J. Donell* (the "Final Report"). For the purposes of this Motion, and by way of summary, the Receiver believes he has diligently and appropriately discharged those duties and obligations assigned to him by the Court. As of the date of this Motion, the Receiver believes that he has, with the assistance of his professionals, including lead receivership counsel, Allen Matkins Leck Gamble Mallory & Natsis, LLP ("Allen Matkins"), satisfied his responsibilities to the fullest extent possible.

As detailed further herein, and in the Final Report, the Receiver has determined that it is now appropriate to bring the instant receivership to a close, pay outstanding fees and costs, and discharge and release the Receiver. The Receiver therefore respectfully requests that this Court enter an Order: (1) approving the Receiver's Final Report and the actions taken by the Receiver during the pendency of his appointment; (2) authorizing the payment of the fees and expenses presented in the Receiver's and his professionals' concurrently submitted *Final Application for Payment of Fees and Reimbursement of Expenses of Receiver, Stephen J. Donell, and his Professionals* (the "Final Fee Application"); (3) authorizing the Receiver to establish and set aside a reserve in the amount of not more than $13,000 (the "Reserve") to cover the anticipated fees and expenses associated with winding down and terminating the receivership; (4) authorizing the Receiver to transfer all Estate funds remaining after the payment of administrative fees and costs (the

"Remittance") to the plaintiff Federal Trade Commission (the "FTC");

(5) authorizing the Receiver to abandon or destroy, as appropriate, all Receivership Entity records in his possession, within 91 days after his discharge as receiver; and (6) authorizing the Receiver to undertake and complete those tasks necessary to wind-down and close the receivership, as detailed further below, and thereafter discharging and releasing the Receiver.

As is customary in similar federal receivership matters, the Receiver will submit a Declaration to the Court certifying the completion of all closing tasks described herein (the "Final Declaration"), and respectfully requests that the receivership be deemed terminated, without further Court order, upon the Receiver's submission of the Final Declaration.

## II. RELEVANT FACTUAL BACKGROUND.

A full recitation of the procedural history of this matter is unnecessary for the purposes of this Motion, particularly given that the Receiver's Final Report, which summarizes the Receiver's actions during the pendency of this matter in greater detail, has been submitted concurrently herewith. The facts relevant to the Motion are as follows:

On September 9, 2024, the FTC filed a complaint against numerous entity and individual defendants, commencing the above-captioned civil action. *See* ECF No. 1. The FTC's complaint alleged that the defendants engaged in a fraudulent scheme to lure consumers into investing large sums in purported e-commerce business opportunities, using false promises of substantial passive income from online stores administered by the defendants. (*See id.*) On the basis of their allegations, the FTC petitioned this Court for injunctive relief, and for the appointment of a receiver to assume authority and control over the entity defendants. (*See* ECF Nos. 4, 5.)

On September 13, 2024, the Court entered the Initial Appointment Order. *See* ECF No. 30. The Receiver's authority under the Initial Appointment Order was

extended by subsequent orders of this Court;[1] critically including the Court's December 3, 2024 Preliminary Injunction, which reaffirmed the Receiver's duties and authority. Pursuant to the terms of the Initial Appointment Order and Preliminary Injunction, the Receiver was charged with, among other things, assuming control of the Receivership Entities, marshaling Receivership Assets, performing an analysis and accounting relating to the business and financial activities of the Receivership Entities, preparing reports for the Court, and otherwise administering the Receivership Entities. (*Id.*)

Since his appointment, the Receiver has administered the Estate and all identified Receivership Assets in accordance with this Court's instructions, including specifically: (1) marshaling, preserving, and liquidating Receivership Assets; (2) mitigating ongoing consumer harm and preventing improper consumer solicitations from third parties apparently associated with the Individual Defendants (as defined in the Preliminary Injunction) or the Receivership Entities; (3) obtaining documents critical to the Receiver's investigation via formal and informal document requests, including via the issuance of numerous subpoenas; (4) performing an accounting and analysis of the Receivership Entities' operations (or lack thereof), financial activities, and condition; and (5) preparing periodic reports to this Court. (*See* concurrently filed Declaration of Stephen J. Donell ["Donell Decl."] ¶ 3.) The specific actions undertaken during the course of the Receiver's appointment have been detailed in the Receiver's interim reports, one supplemental report, and the concurrently submitted Final Report. By way of short summary, the Receiver's most significant efforts and achievements included:

- Substantially confirming some of the FTC's allegations regarding the alleged consumer fraud operated through the Entities, and determining that the Entities could not continue as a viable going concern;

---

[1]   *See* ECF Nos. 42, 55, 70.

- Completing an extensive document recovery and review process, resulting in the recovery of tens of thousands of pages of documents, and undertaking a review of such documents in order to complete an appropriate analysis and accounting;

- Identifying and designating four (4) additional Receivership Entities, Global Marketing Development, Inc., Eaglemont Capital, Paradyme Capital Inc., and AC Ventures Global Inc., which were associated with the Entities and to which millions in Estate Assets were diverted;

- Taking possession of Receivership Assets, including hundreds of thousands of dollars in escrowed funds relating to the Individual Defendants' unauthorized, post-receivership sale of a real property Asset, and ultimately overseeing the sale of another real property Asset purchased with funds diverted from the Entities; and

- Issuing cease-and-desist letters and otherwise deterring unidentified third-parties and apparent Entity affiliates from soliciting payments from consumers to perpetuate the Entities' deceptive marketing scheme, and notifying consumers of the impropriety of such solicitations.

The Receiver, having recently administered the two remaining real properties subject to his authority and control, has determined, in his reasonable business judgment, that he has exhausted all appropriate and reasonable efforts to recover and monetize those Estate Assets which could justifiably be pursued given the cost-benefit calculus applicable to the Receiver's efforts. Accordingly, the Receiver respectfully recommends that the receivership be wound down and terminated, and the Receiver discharged and released.

## III. RECOMMENDED CLOSING AND DISCHARGE PROCEDURES.

### A. Receivership Wind-Down And Final Closing Tasks.

By this Motion, the Receiver respectfully requests Court approval of, and authorization to complete, the final closing tasks detailed below in connection with closing the instant receivership and securing the Receiver's discharge and release:

#### 1. Approval of the Receiver's Final Report and Accounting.

The Receiver's Final Report has been submitted to this Court concurrently with this Motion. The Final Report details the efforts undertaken by the Receiver during the pendency of the receivership, including his document review and analysis, accounting, Asset preservation and recovery, and reporting to this Court. The Receiver's final accounting, appended to the Final Report as **Exhibit 1**, reflects the Estate's receipts and disbursements through November 30, 2025. The Receiver respectfully requests that the Court approve his Final Report and the final accounting appended thereto.

#### 2. Payment of Fees and Expenses of Receiver and his Professionals.

Concurrently with this Motion, the Receiver, Allen Matkins, his forensic accounting firm, SLBiggs, a division of Singer Lewak ("SLBiggs"), and his local Texas counsel Ross & Smith, PC ("RS", and collectively with Allen Matkins, SLBiggs, and the Receiver, the "Applicants") have submitted their collective Final Fee Application, requesting approval of fees earned and costs incurred by the Applicants during the period from November 1, 2024 through November 30, 2025. The total amount requested in the Final Fee Application is $508,457.61, and includes the application of an additional 5% discount from all (already discounted) fees, arrived at in coordination with and at the behest of the FTC. Detailed narrative summaries of and billing invoices for the work performed by the Applicants are set forth in the Final Fee Application. The Receiver requests authorization to pay the Applicants out of the Assets presently on hand.

### 3. Transmittal of the Remittance to the FTC.

Based on his discussions with the FTC regarding the best means of making recovered funds available for equitable relief, the Receiver has concluded that the most cost-effective method of ensuring that recovered Assets are optimally deployed is to turn over the Assets to the FTC concurrent with the wind-down and termination of the receivership. In the Receiver's reasonable business judgment, and under the facts of this case, such a course of action would be superior, on a cost-benefit basis, to the alternative of a Receiver-administered claims and distribution process, with its attendant additional expense.[2]

Therefore, the Receiver respectfully requests that the Court authorize him to transfer the Remittance, reflecting all Receivership Assets, less the fees and expenses requested in the Final Fee Application, and less the Reserve, to the FTC, in accordance with whatever turnover instructions they may provide. At present, the Receiver estimates that the Remittance will be in an amount no less than $50,000.

### 4. Establishment of the Reserve.

The Receiver, Allen Matkins, and SLBiggs will have incurred additional fees and expenses beyond those requested in the Final Fee Application, after November 30, 2025 and through the end of the receivership, as they attend to the wind-down tasks necessary to bring the receivership to a close after the submission of the instant Motion, Final Report, and Final Application. The Receiver recommends that the Court authorize him to set aside an amount not to exceed $13,000 (again, the "Reserve") to cover such fees and expenses, to be paid without further order of the Court. Of course, the Receiver, Allen Matkins, and SLBiggs will endeavor to minimize their respective fees and expenses and, any portion of the Reserve remaining after all closing tasks have been completed will be turned over to

---

[2] In the Receiver's reasonable business judgment, the Estate can ill afford the expense and delay associated with a receiver-administered claims process.

the FTC, as part of the Remittance, in accordance with whatever turnover instructions the FTC ultimately provides the Receiver.

### 5. Abandonment or Destruction of Records.

The Receiver is in possession of records obtained during his administration of the Estate, either at the outset of the receivership or recovered from third parties during his investigation into the affairs of the Receivership Entities, some of which are maintained in paper form. Many of these documents contain personal financial information, or other sensitive information. Accordingly, the Receiver proposes that, within 91 days after the entry of an order granting this Motion, the Receiver be authorized to destroy any documents containing private information, and further that he be authorized to abandon or destroy the balance of the records in his possession relating to the Receivership Entities and the present receivership.

### 6. Completing Outstanding Closing Tasks for the Receivership and Discharging and Releasing Receiver.

The Receiver respectfully requests that, once he has completed the above-identified closing tasks, this Court thereafter close the present receivership case and discharge and release the Receiver, effective upon the Receiver's submission of the Final Declaration.

## IV. ARGUMENT.

### A. The Proposed Final Closing Tasks Should Be Authorized And The Receiver Discharged And Released.

A court's power to administer an equity receivership is extremely broad. *SEC v. Hardy*, 803 F.2d 1034, 1037 (9th Cir. 1986); *SEC v. Forex Asset Mgmt., LLC*, 242 F.3d 325, 331 (5th Cir. 2001); *SEC v. Basic Energy & Affiliated Res.*, 273 F.3d 657, 668 (6th Cir. 2001); *SEC v. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992); *SEC v. Wang*, 944 F.2d 80, 85 (2d Cir. 1991). In the absence of controlling authority, and where applicable, district courts supervising equity receiverships routinely look to bankruptcy law for guidance. *SEC v. Am. Capital Invs.*, 98 F.3d 1133, 1140 (9th

Cir. 1996); *CFTC v. Topworth Int'l*, 205 F.3d 1107, 1116 (9th Cir. 1999) (Central District local rules, for instance, "direct receivers, unless otherwise ordered … to 'administer the estate as nearly as possible in accordance with … the administration of estates in bankruptcy.'"); *Fleet Nat'l Bank v. H&D Entm't*, 926 F.Supp. 226, 240 n. 56 (D. Mass. 1996) ("[W]hat is permitted under the Bankruptcy Code, generally is, *a fortiori*, permissible under receivership law.").

In the fiduciary estate administration context, courts are deferential to the business judgment of bankruptcy trustees, receivers, and similar estate custodians. *See, e.g., Bennett v. Williams*, 892 F.2d 822, 824 (9th Cir. 1989) ("[W]e are deferential to the business management decisions of a bankruptcy trustee."); *Sw. Media, Inc. v. Rau*, 708 F.2d 419, 425 (9th Cir. 1983) ("The decision concerning the form of … [estate administration] … rested with the business judgment of the trustee."); *see also SEC v. Health Maint. Ctrs., Inc.*, 2002 WL 34388014 (W.D. Wash. 2002) (Equating bankruptcy trustees with receivers and finding that "the courts have overwhelmingly applied a 'business judgment' test" to estate administration.); *In re Thinking Machs. Corp.*, 182 B.R. 365, 368 (D. Mass. 1995) ("The application of the business judgment rule … and the high degree of deference usually afforded purely economic decisions of trustees, makes court refusal unlikely.") (rev'd on other grounds, 67 F.3d 1021 (1st Cir. 1995)).

As reported herein and in the concurrently submitted Final Report, the Receiver has made all reasonable and necessary efforts to recover, review, and analyze Receivership Entity business records, provide an accounting of the Receivership Entities' financial activities, recover available Receivership Assets, and monetize such assets so as to create a pool of funds for the administration of the Estate. The Receiver's conclusion that it is now appropriate to close the receivership and discharge and release the Receiver has only been reached after a number of successful Asset recovery efforts and a comprehensive investigation of the operational and financial activities of the Receivership Entities and subsequent

reporting.  The Receiver's recommendation that the receivership should now be wound down and the Receiver discharged and released should be afforded great deference ordinarily accorded to the business judgment of bankruptcy trustees, receivers, and similar estate custodians.

### B. The Final Fee Application Is Reasonable And Appropriate, And Payment Of All Outstanding Fees and Expenses Should Be Authorized At This Time.

It is a fundamental principle of receivership law that the administrative and professional fees and expenses of a receiver and his supporting professionals constitute priority expenses for which compensation should be paid from the assets of the receivership.  As reflected in the leading treatise, *Clark on Receivers*:

> The obligations and expense which the court creates in its administration of the [receivership estate] are necessarily burdens on the [estate] … The appointing court pledges its good faith that all duly authorized obligations incurred during the receivership shall be paid.

2 Clark, Ralph Ewing, *A Treatise on the Law and Practice of Receivers* § 637, p. 1052 (3d ed. Rev. 1992).

Put another way, "[a]s a general rule, the expenses and fees of a receivership are a charge upon the property administered[,]" and, where "a receiver reasonably and diligently discharges his duties, he is entitled to compensation." *Gaskill v. Gordon*, 27 F.3d 248, 25, 2531 (7th Cir. 1994); *see also SEC v. Byers*, 590 F.Supp.2d 637, 644 (S.D.N.Y. 2008) ("A receiver appointed by a court who reasonably and diligently discharges his duties is entitled to be fairly compensated for services rendered[.]").  Moreover, full allowance of such compensation is warranted even where the fees and expenses comprise a significant portion of the estate's assets.  *See Fed. Trade Comm'n v. E.M. Sys. & Servs., LLC*, 2018 WL 1801214, at *4 n.1 (M.D. Fla. Jan. 22, 2018) (approving the full amount

of fees and expenses requested by the receiver and his professionals as reasonable notwithstanding that such fees exceeded the value of assets in the estate); *see also Fed. Trade Comm'n v. GDP Network LLC*, 2022 WL 17851632 (M.D. Fla. Sept. 26, 2022). The fees and expenses of a receivership include the fees and expenses incurred by the receiver, in addition to those fees and expenses incurred by the receiver's professionals in rendering services to the receiver. *See Drilling & Expl. Corp. v. Webster*, 69 F.2d 416, 418 (9th Cir. 1934). Decisions regarding the amount and timing of an award of receivership fees and expenses are committed to the sound discretion of the district court. *See SEC v. Elliott*, 953 F.2d 1560, 1577 (11th Cir. 1992). While a district court has "broad powers and wide discretion in crafting relief," including in "distributing receivership assets" (*Quilling v. Trade Partners, Inc.*, 572 F.3d 293, 301 (6th Cir. 2009)), because of the nature of the services provided by a receiver and his professionals, the benefit a receiver confers upon a given estate cannot be determined solely on the basis of the increase or decrease in value of property in the receiver's possession. *Elliott*, 953 F.2d at 1577 ("[I]t is sometimes difficult to ascertain what type of benefits a receiver has bestowed … Even though a receiver may not have increased, or prevented a decrease in, the value of the collateral, if a receiver reasonably and diligently discharges his duties, he is entitled to compensation.") (citations omitted); *Byers*, 590 F.Supp.2d at 644 ("While the results obtained by a receiver clearly are important, the benefits to a receivership estate may take 'more subtle forms than a bare increase in monetary value'") (citations omitted).

    1. <u>The Fees and Expenses Requested in the Final Fee Application are Reasonable.</u>

The fees of a receiver and his professionals must be reasonable. (*See San Vicente Med. Partners, Ltd. v. Orr (In re San Vicente Med. Partners, Ltd.)*, 962 F.2d 1402, 1409 (9th Cir. 1992).) In determining the reasonableness of the fees requested in connection with a receivership, a court should consider the time records

presented, the quality of the work performed, the complexity of the problems faced, and the benefit of the services rendered to the receivership estate.  (*See SEC v. Fifth Ave. Coach Lines, Inc.*, 364 F. Supp. 1220, 1222 (S.D.N.Y. 1973).)  In a practical sense, once it has determined that an applicant's services were reasonable, the court simply multiplies the number of hours expended by the applicant's hourly rate.  (*Cf. Sw. Media, Inc. v. Rau*, 708 F.2d 419, 427 (9th Cir. 1983) (Bankruptcy Act case), *superseded in part by statute*, Bankruptcy Reform Act of 1978, Pub. L. No. 95-598, 92 Stat. 2549, *as recognized in U.S. Tr. v. Tamm (In re Hokulani Square, Inc.)*, 460 B.R. 763 (B.A.P. 9th Cir. 2011).)

Here, the Final Fee Application describes the nature of the services that have been rendered by the Applicants and, where appropriate, the identity and billing rate of the individual performing each specific task.  To properly contextualize the Applicants' request, the Final Fee Application covers approximately a year's worth of work,[3] whereas the Receiver's first fee application in this matter spanned roughly six weeks.

On a simple *pro rata*, month-to-month comparison, the average monthly fees reflected here (approximately $39,112/month over thirteen months) are approximately 20% of the average monthly fees reflected in the *Amended First Interim Application for Payment of Fees of Receiver, Stephen J. Donell, and His Professionals* [ECF No. 93-1 *et seq.*] (the "First Amended Fee Application") (approximately $191,700/month).  The Applicants have endeavored to staff matters as efficiently as possible in light of the level of experience required and the

---

[3]  The Receiver and his professionals originally intended to submit at least one additional interim application in late 2025.  However, the Receiver is committed to meeting and conferring with the plaintiff regulators before submitting any fee application to ensure that his and his professionals' fees and expenses are consistent with their evaluation of the nature and quality of the services rendered, and therefore unlikely to draw an objection.  Because the federal government shutdown in late 2025 delayed the Receiver's ability to meet and confer with the FTC, the Receiver could not file an additional interim application consistent with that commitment.  In light of the resulting delay, the Receiver determined that proceeding with a final fee application was the most efficient course of action.

complexity of the issues presented, and in order to ensure that expenses to the Estate were minimized to the extent possible.  The Final Fee Application reflects that the Applicants generally billed at rates substantially discounted from their respective customary billing rates for comparable services in other matters; many of those rates incorporated significant discounts and other reductions specific to the instant receivership as an accommodation to the Estate, as identified in the Final Fee Application.  As further indicated in the concurrently submitted Final Fee Application, the Receiver and Allen Matkins applied across-the-board discounts of 10% to the hourly rates of all timekeepers in this matter, in addition to applying an additional 5% discount to the fees requested in the Final Fee Application (indeed, Allen Matkins has discounted its rates by nearly 36% for certain timekeepers, as compared to its national rates, and applied significant additional write-offs to the fees requested in the Final Fee Application, as an accommodation to the Estate).

The Receiver has reviewed the Final Fee Application and, in his reasonable business judgment, believes the fees requested by the Applicants to be fair and reasonable and an accurate representation of the work performed.  *See* Donell Decl. ¶ 7.  The Receiver likewise believes that the Receivership Estate has benefited from the services identified in the Final Fee Application.  (*Id.*)

> 2. <u>The Applicants Are Highly Experienced Practitioners And Their Hourly Rates Are Appropriate.</u>

As reflected in the Final Fee Application, each of the Applicants is highly qualified, with years of experience in fiduciary matters, including receiverships. (*See* Donell Decl. ¶ 8; First Amended Fee Application-4 ¶ 2, 4; First Amended Fee Application-5 ¶¶ 2, 3; First Amended Fee Application-6 ¶¶ 2, 3; First Amended Fee Application-7 ¶¶ 2, 3.)  In addition, each Applicant is familiar with the prevailing rates for similarly qualified practitioners in their areas, and has determined that their rates are consistent with, or below, rates charged by similarly qualified professionals on similar matters.  (*See* Donell Decl. ¶ 9; First Amended Fee Application-4 ¶ 5;

First Amended Fee Application-5 ¶ 5; First Amended Fee Application-6 ¶ 4; First Amended Fee Application-7 ¶ 4.)

         3.    <u>The Fees and Expenses Requested in the Final Fee Application Have Been Submitted to the FTC for Review and Comment, Without Opposition.</u>

With respect to compensation requests made by a receiver in a federal enforcement action, courts give great weight to the judgment and experience of the government agency prosecuting the underlying action. As one court has noted in a bankruptcy case in which the Securities and Exchange Commission (the "SEC") participated, "it is proper to [keep] in mind that the [SEC] is about the only wholly disinterested party in [this] proceeding and that . . . its experience has made it thoroughly familiar with the general attitude of the Courts and the amounts of allowances made in scores of comparable proceedings." *In re Phila. & Reading Coal & Iron Co.*, 61 F. Supp. 120, 124 (E.D. Pa. 1945) (Bankruptcy Act case). Indeed, the government agency's positions are not "mere casual conjectures, but are recommendations based on closer study than a district judge could ordinarily give to such matters." *Finn v. Childs Co.*, 181 F.2d 431, 438 (2d Cir. 1950) (citation omitted) (internal quotation marks omitted) (Bankruptcy Act case). And such "recommendations as to fees of the [government agency] may be the only solution to the very undesirable subjectivity with variations according to the particular judge under particular circumstances which has made the fixing of fees seem often to be upon nothing more than an ipse dixit basis." *Id.* (citation omitted) (internal quotation marks omitted). Thus, the government agency's position on a fee request should be "given great weight." *Fifth Ave. Coach Lines*, 364 F. Supp. at 1222.

Here, in order to ensure that the fees and expenses requested in the Final Fee Application are reasonable and appropriate, the Applicants submitted a draft of the Final Fee Application, along with their respective invoices, to the FTC for review and comment prior to filing. After a review of the Final Fee Application and a

discussion with the Receiver's office and Allen Matkins, and after the Applicants agreed to a further 5% reduction of all of their fees, the FTC confirmed that it does not oppose the Final Fee Application. The FTC is likely in the best position to measure the fees and expenses requested in the instant receivership against those incurred in other, similar proceedings and cases of similar complexity, *see Phila. & Reading Coal & Iron*, 61 F. Supp. at 124, and a decision on their part not to object to the Final Fee Application merits significant deference. *Id.* Accordingly, the Applicants respectfully request that the Court approve the fees and expenses as sought in the Final Fee Application.

    4. <u>The Receiver should Be Authorized to Pay all Approved Fees from Cash On-Hand.</u>

As reflected in the Final Fee Application, the Applicants have requested that the Court authorize the payment of their requested fees and expenses for the period from November 1, 2024 through November 30, 2025 in the amount of $508,457.61. The Receiver presently holds nearly $600,000 for the administration of the Estate, and he respectfully requests that the Court permit him to make payment of the fees and expenses requested in the Final Fee Application from cash on hand.

**V. CONCLUSION.**

Based on the Receiver's cumulative findings and the fulfillment of his duties under the Appointment Order and other Court orders in this receivership case, the Receiver respectfully requests that this Court enter an order:

  1. Approving the Final Report and Accounting, along with the actions taken by the Receiver during the pendency of his appointment;

  2. Authorizing the payment of the Final Fee Application in the aggregate amount of $508,457.61;

  3. Authorizing the Receiver to establish a Reserve in the amount of $13,000;

4. Authorizing the Receiver, after the payment of authorized costs, fees and expenses, to make the Remittance to the FTC;

5. Authorizing the Receiver to abandon or destroy, as appropriate, all Receivership Entity records in his possession, within 91 days after his discharge as receiver; and

6. Authorizing the Receiver to undertake and complete those tasks necessary to wind-down and close the receivership, as detailed further below, and thereafter closing the instant receivership and discharging and releasing the Receiver, effective upon receipt of a Declaration from the Receiver confirming the completion of all closing tasks.

Dated: January 27, 2026

ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP
JOSHUA A. DEL CASTILLO
MATTHEW D. PHAM
ALPHAMORLAI L. KEBEH

By: _____/s/    Alphamorlai L. Kebeh_____
ALPHAMORLAI L. KEBEH
Attorneys for Receiver
STEPHEN J. DONELL