# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

FEDERAL TRADE COMMISSION,

Plaintiff,

v.

ASCEND CAPVENTURES INC., also doing business as Ascend Ecom LLC; Ascend Ecomm LLC; ACV; ACV Partners; Accelerated Ecommerce Ventures; Ascend Distribution LLC; Ethix Capital; and ACV Nexus, a Wyoming close corporation profit corporation; ASCEND ECOMMERCE INC., also doing business as Ascend Ecom LLC, a Wyoming close corporation profit corporation; ASCEND ADMINISTRATION INC., a California general stock corporation, ASCEND ECOM LLC, a Wyoming limited liability company; ASCEND DISTRIBUTION LLC, a Texas limited liability company; WILLIAM MICHAEL BASTA, individually and as officer and/or owner of Ascend Ecom LLC, Ascend Capventures Inc., Ascend Ecommerce Inc., Ascend Administration Inc., Ascend

Case No. 2:24-cv-07660-SPG-JPR

**ORDER GRANTING MOTION FOR ORDER (1) APPROVING FINAL REPORT AND ACCOUNTING; (2) AUTHORIZING PAYMENT OF FINAL FEE APPLICATION OF RECEIVER AND PROFESSIONALS; (3) ESTABLISHING RESERVE FOR CLOSING RECEIVERSHIP; (4) AUTHORIZING TRANSFER OF RECEIVERSHIP ASSETS TO PLAINTIFF FEDERAL TRADE COMMISSION; (5) AUTHORIZING ABANDONMENT OR DESTRUCTION OF RECORDS; AND (6) CLOSING RECEIVERSHIP, DISCHARGING AND RELEASING RECEIVER [ECF NOS. 125, 126]**

-1-

Distribution LLC; and JEREMY KENNETH LEUNG, individually and as officer and/or owner of Ascend Ecom LLC, Ascend Capventures Inc., Ascend Ecommerce Inc., Ascend Administration Inc., and Ascend Distribution LLC,

Defendants.

Before the Court is (1) the Final Report and Accounting of Receiver, Stephen J. Donnell; (2) an unopposed Motion for Order Approving Final Report and Accounting; and (3) an unopposed Final Application for Payment of Fees and Reimbursement of Expenses of Receiver, Stephen J. Donell, and his Professionals.  *See* (ECF Nos. 125-1 ("Fee Application"), 125-3 ("Motion for Approval"), 126-1 ("Final Report")).  The Court has read and considered the Motion and the Application and concluded that they are suitable for decision without oral argument. *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.  Having considered the Motion and the Application, the relevant law, and the record in this case, the Court GRANTS the Motion and GRANTS the Application.

## I.    BACKGROUND

In this action, the Federal Trade Commission ("Plaintiff") alleges that Defendants Ascend Capventures Inc., Ascend Ecommerce Inc., Ascend Administration Inc., Ascend Ecom LLC, Ascend Distribution LLC, William Michael Basta, and Jeremy Kenneth Leung (collectively, "Defendants") used deceptive earnings claims to induce consumers to pay tens of thousands of dollars to invest in what Defendants claimed to be risk-free business opportunities on platforms such as Amazon and Walmart. *See* (ECF No. 1 ("Complaint") ¶¶ 2, 30).  On September 13, 2024, the Court granted Plaintiff's Application for a Temporary Restraining Order. *See* (ECF No. 30).  Among other relief, the Court appointed Stephen J. Donnell ("Receiver") as a temporary receiver to take control of business assets held by certain entities associated with Defendants (the "Receivership Entities") and to take all acts necessary or advisable to preserve the value of those assets. *See* (*id.* at 6, 15).  The TRO further empowered the Receiver to, among other actions, (1) engage attorneys,

accountants, appraisers, and independent contractors, as necessary for the performance of his duties; (2) make payments and disbursements from the receivership estate as necessary to discharge his duties; and (3) enter into and cancel contracts as necessary to discharge his duties. *See* (*id.* at 16–17). Thereafter, on August 11, 2025, the Court entered a stipulated permanent injunction. *See* (ECF No. 117 ("PI")). In the PI, the Court ordered that the Receivership remain in effect until terminated. *See* (*id.* at 21).

Between September 2024 and November 2025, the Receiver filed a series of reports apprising the Court of his activities to determine the nature of the Receivership Entities' activities, recover assets from the Receivership Entities, and prevent misleading or deceptive conduct by persons and entities associated with the Receivership Entities. *See, e.g.*, (ECF Nos. 77, 88, 113, 120 (the "Interim Reports")). On January 27, 2026, in connection with the instant Motion and Application, the Receiver filed the Final Report.

In the Final Report, the Receiver describes his investigation and analysis regarding the operations of the Receivership Entities, comprising discovery from the Receivership Entities' customers, banks, escrow companies, payment processers, domain registrars, cloud-hosting platforms, and other third parties believed or suspected to have conducted business with those entities. *See* (Final Report at 9). According to the Final Report, the Receiver concluded, based on the information he obtained and reviewed, that the Receivership Entities obtained millions of dollars in apparent consumer funds, which were commingled with other assets and diverted for purposes seemingly unrelated to any legitimate business operations. *See* (*id.* at 10). The Receiver therefore concluded that the Receivership Entities did not operate a wholly legitimate business and are not viable as a going concern. *See* (*id.*).

The Final Report details the Receiver's recovery of assets for the administration and benefit of the receivership estate. *See* (*id.*). Specifically, the Final Report indicates that the Receiver recovered $304,646.24 in proceeds from bank accounts associated with the Receivership Entities, recovered $811,450.10 in proceeds from the sale of assets and properties associated with the Receivership Entities, and received $31,800.00 in proceeds

from the payment of rents from properties held by the Receivership Entities. *See* (*id.*). Following cash disbursements, as of January 27, 2026, the Receiver had a total of $572,210.97 in cash on hand. *See* (ECF No. 126-1, Final Report and Accounting, Ex. 1).

The Final Report also details the actions that the Receiver took in connection with certain properties held by individuals and entities associated with the Receivership Entities (the "Properties"). *See* (*id.* at 10–17). The Final Report states that William Basta and Jeremy Leung (the "Individual Defendants") diverted millions of dollars of assets to purchase three properties in California and two properties in Florida. *See* (*id.* at 10–11). The Receiver sold one such property, recovered sale proceeds from another, abandoned a third based on the outstanding debt and the cost of remediation to the property, and determined that pursuing recovery as to the final two properties would not yield a material benefit. *See* (*id.* at 11–16).

The Final Report further details the Receiver's effort to mitigate ongoing consumer harm and prevent further improper consumer solicitation from third parties associated with the Individual Defendants and the Receivership Entities. *See* (*id.* at 18). According to the Final Report, overseas personnel affiliated with the Receivership Entities continue to solicit payments from consumers. *See* (*id.* at 19). The Receiver set up a website to provide affected consumers with regular updates and warnings regarding continued solicitations. *See* (*id.*). He further contacted internet hosting providers and platforms to request that they disable websites used to solicit consumers and took steps to preserve evidence concerning the purported misconduct. *See* (*id.* at 18–19).

The Final Report recommends that the Court authorize him to commence the wind-down and termination of the Receivership. *See* (*id.* at 19–22). Specifically, the Receiver requests authorization to pay out fees and expenses incurred in administering the Receivership. *See* (*id.* at 20). The Receiver further recommends that the Court authorize him to set up a reserve of an amount not to exceed $13,000 for fees and expenses incurred in winding down the Receivership. *See* (*id.*). The Receiver also requests that the Court authorize him to transfer all assets held in Receivership, excepting those assets held in

reserve and paid out in connection with the Fee Application, to the FTC. *See* (*id.* at 21). Finally, the Receiver requests that the Court accept the Final Report, permit the Receiver to destroy or abandon certain records relating to the Receivership, and terminate the Receivership. *See* (*id.* at 21–22).

## II.   LEGAL STANDARD

### A.   Review of Receivership Activities

"[A] district court's power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad." *See SEC. v. Hardy*, 803 F.2d 1034, 1037 (9th Cir. 1986); *see also SEC v. Lincoln Thrift Ass'n*, 577 F.2d 600, 605 (9th Cir. 1978) ("[I]t is a recognized principle of law that the district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership."). Pursuant to Central District of California Local Rule 66-8, "[e]xcept as otherwise ordered by the Court, a receiver shall administer the estate as nearly as possible in accordance with the practice in the administration of estates in bankruptcy." "The examination of the account of a receiver is conducted in a spirit of equity, assuming the receiver to be honest until the contrary appears, and from the standpoint of benefit or injury to the estate rather than of strict and technical adherence to forms." 65 Am. Jur. 2d Receivers § 178. Thus, courts are "deferential to the business management decisions" of a receiver. *See Bennett v. Williams*, 892 F.2d 822, 824 (9th Cir. 1989) (addressing standard of review in bankruptcy administration).

### B.   Fee Application

"A receiver appointed by a court who reasonably and diligently discharges his duties is entitled to be fairly compensated for services rendered and expenses incurred." *SEC v. Byers*, 590 F. Supp. 2d 637, 644 (S.D.N.Y. 2008). Similarly, professionals employed by a receiver are entitled to compensation for their services. *See Drilling & Expl. Corp. v. Webster*, 69 F.2d 416, 418 (9th Cir. 1934). The court appointing the receiver has "full power" to determine the receiver and associated professionals' compensation. *See id.* "The receiver bears the burden to demonstrate to the court entitlement to payment of fees and

costs in the amount requested." *SEC v. Total Wealth Mgmt, Inc.*, No. 15-CV-226-BAS-DHB, 2016 WL 727073, at *1 (S.D. Cal. Feb. 24, 2016) (citing 65 Am. Jur. 2d, Receivers § 228 (2d ed. Feb. 2016 update)). In determining whether compensation is reasonable, courts may look to factors including the time and effort spent on administering the receivership, the benefit to the receivership estate, and the complexity of the issues facing the receiver. *See In re San Vicente Med. Partners Ltd.*, 962 F.2d 1402, 1409–10 (9th Cir. 1992). Decisions awarding receivership compensation are reviewed for abuse of discretion, and any findings of facts that provide the basis for such decisions are reviewed for clear error. *See id.* at 1409.

## III.    DISCUSSION

Based upon the Court's review of the Final Report, as well as the Court's review of the Interim Reports and orders granting the Interim Reports, the Court grants the Receiver's request to wind down the Receivership. In light of the lack of opposition to the Fee Application, as well as the Court's review of the time entries submitted in support and the Receiver's showing of benefits to affected consumers, the Court also grants the Fee Application.

### A.    Approval of Final Report

The Court has reviewed the Final Report and concludes that the Receiver exercised reasonable business judgment in administering the Receivership. As noted, throughout the Receivership, the Receiver filed periodic Interim Reports to summarize the Receiver's activities and confirm the Receiver's proposed course of conduct. These Interim Reports, as well as the Final Report, demonstrate that the Receiver acted diligently to ascertain the scope of the Individual Defendants' and Receivership Entities' conduct, prevent further acts of deceptive conduct by individuals and entities associated with the Receivership Entities, ascertain assets held by the Receivership Entities and the flow of funds diverted from the Receivership Entities, and recover such funds for the benefit of the receivership estate. In connection with each Interim Report, the Court authorized the Receiver to

undertake the recommendations presented in the Interim Reports. *See, e.g.*, (ECF Nos. 91, 98, 118–19, 122).

For example, as summarized in the First Interim Report, filed in November 2024, the Receiver reviewed the Receivership Entities' QuickBooks records, with the assistance of the Receiver's forensic accountant; conducted site visits to facilities associated with the Receivership Entities to assess the Receivership Entities' inventory; and analyzed the Receivership Entities' records to ascertain the identities of additional Receivership Entities. *See* (ECF No. 77-1 at 9–14). In the same report, the Receiver also described efforts to "mitigate any potential harm" to the Receivership Entities' consumers, contacting web hosting services and platforms to disable websites used to solicit clients; establishing a website to provide consumers with updates regarding the status of the Receivership; and issuing cease and desist letters to former employees of the Receivership Entities and others engaged in conduct that the Receiver deemed to be improper or misleading. *See* (*id.* at 5–6).

In another example, the Receiver's Second Supplemental Report, filed on October 30, 2025, described the disposition of two parcels of property that the Individual Defendants purchased using funds traceable to the Receivership Entities' consumers. *See* (ECF No. 120-1). In that document, the Receiver informed the Court that he successfully closed on the sale of one of the parcels of property, following his eviction of an unauthorized occupant on the property, a third-party's attempted unlawful foreclosure of the property, and a negotiation with the property's lender to mark down the debt on the property. *See* (*id.* at 3). The Receiver further informed the Court that a second parcel of property was in a state of significant disrepair and that substantial work had been performed on the property without the requisite permits. *See* (*id.* at 4–5). The Receiver indicated that he intended to market and sell the latter property if he was able to secure a sufficient reduction in the property's debt but, if he could not achieve such a reduction, he would abandon the property. *See* (*id.* at 5).

Based on the Court's review and approval of the Interim Reports, as well as the Court's review of the Receiver's activities set forth in the Final Report, the Court credits the Receiver's assertion that he has expended all reasonable efforts to recover and monetize the assets of the receivership estate. *See* (ECF No. 125-2, Declaration of Stephen Donnell ("Donnell Decl."), ¶ 5). Therefore, the Court approves the Final Report, authorizes the final closing tasks set out therein, and grants the Receiver's request to terminate the Receivership.

**B.    Fee Application**

The Court has reviewed the Fee Application, as well as the supporting invoices and time entries submitted in connection with the Fee Application. Based on the time and effort spent administering the Receivership, the benefit to the receivership estate, the complexity of the Receiver's work, and Plaintiff's non-opposition, the Court determines that the compensation requested in the Fee Application is reasonable.

First, the Receiver requests $92,908.62 in fees and $60.69 in expenses, for a total of $92,969.31. *See* (Fee Application at 3). The Receiver was appointed at Plaintiff's request, and he has been appointed as a court-appointed receiver in more than 900 matters. *See* (Donnell Decl. ¶ 8). The Receiver's request includes the fees of staff members who work at the Receiver's company, FedReceiver. *See* (Fee Application at 54). The Receiver's invoices reflect that five members of the Receiver's staff worked on behalf of the receivership estate. *See* (Fee Application at 25–80). The Receiver charged an hourly rate of $450, and his staff charged hourly rates between $125 and $365. *See, e.g.*, (*id.* at 40). Collectively, the Receiver's time records reflect that the Receiver and his staff spent more than 306 hours in connection with this matter. *See* (Fee Application at 25–80).

Second, Allen Matkins Leck Gamble Mallory & Natsis LLC ("Allen Matkins"), the Receiver's general receivership counsel, requests $276,606.18 in fees and $15,977.59 in expenses, for a total of $292,583.77. *See* (Fee Application at 3). According to a declaration submitted by a partner at the firm, Allen Matkins has served as lead receivership counsel in dozens of federal equity receivership matters and, as of March 2025, served as lead

receivership or monitorship counsel in at least seven pending Securities and Exchange Commission or Federal Trade Commission enforcement actions. *See* (ECF No. 93-4, Declaration of Joshua del Castillo ("Castillo Decl."), ¶ 2). Allen Matkins' invoices reflect that the firm staffed two partners and two associates on this matter and, collectively, Allen Matkins' attorneys spent at least 421 hours in connection with the Receivership. *See* (*id.* at 12, 82–206). Allen Matkins' attorneys charged an hourly rate between $472.50 and $1,102.50, with the majority of work performed by a partner and associate charging, respectively, $805.50 and $549.00 per hour. *See* (*id.* at 13–18). Allen Matkins' request is supported by detailed time entries on a variety of tasks, ranging from preparation of document subpoenas, reviewing documents in connection with the Receiver's investigation, intervening to prevent foreclosure of the relevant properties, and preparation of cease-and-desist letters to third parties purporting to continue the business of the Receivership Entities. *See* (*id.*); *see also* (*id.* at 82–206.).

Third, Ross & Smith, P.C., the Receiver's local counsel in Texas, requests $6,880.38 in fees and $345 in expenses for a total of $7,225.38. *See* (Fee Application at 3). According to the Receiver, he conducted a search for qualified local counsel and selected Ross & Smith based on the firm's experience representing receivers and similar fiduciaries, as well as based on referrals. *See* (Donnel Decl. ¶ 10). Ross & Smith's invoices reflect that the firm staffed a total of four attorneys on this matter and, collectively, those attorneys spent at least 24 hours on work related to the Receivership. *See* (*id.* at 208–12). Its attorneys charged an hourly rate of between $150 and $650. *See* (*id.*). As local counsel, Ross & Smith assisted the Receiver in efforts to access and potentially monetize inventory at a warehouse facility in Dallas, Texas. *See* (*id.* at 19); *see also* (*id.* at 208–12).

Finally, SLBiggs, the Receiver's forensic accounting firm, requests $115,630.68 in fees and $48.47 in expenses for a total of $115,679.15. *See* (Fee Application at 3). The Receiver selected SLBiggs as a forensic accountant based on his experience working with the firm in hundreds of federal and state court cases. *See* (Donnel Decl. ¶ 10). SLBiggs' invoices reflect that the firm staffed a total of five accountants on this matter and,

collectively, its accountants spent at least 231 hours in connection with work for the Receivership. *See* (*id.* at 214–35). Its accountants charged hourly rates between $280 and $600. *See* (*id.*). In connection with this action, SLBiggs conducted forensic accounting analysis of nineteen entities and more than seventy bank accounts; reconciled cash transfers among the Receivership Entities and related parties; and prepared a master schedule of the Receivership Entities' known financial activities. *See* (*id.* at 21–22).

Both the Receiver and Allen Matkins applied a 10% discount to their standard rates in connection with this matter. *See* (Donnell Decl. ¶ 7; Castillo Decl ¶ 3). Further, the Receiver, Allen Matkins, Ross & Smith, and SLBiggs (the "Applicants") also applied a 5% discount to all fees requested in the Application, in "recognition of the burden imposed by unforeseen and increased costs of administration resulting from, among other things, certain critical omissions by the Individual Defendants." (Fee Application at 4); *see also* (Donnel Decl. ¶ 7). According to the Motion, the Applicants submitted a draft of the Fee Application and their respective invoices to the FTC for review and comment. *See* (Motion at 18). After the FTC requested and the Applicants agreed to the 5% discount, described above, the FTC confirmed to the Applicants that it does not oppose the Fee Application. *See* (*id.* at 18–19). The FTC has filed a Notice of Non-Opposition to the Fee Application. *See* (ECF No. 127 ("Non-Opposition")).

In assessing the Fee Application, the Court gives "great weight" to the FTC's Notice of Non-Opposition. *See SEC v. Fifth Ave. Coach Lines, Inc.*, 364 F. Supp. 1220, 1222 (S.D.N.Y. 1973) ("Opposition or acquiescence by the S.E.C. to the fee application [in an SEC receivership] will be given great weight."); *see also SEC v. J.T. Wallenbrock & Assocs.*, 584 Fed. App'x 424, 425 (9th Cir. 2014) (unpublished) (reversing a district court's denial of receivership fees in light of the "the SEC's support for the requested fees"). The Court also finds the requested compensation reasonable in light of the Applicants' detailed time entries, the Court's review of the Applicants' time entries, and the unique challenges that the Receiver and the other Applicants faced in recovering assets for the receivership

estate. *See San Vicente*, 962 F.2d at 1409–10.[1] In assessing the reasonableness of the Applicants' hourly rates, the Court concludes that the Applicants' rates are comparable to the rates charged by similarly situated receivers and professionals retained in connection with federal equity receiverships. *See* (ECF No. 115 (order granting first interim fee application)); *see also* (ECF No. 93-1 (initial fee application, setting forth similar hourly rates to rates requested in the instant Fee Application)).

In awarding the requested compensation, the Court is cognizant that the Applicants request a total of $508,457.61 out of the $600,000 total that the Receiver holds for the administration of the estate. *See* (Motion at 19). "While the results obtained by a receiver clearly are important, the benefits to a receivership estate may take more subtle forms than a bare increase in monetary value." *SEC v. Byers*, 590 F. Supp. 2d 637, 644 (S.D.N.Y. 2008) (internal quotation marks omitted); *see also Fed. Trade Comm'n v. E.M. Sys. & Servs., LLC*, No. 8:15-CV-1417-T-23AEP, 2018 WL 1801214, at *8 (M.D. Fla. Jan. 22, 2018) (granting application where requested fees and expenses exceeded value of assets in receivership estate). Here, the Receiver has shown a benefit to the receivership estate beyond the recovery of monetary assets, by virtue of his investigation and analysis regarding the operations of the Receivership Entities and efforts to mitigate ongoing harm to consumers by associated individuals and entities. *See* (Final Report at 9–10, 18–19). In assessing the benefit to the receivership estate, the Court further relies on Plaintiff's Non-Opposition. *See E.M. Sys. & Servs., LLC*, 2018 WL 1801214, at *4 n.1.

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS the Motion and ORDERS as follows:

1.    The Motion is GRANTED, in its entirety.

---

[1] In assessing the work performed by Allen Matkins, Ross & Smith, and SLBiggs, the Court also credits the Receiver's business judgment that the services performed by these entities were necessary to administer the Receivership, absent evidence to the contrary. *See* (Donnel Decl. ¶ 7); *see also Bennett*, 892 F.2d at 824.

2. The Final Report is accepted and approved. Further, the Court reaffirms its approval of all actions taken by the Receiver during the pendency of this action.

3. The Fee Application is GRANTED in its entirety.

4. The Receiver's request for fees and expenses incurred during the period from November 1, 2024, through November 30, 2025, (the "Application Period"), in the respective amounts of $92,908.62 and $60.69, is GRANTED.

5. Allen Matkins' request for fees and expenses incurred during the Application Period, in the respective amounts of $276,606.18 and $15,977.59, is GRANTED.

6. SLBiggs' request for fees and expenses incurred during the Application Period, in the respective amounts of $115,630.68 and $48.47, is GRANTED.

7. Ross & Smith's request for fees and expenses incurred during the Application Period, in the respective amounts of $6,880.38 and $345.00, is GRANTED.

8. The Receiver is authorized to pay himself and his professionals the fees and expenses, referenced above in Paragraphs 4 through 7, from the funds of the receivership estate established in this action.

9. The Receiver is authorized to establish a reserve (the "Reserve") in the aggregate amount of $13,000 from the funds presently held by the Receiver and is further authorized to pay any administrative fees and expenses over and above those approved in Paragraphs 4 through 7, above, from this Reserve, without further order of the Court.

10. The Receiver shall remit any funds remaining after the application of the Reserve to administrative fees and expenses to Plaintiff, as well as any other assets held by the Receiver for the benefit of the receivership estate, in accordance with the instructions Plaintiff provides to the Receiver.

11. The Receiver is authorized, within 91 days after the entry of this Order, to dispose of any documents in his possession obtained during the administration of the receivership estate established in this action by destroying such documents containing private information and by destroying or abandoning all other documents obtained during the administration of the receivership estate.

12.     Upon the Receiver's submission of a declaration reflecting completion of the above-identified tasks and without further order of the Court, the Court shall deem the receivership established in this action to be closed, and the Receiver shall be discharged and released from his duties and obligations, as reflected in the Court's prior orders, and released from any liability arising from or in connection with his service as Receiver.

13.     The Court shall retain jurisdiction over all matters arising from or in connection with the Receiver's appointment, the performance of his duties as Receiver, and the discharge and release entered pursuant to this Order.

**IT IS SO ORDERED.**

DATED:  March 20, 2026

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE

-13-